**David Halberstadter (CA 107033)**
david.halberstadter@katten.com
**Asena Baran (CA 342626)**
asena.baran@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue Of The Stars, Suite 1100
Los Angeles, CA  90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

**Christopher A. Cole** (*pro hac vice* application forthcoming)
chris.cole@katten.com
**Michael R. Justus** (*pro hac vice* application forthcoming)
michael.justus@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
1919 Pennsylvania Ave NW, Suite 800
Washington, DC  20006-3404
Telephone:  202.625.3500
Facsimile:  202.298.7570

**Julia L. Mazur** (*pro hac vice* application forthcoming)
julia.mazur@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe St.
Chicago, IL 60661-3693
Telephone:  312.902.5200
Facsimile:  312.902.1061

*Attorneys for Plaintiff InSinkErator LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INSINKERATOR LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JONECA COMPANY, LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation,<br><br>Defendants. | Case No.:  8:24-cv-02600<br><br>**COMPLAINT FOR**<br><br>**1) Violation of the Lanham Act**<br><br>**2) Unfair Competition**<br><br>**3) False Advertising**<br><br>**4) Intentional Interference with Prospective Economic Advantage**<br><br>**5) Negligent Interference with Prospective Economic Advantage**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff InSinkErator LLC ("InSinkErator") alleges its case against Defendants Joneca Company, LLC and The Joneca Corporation (collectively, "Joneca") as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

InSinkErator created the product category of kitchen garbage disposals in 1938. Garbage disposals are mounted under kitchen sinks to grind food waste. Today, InSinkErator is the leading seller of garbage disposals in the United States by virtue of its design, marketing, and sale of high-quality disposals. Joneca is a more recent entrant to the category, selling low-cost disposals manufactured and packaged in China. Joneca has recently grown to be the number three (by unit share) seller of garbage disposals in the U.S.

InSinkErator and Joneca directly compete to sell household garbage disposals to retailers and consumers. Disposals are classified and promoted primarily based on their horsepower. Horsepower is a measure of the power of the disposals to grind food and is a key driver of purchasing decisions for retailers and consumers. Knowing this, Joneca advertises its garbage disposals using false and egregiously inflated horsepower claims. Recent engineering testing revealed the truth: the actual horsepower of Joneca's disposals is *far lower* than what Joneca claims in advertising and on packaging. For example, the testing found that Joneca's "1¼ HP" motors provide little more than ¾ horsepower—*36% less horsepower than advertised.* Joneca offers its falsely labeled products at prices far lower than InSinkErator's comparable units, in what amounts to a bait-and-switch scheme. Through this scheme, Joneca robs InSinkErator of trade customers' contracts, including for retail, private label, and builder sales, and ultimately deceives consumers and retailers into believing that they are purchasing a higher quality and higher performing disposal than they really are.

Joneca's deception is causing significant harm to consumers, retailers, and InSinkErator. Joneca's false claims are harming consumers and end users of the

products who are being duped into purchasing and using a far weaker motor than Joneca claims. In turn, Joneca's false claims harm the retailers that promote and sell Joneca's products.

Joneca's unlawful actions are also causing significant, ongoing, and irreparable harm to InSinkErator. Joneca's falsehoods have already caused and are continuing to cause InSinkErator to lose millions of dollars of sales and profits, and to lose retailer and professional buyer accounts and contracts, shelf space, and consumer exposure, as well as causing consequent harm to goodwill and reputational damage. Joneca has also used its false horsepower claims to disrupt and usurp InSinkErator's longstanding business relationships with retailers.

Joneca's actions constitute willful false advertising and unfair competition in violation of state and federal law and must be stopped.

## Nature of the Case

1.    InSinkErator brings this action seeking injunctive relief, monetary damages, corrective advertising, and other relief based on Joneca's false and misleading advertising and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, Cal. Bus. & Prof. Code § 17500, *et seq.*, and Cal. Bus. & Prof. Code § 17200, *et seq.*, and Joneca's intentional and negligent interference with prospective economic advantage under common law.

## Parties

2.    Plaintiff InSinkErator LLC is a Delaware limited liability company with its principal place of business at 1250 International Drive, Mt. Pleasant, Wisconsin 53177.

3.    Defendant Joneca Company, LLC, is a Delaware limited liability company with its principal place of business at 4332 E. La Palma Ave., Anaheim, California 92807.

4.    Defendant The Joneca Corporation is a California corporation with its principal place of business at 4332 E. La Palma Ave., Anaheim, California 92807.

**Jurisdiction and Venue**

5.     This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et. seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over InSinkErator's related state law and common law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Joneca Company, LLC and venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Joneca Company, LLC is located in this district; owns, operates, controls, and/or manages an office, property, and employees in this district and throughout California, and derives substantial revenue from services rendered in this district and throughout California; its activities about which InSinkErator complains have occurred and are continuing to occur in this district and throughout California (including its promotion and sale of its services using false, misleading, and deceptive advertising); its false, misleading, and deceptive advertising is and has been specifically targeted at and directed to customers in this district and throughout California; it is deceiving and harming consumers in this district and throughout California; and it is registered to do business in California.

7.     This Court has personal jurisdiction over The Joneca Corporation and venue is proper in this district pursuant to 28 U.S.C. § 1391(b). The Joneca Corporation is located in this district; owns, operates, controls, and/or manages an office, property, and employees in this district and throughout California, and derives substantial revenue from services rendered in this district and throughout California; its activities about which InSinkErator complains have occurred and are continuing to occur in this district and throughout California (including its promotion and sale of its services using false, misleading, and deceptive advertising); its false, misleading, and deceptive advertising is and has been specifically targeted at and directed to customers in this district and throughout California; it is deceiving and harming consumers in this district and throughout California; and it is a California corporation.

## Facts

**A.    InSinkErator**

8.    InSinkErator is the inventor and world's largest manufacturer of garbage disposals for home and commercial use.

9.    In 1938, Architect John Hammes started the InSinkErator Manufacturing Company with his sons in Wisconsin after inventing and patenting the first garbage disposal. InSinkErator was the original innovator of garbage disposal technology, and it continues to be the leader in the industry. Today, InSinkErator is a global company manufacturing millions of garbage disposals every year, reaching throughout the U.S. and in nearly 80 countries. InSinkErator has worked hard for many years to deliver long-lasting, innovative garbage disposal products that are powerful, quiet, and easy to install. As a result of significant investment into product development, research, and promotion over the decades, it has built up considerable goodwill as the leader and innovator in the garbage disposal industry.

10.    InSinkErator offers a variety of garbage disposal models at different price points to retailers across the nation. The different lines and brands InSinkErator offers include Badger, Power, Advanced, Pro Cover Control, Evolution Septic Guard, Amana, and Builder Series.

11.    InSinkErator sells its garbage disposals to retailers, wholesalers/distributors, and e-commerce retailers, who in turn offer them for sale to customers throughout the United States (and other countries). These brick-and-mortar and online retailers include Ace Hardware, Amazon.com, Blain's Farm & Fleet, Build with Ferguson, Costco, Do it Best, Ferguson, Fleet Farm, Grainger, HD Supply, Lowe's, Menards, The Home Depot, TrueValue, and Wayfair, among others.

12.    Whether and how many InSinkErator products are offered for sale at retailers is based on contracts negotiated between InSinkErator and the retailers. These contracts can cover the sale of products under InSinkErator's brands. They can also cover the sale of InSinkErator's garbage disposals under a "private label," *i.e.,*

products manufactured by InSinkErator but sold under the retailer's own brand. Consequently, InSinkErator competes with other companies offering garbage disposals for shelf space on two fronts—for the sale of its own brands, as well as for the opportunity to supply private label garbage disposals.

**B.    Joneca**

13.    On information and belief, Joneca Company, LLC and The Joneca Corporation share the same business location and officers, and work together to produce, promote, and sell Joneca's garbage disposal products, such that both entities are jointly responsible and liable for the unlawful conduct described in this action.

14.    On information and belief, Joneca produces and provides garbage disposals made in China, which are sold under a variety of brands including American Standard, Criterion, Glacier Bay, Maintenance Warehouse, Project Source, and Wastemaid, among others. (*See*, *e.g.*, Exhibit A.)

15.    Joneca must also negotiate contracts with retailers to be able to sell its own branded products at the retailer's physical and online stores, and to provide private label products sold under the retailers' brands. It competes directly with InSinkErator for contracts with retailers to sell branded and private label products. Joneca's branded and/or private label garbage disposals are sold in many of the same national brick-and-mortar and online retailers as InSinkErator's products, including Amazon.com, Costco, HD Supply, Lowe's, Menards, and The Home Depot. Joneca is making its horsepower claims to retailers in business-to-business dealings such as pitches, line reviews, and other meetings and communications.

16.    Joneca prominently advertises horsepower claims for each of its competing garbage disposal products on product packaging and in online and offline promotional materials nationwide. Joneca's horsepower claims are made in brick-and-mortar retail stores on product packaging and other promotional materials. Joneca's claims are also made on Joneca's own website and the websites of national retailers in the product title, as a purchasing option (*e.g.*, a consumer selects which

horsepower option they would like to add to their cart), in images of product packaging, and/or in product descriptions. (*See*, *e.g.*, Exhibits B–C.)

17. Joneca creates, approves, provides, disseminates, and/or otherwise causes and is responsible for the horsepower claims and claims that appear on packaging and promotional materials for its products. The fact that Joneca prominently displays horsepower claims on its packages, website, and other materials is indicative of Joneca's belief that horsepower claims are meaningful to consumers.

**C.        The Garbage Disposal Product Category**

18. A garbage disposal is a machine for disposing of food scraps. It is mounted to the underside of a sink and designed to grind food waste to small pieces that can pass through plumbing pipes.

19. A motor within the garbage disposal unit powers a grinding mechanism. Garbage disposals are typically made with either an induction motor or a permanent magnet motor. Joneca's disposals use permanent magnet motors. InSinkErator has traditionally offered only induction motors, but recently added its first product line featuring permanent magnet motors.

20. Regardless of motor type, the horsepower of the motor has a material impact on food waste grind performance (*e.g.*, grind rate, fineness of grind) and how long the disposal can run before stalling or resetting. A higher horsepower motor will generally be able to handle more food waste at one time and be able to grind it faster and more finely than a lower horsepower motor.

21. Horsepower in the context of a motor's performance is an objective and unambiguous attribute that describes the output power of a motor. In garbage disposals, horsepower is the power the motor provides to the grinding mechanism to grind food waste.

22. Horsepower claims are typically listed on garbage disposal product packaging and promotional materials, including those made and sold by Joneca. Such claims are a primary differentiator for comparison shopping among different disposal

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel  +1.310.788.4471 fax

brands. Major national retailers seek to offer several disposal models (low cost, medium cost, higher cost) at each horsepower level (⅓ HP, ½ HP, ¾ HP, 1 HP and 1 ¼ HP). InSinkErator, as the inventor and founding member of the garbage disposal category, and the largest seller of garbage disposals in the world, has been advertising the horsepower of its units for decades—far longer than Joneca has been in business in the United States. On information and belief, Joneca is now and has been aware of this and of the general manner in which InSinkErator measures horsepower and of the need to conduct appropriate and consumer-relevant substantiation testing.

23. InSinkErator and Joneca each offer competing ½, ¾, 1, and 1¼ HP options in their respective branded and private label lines of garbage disposals. At each horsepower level, Joneca typically occupies the lower cost spot and InSinkErator the higher cost spot, with Joneca offerings typically priced 25% or more below InSinkErator at each level.

24. Garbage disposal prices are generally commensurate with the horsepower of the motor; the higher the horsepower, the higher the price. Because the motor represents a significant portion of the overall disposal unit manufacturing cost, a higher-horsepower motor costs more to make and the manufacturer typically requests more for it.

25. Garbage disposals are purchased from retailers and wholesalers by consumers, who include plumbers, builders, and homeowners, tenants, and other purchasers. These purchasers typically do not have the means by which to independently measure horsepower. They must take the sellers' word for it.

26. Consumer research shows that the horsepower of garbage disposal motors is a material factor in selection and purchasing decisions. This research shows that consumers perceive horsepower as a performance indicator. Typically, consumers have a variety of different horsepower levels from which to select—even within a given retail store—and consumers are even informed by retailers that higher horsepower signifies higher output performance of the garbage disposal. The

emphasis on horsepower by manufacturers and sellers of other consumer products, such as cars and lawnmowers, have also conditioned consumers to look for and value horsepower as a key performance indicator and purchase driver.

27.    The importance of horsepower is also underscored by retailer promotional materials. Many retailers feature horsepower as the primary benchmark and differentiator, *e.g.*, lower horsepower models are identified as being appropriate for smaller households, lighter use, and softer foods; higher horsepower models are recommended for larger households, more frequent use, and harder foods.

28.    Because consumers have been educated over many years that garbage disposal horsepower is a performance indicator, horsepower materially impacts purchasers' willingness to pay for more premium (higher horsepower) models.

29.    Retailers also view horsepower as a performance indicator and communicate that fact to consumers. For example, the websites of three national retailers state:

- "The higher the HP, the better the disposer will run. Food waste will be ground into finer particles and you'll have fewer jams."

- "Garbage disposal horsepower (HP) determines what the disposal is capable of grinding. Take food type and household size into consideration when deciding what HP you need."

- "The total power output capability from the included motor, measured in horsepower."

(*See*, *e.g.*, Exhibit D.)

30.    Many popular brick-and-mortar and online retail stores specifically group competing disposal products by horsepower on shelves and online displays, such that InSinkErator's garbage disposals at any given horsepower are next to Joneca's garbage disposals with the same alleged horsepower. Retailers may also categorize different levels of horsepower based on performance, such as "Light Duty" for ⅓ to ½ HP models and "Medium Duty" for ¾ HP models. Consumers naturally compare

the disposals in those categories against each other on attributes like price. (*See*, *e.g.*, Exhibits E–F.)

31.   For the same reasons, horsepower of garbage disposal motors is a material factor in selection and purchasing decisions by retailers regarding which products to stock on their store shelves and offer for sale online and which manufacturers to engage for manufacture of the retailers' private label products. Retailers seek to provide products that consumers are likely to purchase.

32.   InSinkErator negotiates contracts with retailers for the sale of its branded lines of garbage disposal products (*e.g.*, Badger garbage disposals), as well as for production of the retailers' private label garbage disposals. The contracts determine the amount of shelf space InSinkErator's branded products and private label products are entitled to at each retailer's physical and online stores. Contracts for branded sales and private label sales are both very valuable to InSinkErator and are often worth millions of dollars each year. The terms of these contracts are typically one to three years. Loss of shelf space due to a competitors' false advertising causes irreparable harm because it is very difficult to regain and it impacts sales negatively on an ongoing basis.

33.   The contracts with retailers provide more than shelf space. A contract can also include marketing support, such as promotional efforts, favorable placement in the retailer's advertising materials, and favorable shelf space such as endcap displays. The contracts also boost the successful bidder's relationship with retailers and lead to future business opportunities. These benefits all help grow brand awareness, consumer recognition, brand value, reputation, and goodwill with retailers and consumers. Conversely, if a competitor obtains these benefits through false advertising, the ongoing harm can be difficult, if not impossible, to remedy.

34.   Like InSinkErator, Joneca bids for and negotiates contracts with the same retailers for both branded and private label garbage disposal sales. Joneca and InSinkErator directly compete for physical and virtual shelf space for both branded

and private label garbage disposals at the same retailers across the nation. On information and belief, during the course of bidding, Joneca provides information to retailers that includes horsepower, but Joneca does not reveal that its horsepower claims are inflated.

**D.      Joneca's False Horsepower Claims**

35.      Rather than fairly compete in the marketplace, Joneca engaged in false advertising to deceive customers and retailers into purchasing an inferior product.

36.      On or about August 29, 2024, InSinkErator tested a sampling of Joneca's garbage disposals as part of a claims-testing process. That testing was not specifically intended to evaluate the horsepower of Joneca's products, but the testing did measure horsepower. InSinkErator noticed a substantial disparity in the horsepower provided by Joneca's products compared to Joneca's labeled horsepower. InSinkErator decided to investigate the issue further.

37.      As a result, InSinkErator conducted additional testing between September 2024 and October 2024 specifically to measure the horsepower of Joneca's garbage disposal products. The testing was conducted in InSinkErator's laboratory, which is UL Certified and ISO-IEC 17025:2017 Certified. InSinkErator's laboratory also has sophisticated power regulation equipment that maintains electrical line voltage over high current. To conduct its testing, InSinkErator purchased over 25 samples of Joneca garbage disposals from different retailers in several states. An InSinkErator engineer removed the enclosure and shredder plate from the units so that the units could be mounted on a calibrated, hysteresis dynamometer (Magtrol Model HD-800-6N). The garbage disposal motors were tested under conditions that would reflect maximum performance of the garbage disposal motors. The testing measured and recorded the maximum horsepower for each garbage disposal motor.

38.      On or about October 1, 2024, InSinkErator obtained the results of testing conducted on Joneca's garbage disposal motors at several claimed horsepower levels (*e.g.*, ½, ¾, 1, and 1 ¼ horsepower) from a sampling of Joneca-made garbage disposal

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel  +1.310.788.4471 fax

brands. As shown in the summary table below, Joneca's purported ½, ¾, 1, and 1¼ HP disposals provide maximum horsepower approximately *17%-36% lower*, and average maximum horsepower approximately *20%-38% lower*, than what Joneca promises to purchasers on its label, website and point of purchase signage. The "Max. Observed HP" is the single highest observed horsepower measurement across all trials and units for each motor size. The "Avg. Observed Horsepower" is calculated as the average of the maximum observed horsepower measurements from each trial and unit for each motor type.

| Claimed HP | # of Samples Tested* | Max. Observed HP | Avg. Observed Horsepower | % Below Claimed |
|---|---|---|---|---|
| 1 1/4 HP | 8 | .795 | .773 | 38.2% |
| 1 HP | 4 | .797 | .748 | 25.2% |
| 3/4 HP | 4 | .619 | .603 | 19.7% |
| 1/2 HP | 2 | .356 | .350 | 30.0% |
| 1/2 HP | 4 | .349 | .344 | 31.3% |
| 1/2 HP | 4 | .357 | .353 | 29.4% |

*5 Trials tested for each sample

39.   Prior to receiving these test results, InSinkErator did not know or have reason to believe that Joneca's horsepower claims were false.

40.   To verify its finding that the actual horsepower of Joneca's garbage disposals was significantly lower than advertised, InSinkErator also commissioned third-party testing by Magtrol, Inc. in Magtrol's well-regarded, accredited motor testing laboratory. InSinkErator purchased Joneca garbage disposal units to be tested. It removed all identifying information and the grind system, so that the third-party testing would be conducted on a blinded basis. Magtrol tested the (blinded) Joneca units with motors coupled to a Magtrol dynamometer in its facility in Buffalo, New York. The testing measured and recorded the maximum horsepower for each motor. As shown in the summary table below, the maximum horsepower measured by Magtrol for Joneca's purported ½, ¾, 1, and 1¼ HP disposals is consistent with InSinkErator's own lab test results that Joneca's horsepower claims are substantially

overstated. As shown below, Magtrol's results measured even lower maximum horsepower numbers.

| Claimed Horsepower | Max. Observed HP | % Below Claimed |
|---|---|---|
| 1 1/4 HP | .695 | 44.4% |
| 1 1/4 HP | .684 | 45.3% |
| 1 HP | .657 | 34.3% |
| 3/4 HP | .547 | 27.1% |
| 1/2 HP | .298 | 40.4% |

41.   The test results from both labs show an egregious overstatement of horsepower by Joneca—not a misunderstanding or a rounding error. On information and belief, Joneca is making its falsely inflated horsepower claims willfully and intentionally to deceive purchasers.

42.   When purchasers compare the parties' garbage disposals at each claimed horsepower, Joneca's garbage disposals are priced significantly lower than InSinkErator's competing disposals. It can do this based in part on its overstatement of the horsepower of its motors. Consequently, retailers and consumers incorrectly believe, based on Joneca's false horsepower claims, that they are buying Joneca's garbage disposal with the same horsepower as the InSinkErator unit at a lower price.

43.   Joneca's false horsepower claims create the false impression that Joneca's products provide more value than InSinkErator's higher priced models. That value proposition is an illusion. Joneca's models do not actually meet the stated horsepower specification. Thus, a price comparison between Joneca and InSinkErator models at the same purported horsepower level is an apples-to-oranges comparison.

44.   As a result of this phony value proposition, Joneca is stealing accounts, sales, and goodwill from InSinkErator by deceiving retailers and consumers into paying for an inferior product that does not meet Joneca's purported specifications.

45.    On October 29, 2024, InSinkErator, through counsel, sent a legal demand letter to Joneca regarding, in part, the false horsepower claims described herein. Joneca has not agreed to cease its false claims and thus its continued use of the false claims is willful and intentional.

**E.      Joneca is Deceiving and Harming Consumers and Retailers**

46.    Testing to measure horsepower requires specialized equipment and expertise not available to most (if any) typical purchasers of household garbage disposals.

47.    Consumers cannot and do not test the horsepower of the motor themselves prior to purchase, so they must rely on Joneca's horsepower claims.

48.    Retailers are unable or unlikely to test the horsepower of the motor prior to contracting for and purchasing disposals. On information and belief, retailers have been deceived, and are likely to continue to be deceived, into believing that Joneca's products provide the stated horsepower when in fact they do not.

49.    Because the price of garbage disposals tends to increase as horsepower increases, retailers and consumers are paying for more than what they actually receive from Joneca.

50.    Joneca's conduct substantially damages the public's strong interest in being free from deception as to the quality, characteristics, and performance of Joneca's and InSinkErator's products.

**F.      Joneca Is Harming InSinkErator**

51.    By making its false horsepower claims, Joneca is diverting shelf space and sales from InSinkErator. As a direct and proximate result of Joneca's false horsepower claims, retailers are entering into contracts with Joneca instead of InSinkErator, and deceived consumers are purchasing Joneca's garbage disposals instead of InSinkErator's garbage disposals. InSinkErator is losing thousands of units a week in sales because of Joneca's falsehoods.

52.   Joneca's falsehoods have also caused InSinkErator to lower its prices, so that it can compete with Joneca's lower pricing of garbage disposals that do not have the advertised horsepower. This price erosion causes profit erosion.

53.   InSinkErator's lost sales caused by Joneca's false claims also mean there are fewer sales over which to spread InSinkErator's production and other costs, increasing the cost per unit for InSinkErator's products and further eroding profit margin.

54.   InSinkErator has already lost substantial retail opportunities to Joneca. In 2022, InSinkErator and Joneca competed for a contract to make private label disposal products for a major U.S. home improvement retailer, which ultimately awarded the contract to Joneca instead of InSinkErator. In 2023, InSinkErator and Joneca competed directly for shelf space at another U.S. retailer, and Joneca won shelf space over InSinkErator. On information and belief, Joneca would not have been awarded the contract or shelf space but-for its false horsepower claims and resulting false value proposition, which necessarily deceived the retailers that were not aware that the motors being sold by Joneca had much less horsepower than Joneca claims they produce. Other retailer bidding processes are active and ongoing and will continue to arise indefinitely.

55.   By losing retailer accounts because of Joneca's false horsepower claims, InSinkErator is not only losing shelf space and sales, but also suffering from lost or disrupted retailer relationships and contracts.

56.   The shelf space InSinkErator has lost and will continue losing due to Joneca's falsehoods results in reduced consumer exposure to InSinkErator's products, decreasing its recognition and goodwill.

57.   Further, Joneca's actions are harming InSinkErator's reputation. By significantly overstating the horsepower of its garbage disposals, Joneca can spend less money making a lower horsepower product, and thus sell its garbage disposals at considerably lower prices than InSinkErator. Manufacturers tell retailers of their

respective pricing in pitch meetings and other communications. Consumers later see the price differential between the parties' disposals reflected when products are sold next to each other on store shelves or online. To both retailers and consumers, Joneca's falsehoods make it appear that InSinkErator is offering an overpriced or lower-value product, which is not the case.

58. The harm Joneca is causing InSinkErator compounds over time. For example, it is difficult to recapture relationships and private label opportunities with retailers. The incumbent supplier has an advantage because there are various costs of changing featured suppliers and suppliers of private label products. Such costs include dealing with existing inventory; replacing signage, shelf displays, packaging, catalogs, and other materials; and building out new relationships and workflows. InSinkErator will need to spend additional money, time, and other resources to restore its position from the time before Joneca started making its false claims.

59. Additionally, InSinkErator will need to wait to re-establish relationships with retailers, as contracts with retailers can last up to three years—assuming retailers will give InSinkErator an opportunity to pitch for deals in the future. This is lost time and brand recognition that InSinkErator will not be able to make up, during which its relationships with retailers will erode and its standing with consumers will decrease from reduced exposure.

60. Moreover, retailers tend to compete with each other by offering similar product ranges. This means the loss of one retailer relationship to Joneca's falsely labeled, lower-priced products has a snowball effect on InSinkErator.

61. The nature of garbage disposal replacement purchases further compounds the harm to InSinkErator. Garbage disposals do not last forever. Consumers eventually need to purchase a replacement unit. Replacement purchases for disposals are often time-sensitive "duress purchases." Certain subgroups of consumers tend to replace a garbage disposal with the same manufacturer or brand that had previously been installed. As such, each time InSinkErator loses a sale to Joneca, it is likely that

InSinkErator will also lose an unknown quantity of future sales from replacement units. Once this business is lost, it is difficult to recapture.

62.    Because of this cascade of harms from Joneca's falsehoods, InSinkErator's brand awareness and brand equity has decreased and will continue to decrease.

63.    Joneca's false and misleading claims have caused, and are continuing to cause, significant irreparable harm to InSinkErator's goodwill and reputation, which it has tirelessly built over decades. Joneca's reputation and goodwill have been falsely boosted at InSinkErator's expense. If Joneca's unlawful conduct is not stopped, InSinkErator will continue to suffer ongoing irreparable harm.

64.    As a direct and proximate result of Joneca's actions described above, InSinkErator has been irreparably harmed and damaged and will continue to be irreparably harmed and damaged, including through loss of sales and profits, lost customers and contracts, price erosion, and harm to its goodwill and reputation. These harms are immediate and ongoing.

### First Claim for Relief
**(*False Advertising Under Section 43(a) of the*
*Lanham Act, 15 U.S.C. § 1125(a)*)**

65.    InSinkErator adopts and incorporates paragraphs 1-64 as if fully restated herein.

66.    Joneca makes its false horsepower claims to advertise and promote its garbage disposals in interstate commerce in brick-and-mortar retail stores nationwide, nationally accessible online retailers, Joneca's nationally accessible website, and in other promotional materials.

67.    Joneca creates, approves, provides, disseminates, and/or otherwise causes and is responsible for the horsepower claims made in connection with its garbage disposals, whether offered under its own brand, a licensed brand, or a private label brand.

68.   Joneca's horsepower claims are literally false on their face and false by necessary implication. Joneca's horsepower claims are also deceptive and misleading.

69.   The horsepower of the garbage disposal motor is an inherent quality or characteristic of Joneca's garbage disposals that is material to purchasing decisions.

70.   Retailers and consumers, including professional and non-professional purchasers and potential purchasers, rely on Joneca's horsepower claims.

71.   Joneca's false and misleading statements are material to, and likely to influence, retailer and consumer purchasing decisions.

72.   Joneca's false and misleading statements have actually deceived and are likely to deceive a substantial portion of the targeted audience.

73.   On information and belief, Joneca's actions described above have at all times relevant to this action been willful and intentional.

74.   Joneca knows or should know that its horsepower claims are false and misleading and, at least, acted in reckless disregard for the truth.

75.   Joneca's horsepower claims violate Section 43(a) of the Lanham Act.

76.   As a direct and proximate result of Joneca's actions described above, InSinkErator has been irreparably harmed and damaged and will continue to be irreparably harmed and damaged, including through loss of sales and profits, lost customers and contracts, and harm to its goodwill and reputation. These harms are immediate and ongoing.

77.   Unless enjoined, Joneca will continue to engage in the above-described unlawful conduct and will cause additional damage and irreparable injury to InSinkErator, for which it has no adequate remedy at law.

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1 310.788.4400 tel  +1.310.788.4471 fax

### <u>Second Claim for Relief</u>

**(*Untrue and Misleading Advertising Under Cal. Bus. & Prof. Code § 17500*)**

78.    InSinkErator adopts and incorporates paragraphs 1-64 as if fully restated herein.

79.    Joneca advertises in the State of California and this District with the intent to increase the sales of its garbage disposals in California and to induce the public into purchasing its garbage disposals.

80.    Joneca's conduct violates California Business and Professions Code § 17500, *et seq.* ("California's False Advertising Law").  Joneca falsely advertises that its garbage disposal motors have horsepower higher than their actual level of performance, thus falsely stating the nature, characteristics, and/or qualities of its garbage disposals.

81.    Joneca knows or should have known that its advertising is false, misleading, and deceptive.

82.    Joneca's false and misleading statements have deceived and have the tendency to deceive a substantial segment of their intended audiences about matters material to their customers' purchasing decisions.

83.    Joneca's violations of California's False Advertising Law have directly and proximately caused harm to InSinkErator. InSinkErator has lost and will continue to lose sales and profits, customers and contracts, and incur harm to its goodwill and reputation as a result of Joneca's false and misleading statements. InSinkErator has also incurred and will continue to incur increased advertising and promotional costs to counteract Joneca's conduct.

84.    On information and belief, Joneca has acted with oppression, fraud, or malice, entitling InSinkErator to an award of punitive damages.

85.    On information and belief, Joneca has acted willfully, in bad faith, and with malice. Unless enjoined, Joneca will continue to cause further irreparable competitive and commercial injury to Joneca.

86. InSinkErator has no adequate remedy at law and is entitled to injunctive relief and restitution.

### **Third Claim for Relief**

### (*Unfair Business Practices Under Cal. Bus. & Prof. Code § 17200, et seq.*)

87. InSinkErator adopts and incorporates paragraphs 1-64 as if fully restated herein.

88. Joneca's actions as described above violate the California Business and Professions Code § 17200, *et seq.* ("California's Unfair Competition Law").

89. Joneca has engaged in fraudulent and unfair business acts or practices by falsely advertising its garbage disposal horsepower. Joneca advertises the false horsepower claims on its website and its marketing materials, on product packaging, or by providing the false claims to retailers for their house brand packaging and online retail websites on which Joneca's garbage disposals are offered for sale.

90. Joneca's actions violate California's False Advertising Law and the Lanham Act, and thus Joneca has also engaged in "unlawful" business acts or practices under California's Unfair Competition Law.

91. On information and belief, Joneca has acted with oppression, fraud, or malice, entitling InSinkErator to an award of punitive damages.

92. Joneca's unlawful, fraudulent, and unfair business practices have caused and continue to cause substantial and irreparable competition and commercial injury to InSinkErator. InSinkErator has lost and will continue to lose sales and profits, customers and contracts, and incur harm to its goodwill and reputation as a result of Joneca's false and misleading statements. InSinkErator has also incurred and will continue to incur increased advertising and promotional costs to counteract Joneca's conduct.

93. These substantial injuries are not outweighed by any countervailing benefits to consumers, particularly because of California's policy in favor of truthful advertising.

94.    Unless enjoined, Joneca will continue to cause further competitive and commercial harm to InSinkErator.

95.    InSinkErator has no adequate remedy at law and is entitled to injunctive relief and restitution.

### **Fourth Claim for Relief**

#### (*Intentional Interference with Prospective Economic Advantage*)

96.    InSinkErator adopts and incorporates paragraphs 1-64 as if fully restated herein.

97.    InSinkErator has ongoing business relationships with various national retailers, including Ace Hardware, Amazon.com, Blain's Farm & Fleet, Build with Ferguson, Costco, Do it Best, Ferguson, Fleet Farm, Grainger, HD Supply, Lowe's, Menards, The Home Depot, TrueValue, and Wayfair, among others. As part of these relationships, InSinkErator sells its branded products in brick-and-mortar stores and online. InSinkErator has also sold garbage disposals to retailers for use as private label products sold under the retailers' own brands. InSinkErator routinely bids for both branded and private label contracts with retailers. Continuing these business relationships would result in future economic benefit to InSinkErator in terms of millions of dollars in sales and profits, increased brand exposure and awareness, increased brand value, and additional monetary and non-monetary benefits of incumbent retailer relationships.

98.    InSinkErator has already lost substantial retail opportunities to Joneca, including a private label contract and shelf space as discussed above, and other retailer bidding processes are active and ongoing and will continue to arise indefinitely.

99.    Joneca knew of these actual and potential business relationships.

100.    Joneca and InSinkErator are direct competitors. Their products are publicly available for sale through the retailers' physical and online stores. Further, there are only a handful of companies who are able to supply retailers with private

label garbage disposals. Joneca is well-aware that it is competing with InSinkErator for retailer business.

101.  Because Joneca is seeking to displace InSinkErator in its relationships with retailers, Joneca knew or should have known that InSinkErator's relationships with the retailers would be disrupted if it failed to act with reasonable care.

102.  On information and belief, Joneca knows that the horsepower it advertises for its garbage disposal products are higher than their actual horsepower performance. By falsely advertising its horsepower, Joneca intentionally engaged in wrongful conduct designed to interfere with or disrupt InSinkErator's relationships with retailers.

103.  Joneca disseminated its false and misleading statements to retailers in bids, line reviews, pitch meetings, in advertising and promotional materials, and on the packaging of products provided to retailers.

104.  Joneca's false and misleading statements have deceived and will continue to deceive retailers into believing that they can purchase and sell lower-priced garbage disposals with the same horsepower as InSinkErator's garbage disposals, when in reality, Joneca's garbage disposals have a significantly lower horsepower than advertised.

105.  On information and belief, Joneca knowingly interfered with InSinkErator's relationships with retailers.

106.  Joneca's intentional interference caused and will continue to cause InSinkErator economic harm in terms of millions of dollars in lost sales and profits, loss of brand exposure and awareness, loss of brand value, and additional monetary and non-monetary losses.

107.  Unless enjoined, Joneca will continue to cause harm to InSinkErator.

108.  InSinkErator has no adequate remedy at law and is entitled to injunctive relief and restitution.

109. On information and belief, Joneca has acted with oppression, fraud, or malice, entitling InSinkErator to an award of punitive damages.

### **Fifth Claim for Relief**

#### (*Negligent Inference with Prospective Economic Advantage*)

110. InSinkErator adopts and incorporates paragraphs 1-64 as if fully restated herein.

111. InSinkErator has ongoing business relationships with various national retailers, including Ace Hardware, Amazon.com, Blain's Farm & Fleet, Build with Ferguson, Costco, Do it Best, Ferguson, Fleet Farm, Grainger, HD Supply, Lowe's, Menards, The Home Depot, TrueValue, and Wayfair, among others. As part of these relationships, InSinkErator sells its branded products in brick-and-mortar stores and online. InSinkErator has also sold garbage disposals to retailers for use as private label products sold under the retailers' own brands. InSinkErator routinely bids for both branded and private label contracts with retailers. Continuing these business relationships would result in future economic benefit to InSinkErator in terms of millions of dollars in sales and profits, increased brand exposure and awareness, increased brand value, and additional monetary and non-monetary benefits of incumbent retailer relationships.

112. InSinkErator has already lost substantial retail opportunities to Joneca, including a private label contract and shelf space as discussed above, and other retailer bidding processes are active and ongoing and will continue to arise indefinitely.

113. Joneca knew of these actual and potential business relationships.

114. Joneca and InSinkErator are direct competitors. Their products are publicly available for sale through the retailers' physical and online stores. Further, there are only a handful of companies who are able to supply retailers with private label garbage disposals. Joneca is well-aware that it is competing with InSinkErator for retailer business.

115. Because Joneca is seeking to displace InSinkErator in its relationships with retailers, Joneca knew or should have known that InSinkErator's relationships with the retailers would be disrupted if it failed to act with reasonable care.

116. On information and belief, Joneca knows that the horsepower it advertises for its garbage disposal products are higher than their actual horsepower performance. By falsely advertising its horsepower, Joneca intentionally engaged in wrongful conduct designed to interfere with or disrupt InSinkErator's relationships with retailers.

117. Joneca disseminated its false and misleading statements to retailers in bids, line reviews, pitch meetings, in advertising and promotional materials, and on the packaging of products provided to retailers.

118. Joneca's false and misleading statements have deceived and will continue to deceive retailers into believing that they can purchase and sell lower-priced garbage disposals with the same horsepower as InSinkErator's garbage disposals, when in reality, Joneca's garbage disposals have a significantly lower horsepower than advertised.

119. Joneca's negligent actions have disrupted the relationships between InSinkErator and garbage disposal retailers, causing InSinkErator economic harm in terms of millions of dollars in lost sales and profits, loss of brand exposure and awareness, loss of brand value, and additional monetary and non-monetary losses.

120. Unless enjoined, Joneca will continue to cause harm to InSinkErator.

121. InSinkErator has no adequate remedy at law and is entitled to injunctive relief and restitution.

122. On information and belief, Joneca has acted with oppression, fraud, or malice, entitling InSinkErator to an award of punitive damages.

Katten

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel +1.310.788.4471 fax

## Prayer for Relief

WHEREFORE, InSinkErator prays that this Court enter judgment in its favor on each claim for relief set above and award it relief including, but not limited to, the following:

A.    An Order adjudging that Joneca is liable for false and misleading advertising in violation of Section 43(a) of the Lanham Act;

B.    A nationwide injunction preliminarily and permanently enjoining Joneca and its employees, officers, directors, principals, shareholders, subsidiaries, affiliates, agents, related companies, licensees, assigns, successors, managed providers, and all persons in active concert or participation with any of them from engaging in any of the false and misleading advertising practices challenged in this Complaint, and directing all such parties to cease and remove and to cause to be removed from public display all false and misleading statements;

C.    An order directing Joneca to disseminate advertising to correct the harm done to consumers, retailers, and InSinkErator by Joneca's false and misleading advertising practices challenged in this Complaint;

D.    An order directing Joneca to file with this Court and serve on InSinkErator's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

E.    An order requiring Joneca to account for and pay to InSinkErator any profits arising from Joneca's unlawful activities described in this Complaint, and that such profits be increased in accordance with 15 U.S.C. § 1117 and other applicable laws;

F.    An order requiring Joneca to pay InSinkErator's actual and compensatory damages caused by Joneca's unlawful activities described in this Complaint to the fullest extent permitted by law, and trebling such compensatory damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.    An order finding that Joneca's unlawful conduct constitutes an exceptional case and requiring Joneca to pay InSinkErator's costs and attorneys' fees in an amount to be determined under 15 U.S.C. § 1117 and other applicable laws;

H.    An order awarding InSinkErator punitive damages;

I.    An order awarding InSinkErator's post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961; and

J.    Such other and further relief as the Court may deem appropriate.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, InSinkErator demands a trial by jury in this action of all issues triable by jury.


Respectfully submitted,

DATED:  November 27, 2024          KATTEN MUCHIN ROSENMAN LLP


By:   /s/David Halberstadter

David Halberstadter

Attorneys for Plaintiff