**David Halberstadter (CA 107033)**
david.halberstadter@katten.com
**Asena Baran (CA 342626)**
asena.baran@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue Of The Stars, Suite 1100
Los Angeles, CA  90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

**Christopher A. Cole** (*pro hac vice*)
chris.cole@katten.com
**Michael R. Justus** (*pro hac vice*)
michael.justus@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
1919 Pennsylvania Ave NW, Suite 800
Washington, DC  20006-3404
Telephone:  202.625.3500
Facsimile:  202.298.7570

**Julia L. Mazur** (*pro hac vice*)
julia.mazur@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe St.
Chicago, IL 60661-3693
Telephone:  312.902.5200
Facsimile:   312.902.1061

*Attorneys for Plaintiff InSinkErator LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INSINKERATOR LLC, a Delaware limited liability company,<br><br>Plaintiff(s),<br><br>v.<br><br>JONECA COMPANY, LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation,<br><br>Defendant(s). | Case No. 8:24-cv-02600-JVS-ADS<br><br>**REPLY IN SUPPORT OF PLAINTIFF INSINKERATOR LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Filed Concurrently with Rebuttal Declarations of C. Zamecnik, W. Eisenstadt, D. Hofmeister, and S. Wang; Responses to Joneca's Objections; and Objections to Declarations of E. Chavez, J. Chavez, and G. McCormick]<br><br>Date:  January 6, 2025<br>Time: 1:30 p.m.<br>Place: 10C<br><br>Assigned to Hon. James V. Selna |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................... 1

II.  LEGAL STANDARD ........................................................................................... 1

III.  ARGUMENT......................................................................................................... 2

    A.  Joneca's False Horsepower Claims Violate the Lanham Act. ................. 2

        1.  Joneca's Sole Argument Regarding Falsity is Meritless. .............. 2

        2.  Joneca Cannot Rebut the Presumption of Deception. ................... 7

        3.  Joneca Misstates the Materiality Test. .......................................... 9

        4.  Joneca Fails to Rebut InSinkErator's Actual and Likely Injury.. 12

    B.  Joneca Fails to Rebut InSinkErator's Showing of Irreparable Harm. ... 15

    C.  Any Harm to Joneca from an Injunction Is of Its Own Making. ........... 18

    D.  Failing to Stop Joneca's False Advertising Would Harm the Public. ... 19

IV.  CONCLUSION ................................................................................................... 19

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1 310.788.4400 tel +1 310.788.4471 fax

**Katten**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AECOM Energy & Constr., Inc. v. Ripley*,
No. 17-cv-5398, 2017 WL 4326373 (C.D. Cal. Sept. 28, 2017) .................... 18

*All. of the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................. 1

*BNI Enterprises, Inc. v. Referral Leaders Int'l, LLC*,
No. 14-cv-2097, 2015 WL 12644984 (C.D. Cal. Jan. 9, 2015) ........................ 8

*Broadcom Corp. v. SiRF Tech., Inc.*,
No. 08-cv-546, 2009 WL 10672287 (C.D. Cal. Oct. 8, 2009)........................... 9

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) ............................................................. 6, 7

*Chaverri v. Platinum LED Lights LLC*,
No. 21-cv-1700, 2022 WL 2275664 (D. Ariz. June 22, 2022) ...................... 15

*CI Games S.A. v. Destination Films*,
No. 16-cv-05719, 2016 WL 9185391 (C.D. Cal. Oct. 25, 2016)...................... 2

*Energy Four, Inc. v. Dornier Medical Systems, Inc.*,
765 F. Supp. 724 (N.D. Ga. 1991) ...................................................... 7

*Epson Am., Inc. v. USA111, Inc.*,
259 F. Supp. 3d 387 (D.S.C. 2017) ..................................................... 11

*Flynt Distrib. Co., Inc. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984)............................................................ 2

*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989) ........................................................ 12, 14

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
No. 14-cv-03954, 2014 WL 4187982 (C.D. Cal. Aug. 22, 2014)........ 11, 13, 19

*In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*,
882 F. Supp. 915 (C.D. Cal. 1994)...................................................... 12

*In re Detroit Auto Dealers Ass'n, Inc.*,
955 F.2d 457 (6th Cir. 1992) ............................................................. 9

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
No. 17-cv-1474, 2019 WL 1431904 (C.D. Cal. Feb. 6, 2019) .................. 8, 9

*LivePerson, Inc. v. [24]7.ai, Inc.*,
No. 17-cv-01268, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) .................... 12

*Los Angeles Memorial Coliseum Comm'n v. NFL*,
634 F2d 1197 (9th Cir. 1980)............................................................ 17

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3019
+1.310.788.4400 tel +1.310.788.4471 fax

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
  938 F.2d 1544 (2d Cir. 1991) ................................................................................. 7

*Moroccanoil, Inc. v. Dermorganic Lab'ys, Inc.*,
  No. 09-cv-4257, 2009 WL 10675634 (C.D. Cal. Nov. 9, 2009) ........................ 8

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
  No. 16-cv-3975, 2018 WL 11352041 (C.D. Cal. Jan. 19, 2018) ..................... 18

*Mut. Pharm. Co. v. Ivax Pharms., Inc.*,
  459 F. Supp. 2d 925 (C.D. Cal. 2006) .............................................................. 8

*Nail All., LLC v. Vishine Enter. Ltd.*,
  No. 22-cv-937, 2022 WL 3013154 (C.D. Cal. June 15, 2022) ....................... 17

*Newborn Bros. Co. v. Albion Eng'g Co.*,
  481 F. Supp. 3d 312 (D.N.J. 2020) ................................................................. 12

*Novation Sols., Inc. v. Issuance Inc.*,
  No. 23-cv-696, 2023 WL 6373871 (C.D. Cal. Aug. 16, 2023) ................... 8, 15

*POM Wonderful LLC v. Purely Juice, Inc.*,
  No. 07-cv-2633, 2008 WL 4222045 (C.D. Cal. July 17, 2008) ................. 8, 11

*Santos Elecs. Inc. v. Outlaw Audio, LLC*,
  No. 22-cv-827, 2022 WL 18396275 (C.D. Cal. Dec. 12, 2022) ............. passim

*Sierra Club v. Hickel*,
  433 F.2d 24 (9th Cir. 1970) ............................................................................... 1

*Signeo USA, LLC v. SOL Republic, Inc.*,
  No. 11-cv-6370, 2012 WL 2050412 (N.D. Cal. June 6, 2012) ......................... 2

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ........................................................................... 9

*Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck
  Consumer Pharm. Co.*, 906 F. Supp. 178 (S.D.N.Y. 1995) ............................ 7

*Southland Sod Farms, v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .................................................................. 12, 15

*Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*,
  519 F. Supp. 3d 839 (D. Or. 2021) ................................................................. 11

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  648 F. App'x 609 (9th Cir. 2016) .................................................................... 14

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ..................................................................... 14, 15

*Warner Bros. Entm't Inc. v. WTV Sys., Inc.*,
  824 F. Supp. 2d 1003 (C.D. Cal. 2011) .......................................................... 18

*Wetzel's Pretzels, LLC v. Johnson*,
  797 F. Supp. 2d 1020 (C.D. Cal. 2011) .......................................................... 19

iii

Katten

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel +1.310.788.4471 fax

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................ 1

**Statutes**

15 U.S.C. § 1116 ............................................................................ 15

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 27:53 (5th ed. 2024) ........... 7

Anne Gilson LaLonde & Jerome Gilson, *Adios! To the Irreparable Harm
    Presumption in Trademark Law*, 107 Trademark Rep. 913 (2017)................. 16

H.R. Rep. No. 116-645 (2020) ....................................................... 15

**Katten**

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel  +1.310.788.4471 fax

## I.    INTRODUCTION

In its Opposition (ECF No. 38 ("Opp.")), Joneca attempts to justify its false horsepower claims by arguing that it complies with an irrelevant product safety standard that has nothing to do with measuring the horsepower generated by garbage disposals. Joneca's entire defense is based on that meritless position. Joneca also fails to provide even the most basic information regarding its alleged horsepower testing, such as the test data, the specific methodology used in the testing, and the identity of the lab in China where the tests were supposedly conducted. Based on the sparse information Joneca provided, it does not appear that Joneca even followed the irrelevant safety standard it purports to rely on to measure the horsepower of its garbage disposals. Joneca's Opposition fails to rebut the well-established presumptions and competent evidence put forth by InSinkErator in support of its Motion for Preliminary Injunction (ECF No. 36 ("Mot.")). Each of the preliminary injunction factors weighs heavily in InSinkErator's favor. This Court should issue a preliminary injunction and put an immediate stop to Joneca's false advertising.

## II.    LEGAL STANDARD

InSinkErator does not need to show "'reasonable certainty' that it will prevail on the merits" at trial, as Joneca wrongly asserts. (*See* Opp. 7:9–11, 12:7–9.) The correct standard for preliminary injunctive relief is the four-factor test set forth in the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and the Ninth Circuit's "serious questions" test set forth in *All. of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).[1] (Mot. 13:17–28.)

Although a party moving for preliminary injunction must present "factual support beyond the allegations of the complaint," the evidence "need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*,

---

[1] The case relied on by Joneca, *Sierra Club v. Hickel*, 433 F.2d 24 (9th Cir. 1970), was decided decades before *Winter* and *Cottrell*.

No. 16-cv-05719, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination" and may require a party to seek relief without the evidence in a form that would be admissible at trial. *Flynt Distrib. Co., Inc.*, 734 F.2d at 1394. A court, in its discretion, may accord the appropriate weight to that evidence. *See Signeo USA, LLC v. SOL Republic, Inc.*, No. 11-cv-6370, 2012 WL 2050412, at *3 (N.D. Cal. June 6, 2012).[2]

## III.  ARGUMENT

### A.  Joneca's False Horsepower Claims Violate the Lanham Act.

Joneca's Opposition fails to rebut the presumptions and evidence showing that its literally false, material horsepower claims deceive retailers and consumers and injure InSinkErator. InSinkErator has established a likelihood of success on the merits of its Lanham Act claim.

#### 1.  Joneca's Sole Argument Regarding Falsity is Meritless.

Joneca does not dispute (and thus concedes) that its horsepower claims overstate the horsepower of its garbage disposals by approximately 20–40% when the output power of the motor is measured using a dynamometer. This is the only measure of a motor's horsepower, as set forth in the Declaration of William Eisenstadt, Ph.D., and the Rebuttal Declaration of William Eisenstadt, Ph.D. (ECF No. 28 ¶ 15–25; Eisenstadt Rebuttal Dec. ¶ 15–28.) Nonsensically, Joneca argues that the mechanical output power of its motors (*i.e.*, the power to grind food waste) is somehow *not* the correct measure of horsepower. Joneca asserts that *input* current, *i.e.*, the electricity going *into* the disposal, is actually "horsepower" and the *only* correct measure. (Opp. 13–16.)

---

[2] As set forth in InSinkErator's Responses to Joneca's Objections to the Declarations of William Eisenstadt, Rebecca M. Eubanks, and Christopher Zamecnik, filed concurrently herewith, Joneca's evidentiary objections (ECF Nos. 38-8–38-10) are baseless, and the evidence set forth in the declarations of InSinkErator's witnesses is competent and reliable.

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel   +1.310.788.4471 fax

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA  90067-3019
+1.310.788.4400 tel  +1.310.788.4471 fax

Joneca's only support for that nonsensical position is a faulty application of an irrelevant safety standard, namely, Underwriters Laboratories Inc.'s ("UL") "Standard for Safety for Waste Disposers, UL 430." (*Id.*) Joneca asserts that UL 430 is the "governing industry standard" for measuring horsepower for garbage disposals. (Opp. 15.) This is a red herring. It is, at best, a reckless misinterpretation of UL 430 which, on its face, forecloses that construction. The section of UL 430 that Joneca relies on explicitly states that its safety ratings are calculated—

> regardless of any horsepower rating that is: a) Marked on the
> disposer or motor; b) Referenced in any literature packaged
> with the disposer; or c) On the packaging of the disposer.

(ECF No. 38-5 at 61.) UL 430 thus states *on its face* that its safety tests are irrelevant to horsepower advertising claims.[3]

As Joneca acknowledges, UL—the standards organization behind UL 430—is a "global safety certification company," and UL 430 is a "safety" standard. (Opp. 9:24–27, 14:5–11.) UL 430 is directed to ensuring the electrical and fire hazard safety of the garbage disposal. (Eisenstadt Rebuttal Dec. ¶¶ 5–14; Zamecnik Rebuttal Dec. ¶ 6; Wang Dec. ¶¶ 7, 11, 15–16; Hofmeister Dec. ¶ 7.) The sections of UL 430 on which Joneca relies are used only to ensure that switches and controls within the garbage disposal unit are sufficiently rated to match the electric current that a disposal will draw from an electrical circuit. (Eisenstadt Rebuttal Dec. ¶¶ 8–9.) The reference to a "horsepower rating" in those sections is a theoretical safety calculation, used solely within the confines of the UL standard, for purposes of specifying which switches and controls can be used with a garbage disposal. (Eisenstadt Rebuttal Dec. ¶ 10; Zamecnik Rebuttal Dec. ¶ 6; Wang Dec. ¶¶ 8–13; Hofmeister Dec. ¶ 9.) The theoretical "horsepower rating" includes a safety margin to ensure the switches and

---

[3] InSinkErator is not challenging the safety of Joneca's products under the safety requirements of UL 430. Rather, InSinkErator is challenging Joneca's incorrect use of that irrelevant safety standard to justify its false claims regarding horsepower.

controls can safely handle the input current drawn by a motor. (Eisenstadt Rebuttal Dec. ¶¶ 8–9; Zamecnik Rebuttal Dec. ¶ 6; Hofmeister Dec. ¶ 10.) This means, for example, that switches and controls with a 1 horsepower safety rating can be used with a motor <u>up to</u> 1 horsepower because they can safely handle the maximum amount of input current drawn by a 1 horsepower motor. (Wang Dec. ¶ 13; Hofmeister Dec. ¶ 10.) It does not mean that the disposal can be advertised as "1 horsepower."

In addition, the theoretical safety calculation set forth in UL 430 actually ignores the efficiency of the motor in order to build in a safety margin for the switches and controls. (Eisenstadt Rebuttal Dec. ¶¶ 19–28; Zamecnik Rebuttal Dec. ¶ 6; Wang Dec. ¶¶ 12–13.) The efficiency of a motor accounts for the large amount of input power lost in the motor system through such things as friction and heat, and these losses are presumed for purposes of ensuring the safety of the product. (Eisenstadt Rebuttal Dec. ¶¶ 19–28.) Without taking into account the efficiency losses inherent in all motors, input power measurements tell you *nothing* about a disposal's ability to grind food. (*See id*.) Accordingly, the ratings for switches and controls in UL 430 say *nothing* about whether a garbage disposal can actually generate a specific horsepower when motor efficiency is taken into account, as it must be. (Eisenstadt Rebuttal Dec. ¶ 18; Wang Dec. ¶ 12; Hofmeister Dec. ¶ 10.) Simply put, UL 430 is focused on the safety of the product and provides *no* method for measuring the horsepower of disposals and *no* basis for making horsepower advertising claims. (Eisenstadt Rebuttal Dec. ¶¶ 14, 28; Zamecnik Rebuttal Dec. ¶ 7; Wang Dec. ¶¶ 10–11; Hofmeister Dec. ¶ 9.)

UL confirmed this plain reading of UL 430 to InSinkErator in writing. Specifically, a UL engineer who works on UL certification issues for garbage disposals confirmed that UL 430 "is a safety standard for Waste Disposers and is **<u>not</u>** <u>meant to be used to determine the horsepower ratings of Waste Disposers</u>." (Wang Decl. ¶¶ 13–15, Ex. A (emphasis added).) The UL engineer further confirmed that the sections of UL 430 that Joneca relies on relate to safety ratings for switches and

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1300
Los Angeles, CA 90067-3012
+1.310.788.4400 tel   +1.310.788.4471 fax

4

1    controls—not disposals. (*Id.*) Although these facts are obvious from the face of UL

2    430, this written confirmation from UL removes any doubt. Joneca cannot use UL

3    430 as a justification for its false advertising.

4    Tellingly, Joneca does not cite any other definitions, standards, textbooks,

5    regulations, guidance, certifications, or authorities of any kind to support its baseless

6    "input horsepower" test methodology. This is not surprising; none exist.

7    InSinkErator's expert, Dr. William Eisenstadt, a professor at the University of

8    Florida and expert in electrical engineering, conducted extensive research and could

9    not locate a single resource supporting Joneca's "input horsepower" definition or test

10    methodology. (*See* ECF No. 28 ¶¶ 15–25.) Dr. Eisenstadt's research confirmed the

11    obvious: the horsepower of an electric motor must be measured using the motor's

12    mechanical output—like InSinkErator does. (*Id.*) This is standard practice in

13    electrical engineering across industries and generations going back more than a

14    century. (*Id.*) Measuring horsepower via a motor's mechanical output is especially

15    important for electric motors within garbage disposal units because that mechanical

16    power matters for consumers when they are grinding food scraps. (*Id.* ¶ 26.)

17    Joneca also argues that InSinkErator's horsepower measurement on a

18    dynamometer "only measures the power of the motor in isolation without regard to

19    the actual performance of the disposer." (ECF No. 38-2 ¶ 40.) This is another red

20    herring. The motor is tested because the motor is the only component in the garbage

21    disposal system that generates torque and angular velocity, which are the forces that

22    can be measured in horsepower. (Eisenstadt Rebuttal Dec. ¶¶ 24–27.) In other words,

23    horsepower is correctly measured from the motor because the motor is what generates

24    horsepower.

25    Joneca's flawed interpretation of UL 430 requires it to ignore the fact that the

26    retailers selling the parties' disposal products explicitly inform purchasers that

27    horsepower refers to *output* power, *i.e.*, the power of the disposal to grind food. (ECF

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3019
+1.310.788.4400 tel  +1.310.788.4471 fax

5

36-1 ¶¶ 27–30; ECF 24, Exs. C–E, M, P.) Joneca cannot square its made-up "input" power defense with the actual meaning of horsepower in the marketplace.

Finally, even assuming *arguendo* that UL 430 provides a competent methodology for measuring horsepower (which it certainly does not), Joneca provides no evidence that it followed the detailed test procedures set forth in UL 430. (Zamecnik Rebuttal Dec. ¶¶ 8–12.) Joneca does not explain what specific methodology was used to conduct the so-called input power tests on its disposals. But it is clear from Joneca's vague references to a dynamometer that it does *not* follow UL 430. (*Id*.) A dynamometer is not used at all in the sections of UL 430 that Joneca relies on. (*Id*.) Tellingly, Joneca also does not provide any test data or identify the Chinese lab that supposedly conducted the tests. This Court has rejected similar unsupported testing as "self-serving" and "lack[ing] support." *Santos Elecs. Inc. v. Outlaw Audio, LLC*, No. 22-cv-827, 2022 WL 18396275, at *6 (C.D. Cal. Dec. 12, 2022) ("Without explaining this 'measurement process,' how this was achieved, or what program, equipment, or variables were used, this circumstantial evidence is unpersuasive.").[4]

The well-known Lanham Act case of *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993), is also instructive. In *Castrol*, the district court granted an injunction to stop the defendant's false advertising claims. The defendant asserted that a non-industry standard test supported its advertising claim that the "viscosity breakdown" of its motor oil outperformed that of the plaintiff's. *Id*. at 945. The Third Circuit, however, explained that the district court's decision turned on what the testing actually measured. *Id*. at 944. The district court had properly found the testing measured "percent viscosity loss" rather than "viscosity breakdown." *Id*. at 942–43. As such, the district court had correctly found the defendant's claims based on that

---

[4] Joneca also asserts that two InSinkErator motors tested in China did not meet their claimed horsepower. (Opp. 15:19–23.) This unsupported testing should be disregarded. *Santos Elecs.*, 2022 WL 18396275, at *6. (*See also* Objections to the Declaration of J. Chavez at 5–7.) InSinkErator's testing establishes that its disposals *exceed* their claimed horsepower. (Zamecnik Rebuttal Decl. ¶¶ 13–17.)

Katten

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel  +1.310.788.4471 fax

1  testing were literally false. *Id.* at 946–48. Here, Joneca's purported testing shows only

2  the input power drawn *into* its garbage disposal motors—*not* the horsepower output

3  by its disposals to grind food waste. Irrelevant "input" testing cannot save its literally

4  false horsepower claims.

5  <u>2.    Joneca Cannot Rebut the Presumption of Deception.</u>

6  Joneca argues that, notwithstanding the presumption of deception caused by

7  literally false claims, InSinkErator must nevertheless provide evidence of actual

8  consumer deception. (Opp. 16–17.) Joneca's proffered deception standard would be

9  an extreme departure from the axiomatic presumption applied by this Court and other

10  courts nationwide. *See, e.g.*, 4 McCarthy on Trademarks and Unfair Competition

11  § 27:53 (5th ed. 2024); *see also Castrol*, 987 F.2d at 943 ("a plaintiff must prove

12  *either* literal falsity *or* consumer confusion, but not both;" "because the district court

13  properly found that claims in this case were literally false, it did not err in ignoring

14  Pennzoil's superfluous evidence relating to the absence of consumer confusion.");

15  *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)

16  ("Where the advertising claim is shown to be literally false, the court may enjoin the

17  use of the claim without reference to the advertisement's impact on the buying

18  public," and applying this in granting injunctive relief) (quotations omitted);

19  *Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck*

20  *Consumer Pharm. Co.*, 906 F. Supp. 178, 181 (S.D.N.Y. 1995) ("a court may enjoin

21  an ad which is explicitly or literally false without reference to the advertisement's

22  impact on the buying public," applying the presumption in granting preliminary

23  injunctive relief); *Energy Four, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp.

24  724, 731 (N.D. Ga. 1991) ("When representations are actually false, a court does not

25  have to determine whether the representations are likely to create confusion,"

26  applying the presumption in granting preliminary injunctive relief).

27  Numerous courts in this District have held that once literal falsity is established,

28  deceptiveness is as well. *See, e.g.*, *POM Wonderful LLC v. Purely Juice, Inc.*, No. 07-

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel  +1.310.788.4471 fax

7

cv-2633, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) ("A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as the court will assume that false statements actually mislead consumers."), *aff'd,* 362 F. App'x 577 (9th Cir. 2009); *Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception [and] the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.") (citations omitted); *Novation Sols., Inc. v. Issuance Inc.*, No. 23-cv-696, 2023 WL 6373871, at *11 (C.D. Cal. Aug. 16, 2023) (granting preliminary injunction, explaining that "statements that are literally false are presumed to have a tendency to deceive"); *BNI Enterprises, Inc. v. Referral Leaders Int'l, LLC*, No. 14-cv-2097, 2015 WL 12644984, at *5 (C.D. Cal. Jan. 9, 2015) (citing *Mut. Pharm. Co.*, 459 F. Supp. 2d at 933); *Moroccanoil, Inc. v. Dermorganic Lab'ys, Inc.*, No. 09-cv-4257, 2009 WL 10675634, at *8 (C.D. Cal. Nov. 9, 2009) ("Where a statement is literally false, a violation of the Lanham Act is established without a separate showing of deception on the statement's impact on the buying public.").

Likewise, this Court has presumed deception from literally false statements. *See, e.g.*, *In-N-Out Burgers v. Smashburger IP Holder LLC*, No. 17-cv-1474, 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019) (Selna, J.); *Santos Elecs.*, 2022 WL 18396275, at *8 (granting preliminary injunction).

The necessity of this presumption is apparent for an advertising claim like Joneca's, where consumers and retailers do "not have access to scientific analyses" of Joneca's disposals and have "no capacity to evaluate the veracity" of Joneca's false horsepower claims. *POM Wonderful,* 2008 WL 4222045, at *12. (*See* ECF No. 23 ¶ 12; ECF No. 27 ¶¶ 4, 10–14, 22)

Even if the presumption of deception were rebuttable (it is not), Joneca's unsupported arguments that it has not received complaints about its products, that a handful of cherry-picked and unauthenticated consumer reviews prove the quality of

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel  +1.310.788.4471 fax

**Katten**

8

its products, and that a competitor purportedly used a similar test methodology ten years ago (with no explanation for how Joneca might have this information[5]) (Opp. 17:10–21), would not rebut it. Joneca produced no competent evidence showing that consumers and retailers do anything other than take Joneca's literally false horsepower claims at face value. (Mot. 13:17–26.) Thus, deception is presumed and established.

3. Joneca Misstates the Materiality Test.

Joneca wrongly suggests that the only way to prove materiality is through consumer surveys or consumer declarations. (*See* Opp. 12–13.) That is not the test. In *Skydive Arizona*, the Ninth Circuit rejected the defendant's argument that a consumer survey is the only way to prove materiality. *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012). It upheld the district court's materiality finding supported by a consumer declaration and other evidence. *See id.* But it did not hold that these types of evidence are the only ways in which materiality can be shown.

Indeed, as this Court held years after *Skydive Arizona*, materiality may also be established by a showing that the defendant's falsity misrepresents an inherent quality or characteristic of its product. *See, e.g.*, *In-N-Out Burgers*, 2019 WL 1431904, at *7; *Broadcom Corp. v. SiRF Tech., Inc.*, No. 08-cv-546, 2009 WL 10672287, at *4 (C.D. Cal. Oct. 8, 2009) (Selna, J.). Joneca disputes whether materiality can be presumed after a showing of literal falsity (*see* Opp. 13:9–16), but InSinkErator did not advocate for a presumption of materiality. Instead, InSinkErator has shown that Joneca's false horsepower claims pass the inherent characteristic test: horsepower, the output power to grind food waste, is an inherent characteristic of any garbage disposal. (*See* ECF No. 27 ¶¶ 7–9.) In other words, without horsepower, a disposal will not serve its sole purpose and grind food. (*See id.* ¶¶ 7–8.) Thus, horsepower claims are material because they represent the inherent function of disposals.

---

[5] It would be improper to agree with competitors to use an incorrect test method for purposes of restricting advertising competition. *See, e.g.*, *In re Detroit Auto Dealers Ass'n, Inc.*, 955 F.2d 457 (6th Cir. 1992) (affirming injunction against agreement among defendants to limit showroom hours).

9

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1500
Los Angeles, CA 90067-3012
+1.310.788.4400 tel +1.310.788.4471 fax

1    Joneca's attempt to reframe the materiality question fares no better. It asserts

2    that "[t]he question is not whether horsepower in general is material, but whether the

3    differences in the way Joneca and ISE are measuring it is." (Opp. 19:4–7.) This is a

4    strawman argument. The actual question is whether Joneca's *false horsepower claims*

5    are material to purchasing decisions—not how Joneca attempts to justify those false

6    claims. Garbage disposal purchasers will not know how Joneca measured its

7    horsepower; but they will care whether the stated horsepower claim is true. For

8    example, purchasers will care whether, if they are paying for a 1¼ horsepower

9    disposal, they are actually getting a disposal that provides 1¼ horsepower to grind

10   food waste. Joneca charges higher prices for each successive gradation of horsepower

11   (ECF No. 36-1 ¶ 13), and consumers will expect to get what they pay for.

12   InSinkErator is seeking to stop Joneca's false horsepower claims, *e.g.*, labeling a

13   product with a higher numerical horsepower than what it actually achieves. (*See*

14   *generally* Mot.) Those false horsepower claims are plainly material to purchasing

15   decisions.

16   Joneca's product packaging further belies its argument that its false horsepower

17   claims are not material. The packaging relied on by Joneca in its Opposition make

18   clear that Joneca prominently touts its false horsepower claims in an attention-

19   grabbing manner. For example, on the packaging for its American Standard disposal,

20   "1¼ HORSEPOWER" is featured in large, contrasting lettering on all four sides of

21   the package, in addition to on two sides in the largest font that appears on the

22   packaging. (*See* ECF No. 38-5, Ex. E at 160.) On the packaging for its private label

23   Glacier Bay disposal, the "1/3" in "1/3 HORSEPOWER" is approximately the same

24   size as the GLACIER BAY brand name. (*See id.* at 161.) It is also featured on the top

25   of the front and both sides of the packaging. (*See id.*) On the packaging for its private

26   label Maintenance Warehouse disposal, "½ HP FOOD WASTE DISPOSER

27   WITHOUT POWER CORD" is on each side of the box, and apart from

28   "WAREHOUSE" in the Maintenance Warehouse logo, is the largest typeset on the

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel  +1.310.788.4471 fax

10

packaging. (*See id.* at 162.) If Joneca does not believe horsepower matters to purchasers, then why does it shine such a bright light on the horsepower claims on its packaging? Joneca's prominent placement of its false horsepower claims further establishes their materiality. *See POM Wonderful*, 2008 WL 4222045 (noting the prominence of the marketing claims on the juice bottles in finding them material); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. 14-cv-03954, 2014 WL 4187982, at *4 (C.D. Cal. Aug. 22, 2014) ("Indeed, that the statements relate to key factors informing consumer decisions is evidenced by the fact that Euro–Pro itself felt the features were significant enough to consumers to highlight prominently in comparing its goods to those of its competitor."); *Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*, 519 F. Supp. 3d 839, 854 (D. Or. 2021).[6]

Joneca mischaracterizes as "mere speculation" InSinkErator's evidence showing that horsepower claims are the primary focus of disposal promotion and categorization in the marketplace. (Opp. 19:12–19.) To the contrary, InSinkErator's evidence showing the prominent focus on horsepower claims on retail shelves and online is supported by witness testimony, authenticated photographs, statements of the retailers, and other competent evidence. (Mot. 13:17–26, 20:23–22:4; ECF No. 36-1 ¶¶ 13–17, 20, 24.) The materiality of horsepower claims is self-evident from the point-of-sale photographs and screenshots provided by InSinkErator. (*E.g.*, ECF No. 36-1 ¶¶ 13–17; ECF No. 24, Exs. A–B, H, N–Z; ECF 25, Ex. B.)

Finally, the Court does not need to find horsepower is the *only* feature driving consumers' and retailers' purchasing decisions to find Joneca's horsepower claims material. *See, e.g., Epson Am., Inc. v. USA111, Inc.*, 259 F. Supp. 3d 387, 393 (D.S.C. 2017) (finding false statements about lumen output material where "[b]rightness is one characteristic customers rely on in determining what projector may best fit their needs); *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d

---

[6] Joneca implicitly admits that horsepower claims are important to retailers in awarding contracts. (*See* Opp. 20 (ceasing to communicate with retailers "about its horsepower ratings during contract negotiations" would have "enormous" impact, resulting in losses that would "jeopardize Joneca's ability to operate.")

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3019
+1.310.788.4400 tel +1.310.788.4471 fax

312, 358 (D.N.J. 2020) ("Newborn was not required to demonstrate that customers were purchasing Albion products only because they were made in America. The Court finds that Albion's claims were material in light of the substantial evidence that many customers consider it a relevant factor.") Here, and unlike the plaintiffs in *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-cv-01268, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) and *In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915 (C.D. Cal. 1994), InSinkErator provided evidence showing horsepower is a top purchasing consideration for consumers. (*See* ECF No. 36-1 ¶ 23.)

Joneca's false horsepower claims are material to purchasing decisions.

4.    Joneca Fails to Rebut InSinkErator's Actual and Likely Injury.

Joneca correctly states that the legal standard for injury is whether InSinkErator "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." (Opp. 20:10–13 (quoting *Southland Sod Farms, v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).) But Joneca then ignores that standard. It does not even attempt to rebut InSinkErator's showing that it is *likely* to be injured. Instead, Joneca only partially addresses the *actual* injury shown by InSinkErator. (*Id.* at 20–21.) But actual injury is not even required for injunctive relief. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("because of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a)—consumer protection—a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)"); *Southland Sod Farms*, 108 F.3d at 1145–46 ("[E]ven if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction."). In any event, injury is presumed in this case, and InSinkErator has shown both actual injury and likely injury.

InSinkErator has proven through competent witness testimony that it is likely to be harmed by Joneca's false horsepower claims. (Mot. 24:10–25:14, 25:23–29:14;

12

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel  +1.310.788.4471 fax

Katten

ECF No. 36-1 ¶¶ 31–39, 41–43.) Joneca has not disputed (nor can it) that the parties are direct competitors; that their products are sold side-by-side in the same major home improvement retail stores and elsewhere; that the parties directly compete for the same contracts with the same retailers including Company A and Company B;[7] and that the parties are likely to and will continue to directly compete for the same contracts with the same retailers now and in the future. (*See* ECF No. 36-1 ¶¶ 8–10, 14–17, 20–21, 24–25, 32–34.) Indeed, it is indisputable that, absent an injunction, retailers and consumers will continue to choose between InSinkErator's products and Joneca's falsely labeled products, which sit directly next to each other on shelves and online, grouped by horsepower. (*Id*. ¶¶ 14–17, 32–34.) On these facts, continued injury in the form of diverted sales, harm to goodwill, and the other injuries articulated by InSinkErator is not only *likely*—it is inevitable. *See Homeland Housewares*, 2014 WL 4187982, at *4 ("[G]iven the statements' materiality and the fact that the products are sold by the same retailers, there is little basis for doubt that [plaintiff] is likely to be injured as a result of the false statements in the form of diverted sales or diminished goodwill."). Joneca cannot seriously dispute this.

While ignoring *likely* injury—the correct legal standard—Joneca attempts to muddy the water on causation for a portion of the *actual* injury suffered by InSinkErator, namely, lost sales and business opportunities with Company A and Company B. (Opp. 20:21–21:27.) Joneca admits the existence of those retailer deals, the head-to-head competition between Joneca and InSinkErator for the deals, and the fact that Joneca was awarded the business instead of InSinkErator. (*Id*.) Joneca attributes these injuries, however, to the supposed superiority of Joneca's products. (*Id*.) As support, Joneca points to the biased say-so of its employees ("[i]t is because ISE is selling an inferior product") and a handful of unauthenticated customer reviews apparently pulled off the Internet from some undisclosed web pages (*e.g.*, "Dependable Company. Better, more powerful than InSinkerator"). (Opp. 20:21–

---

[7] InSinkErator uses the terms "Company A" and "Company B" as defined in the Opposition. (Opp. 8, n.2.)

21:2.)[8] Joneca also speculates why Company A and Company B chose Joneca over InSinkErator, other than because of Joneca's false advertising. (Opp. 21:6–10.) Not only does Joneca's position ignore the correct legal test and the undisputed facts discussed above, but it is also based entirely on speculation that is inadmissible or should be wholly disregarded by the Court. (*See* Objections to Declarations of E. Chavez and J. Chavez, filed concurrently herewith.)

Moreover, InSinkErator need not prove that Joneca's false horsepower claims were the *only* cause of its injury or likely injury. *See Santos Elecs.*, 2022 WL 18396275, at *8 ("[defendant] has not shown that causation was severed [despite other potential causes] because a portion of the decline [in sales] could still be attributable to the false statement."). Even if Joneca could provide competent evidence of some additional cause of injury to InSinkErator (which it has not), such evidence does not "sever" causation. *See id.*

Indeed, InSinkErator's lost sales to Company A and Company B are presumptively caused by Joneca's false advertising. (ECF No. 36-1 ¶¶ 44–55, 59–60.) *Harper House,* 889 F.2d at 210. As stated by this Court, "[b]ecause [plaintiff] has submitted proof of lost sales during the time [defendant] made the literal false statement and the parties are direct competitors, [plaintiff] is entitled to a presumption of commercial injury caused by the false statement." *Santos Elecs.*, 2022 WL 18396275, at *8 (granting preliminary injunction); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 616 (9th Cir. 2016) (the parties' competitive relationship provides the causal link because "'a misleading ad can upset their relative competitive positions' and thereby cause injury") (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011)); *Homeland*

---

[8] Joneca implies that InSinkErator's decision to offer permanent magnet motors (in addition to induction motors) proves that Joneca's products are superior, and thus Joneca's false claims cannot harm InSinkErator. (Opp. 9:2–4, 19:24–20:2.) That logic is faulty. InSinkErator's product mix is irrelevant to the falsity of Joneca's horsepower claims. Regardless of motor type, Joneca cannot make false statements.

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel  +1.310.788.4471 fax

Katten

*Housewares,* 2014 WL 4187982, at *4; *Novation Sols.*, 2023 WL 6373871, at *12 (presuming injury in granting preliminary injunction).

"Even without the benefit of the presumption, a plaintiff may 'establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business' even 'without direct evidence of lost sales or concrete proof of injury.'" *Santos Elecs.*, 2022 WL 18396275, at *8 (citations omitted) (quoting *TrafficSchool.com*, 653 F.3d at 826; *Chaverri v. Platinum LED Lights LLC*, No. 21-cv-1700, 2022 WL 2275664, at *6 (D. Ariz. June 22, 2022)). Joneca cannot rebut InSinkErator's showing that it is likely to be harmed by Joneca's false claims given the parties' head-to-head competition and the materiality of Joneca's literally false horsepower claims. *Santos Elecs.*, 2022 WL 18396275, at *8.

Accordingly, InSinkErator has established that it "has been or is likely to be injured as a result of" Joneca's false horsepower claims. *Southland Sod Farms*, 108 F.3d at 1139.

### B. **Joneca Fails to Rebut InSinkErator's Showing of Irreparable Harm.**

Joneca cannot rebut the statutory presumption of irreparable harm codified in the Lanham Act. 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction . . . ."). Joneca attempts to sidestep that presumption by implying that it does not exist and InSinkErator is merely "claiming" that it does. (Opp. 22:6–8) (InSinkErator is "claiming that irreparable harm must be presumed if it establishes a likelihood of success on the merits.") But the presumption exists in the plain language of the Lanham Act. 15 U.S.C. § 1116(a). *See also Santos Elecs.*, 2022 WL 18396275, at *8 (collecting cases). Congress mandated the presumption for good reason—it is notoriously difficult to directly prove irreparable harm, particularly at the preliminary injunction stage. *See* H.R. Rep. No. 116-645, at 16 n.36 (2020) ("The classic presumption also assumed that injury to reputation or goodwill cannot easily be

15

quantified or adequately compensated with money damages. It is often next to impossible to prove such evanescent injury at the preliminary injunction stage. Consumer confusion, particularly that generated by intentional infringement, would doubtlessly erode market share to an unquantifiable degree.") (quoting Anne Gilson LaLonde & Jerome Gilson, *Adios! To the Irreparable Harm Presumption in Trademark Law*, 107 Trademark Rep. 913, 921 (2017)). The presumption applies here because, as discussed above, InSinkErator is likely to succeed on the merits of its Lanham Act claim. *See Santos Elecs.*, 2022 WL 18396275, at *8 (applying presumption and granting preliminary injunction).

Even without the statutory presumption, InSinkErator has shown through competent witness testimony that it is suffering and will continue to suffer a variety of paradigmatic irreparable harms, including lost customers, lost retailer contracts and business opportunities; price erosion; profit erosion; lost market share; harm to goodwill and reputation; loss of brand awareness; and loss of unknown quantities of future sales. (Mot. 25:23–29:14; ECF No. 36-1 ¶¶ 36, 44–55, 59–60.) Once lost, all are exceedingly hard to regain.

Joneca attempts to rebut InSinkErator's clear showing of irreparable harm by arguing that: (1) InSinkErator has not named the retailers whose business the parties compete for; (2) InSinkErator's evidence of harm is "conclusory;" (3) InSinkErator is offering "an overpriced and lower value product;" (4) unnamed "industry competitors" allegedly "measure their disposers on the same input standard" as Joneca; and (5) the harms suffered by InSinkErator are compensable with monetary damages. (Opp. 22–24.) Each of these arguments fail.

Joneca cites no support for its argument that InSinkErator must name every customer that the parties will compete for in order to show irreparable harm at this stage. (Opp. 22:18–23:4.) Of course, there is no such requirement, as evidenced by the presumption of irreparable harm. Moreover, InSinkErator *has* identified specific customers for which the parties directly compete. (ECF No. 36 ¶¶ 6–9, 41–43.) Joneca

16

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067-3012
+1.310.788.4400 tel +1.310.788.4471 fax

1  has not disputed those facts nor can it. Joneca is well-aware that it competes with
2  InSinkErator for business from those and other "major retailers" (*id.* ¶ 44), and its
3  feigned ignorance does not negate irreparable harm.

4        Joneca incorrectly attacks InSinkErator's evidence of harm as "conclusory."
5  (Opp. 22–24.) InSinkErator provided specific factual reasons for why such harm is
6  occurring and likely to continue to occur. For example, with respect to price erosion
7  and profit erosion, InSinkErator witness testimony explains that InSinkErator has cut
8  its prices and profit margins specifically to compete with Joneca's cheaper, falsely
9  labeled products. (*See* ECF No. 36 ¶¶ 45–48.) That is not a conclusion; it is a fact.
10 And it demonstrates irreparable harm. *See Nail All., LLC v. Vishine Enter. Ltd.*, No.
11 22-cv-937, 2022 WL 3013154, at *4 (C.D. Cal. June 15, 2022) (finding price erosion
12 and diverted sales irreparably harmed plaintiff's relationships with its distributors).
13 InSinkErator witness testimony similarly explains the factual basis for the variety of
14 other harms InSinkErator is suffering. (*See* ECF No. 36 ¶¶ 36–61.)

15       Joneca's assertions that InSinkErator offers "an overpriced and lower value
16 product" and that "industry competitors" allegedly "measure their disposers on the
17 same input standard" with no demonstrable evidence to support such claims and are
18 based entirely on speculation and opinion that is inadmissible or should be wholly
19 disregarded by the Court. (*See* Objections to Declarations of E. Chavez and J. Chavez,
20 filed concurrently herewith.)

21       As detailed in the Motion, the harms suffered by InSinkErator are classic
22 irreparable harms that are not fully compensable with monetary damages.
23 (Mot. 25:23–29:14) (collecting cases). Joneca's single citation to a decades-old
24 antitrust case is inapposite. (Opp. 24:3–6 (citing *Los Angeles Memorial Coliseum
25 Comm'n v. NFL*, 634 F2d 1197, 1202 (9th Cir. 1980).)

26        Joneca has not rebutted and cannot rebut the statutory presumption of
27 irreparable harm or InSinkErator's evidence of irreparable harm. InSinkErator has
28 thus proven irreparable harm absent the issuance of a preliminary injunction.

17

### C.    Any Harm to Joneca from an Injunction Is of Its Own Making.

Joneca argues that InSinkErator's requested relief will put it out of business. (Opp. 24-25.) This argument is unsupported and ignores the tailored categories of relief actually sought by InSinkErator. Specifically, InSinkErator seeks to prohibit Joneca from creating and distributing any *new* marketing materials and packaging and to stop falsely stating the horsepower of its products for purposes of obtaining contracts from retailers and others. (*See* ECF No. 20-1 ("Proposed Order") ¶¶ 1–3.) InSinkErator separately requests that Joneca remove its false claims already in the marketplace within 45 days, *e.g.*, by "stickering over" and correcting its false claims. (Proposed Order ¶ 4; *see also* Mot. 22.) None of the requested relief requires Joneca to shut down its business or stop selling disposals. Instead, it simply must tell the truth about the horsepower of its disposals. It could relabel the falsely labeled products and sell them lawfully.

Joneca argues InSinkErator's requested relief would jeopardize its entire business. But courts routinely reject this argument; "it is well established among courts in this Circuit that a defendant suffers no harm from an injunction that prevents continued unlawful conduct." *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. 16-cv-3975, 2018 WL 11352041, at \*11 (C.D. Cal. Jan. 19, 2018) (citing *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1014–15 (C.D. Cal. 2011)); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) ("The district court appears to have been strongly influenced by the fact that an injunction would be devastating to Avant!'s business, which we hold to be error warranting reversal of the district court's decision."); *AECOM Energy & Constr., Inc. v. Ripley,* No. 17-cv-5398, 2017 WL 4326373, at \*8 (C.D. Cal. Sept. 28, 2017) (finding balance of harms in plaintiff's favor despite defendants' argument that defendants "would be essentially put out of business" from a preliminary injunction), *aff'd sub nom., AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115 (9th Cir. 2018).

The fact that InSinkErator is owned by a large company does not change the balance of harms. For example, the court in *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020 (C.D. Cal. 2011) rejected this argument. There, the defendant argued that a preliminary injunction would force it to "close the family business" and lay-off its employees, whereas plaintiff, "a large company, will not be adversely affected by the denial of a preliminary injunction." *Id.* at 1028–29. The court disagreed—it was the defendant who "brought on these risks." *Id.* at 1029. Joneca's falsities are irreparably harming InSinkErator and deceiving consumers and retailers, tipping the balance of harms squarely in InSinkErator's favor.

### D.    Failing to Stop Joneca's False Advertising Would Harm the Public.

Joneca's argument that an injunction would not be in the public interest rises and falls on literal falsity. Joneca is deceiving consumers and retailers across the nation about a key characteristic of its products. Stopping that deception serves the public interest. *See Homeland Housewares*, 2014 WL 4187982, at *6 ("There is a strong public interest in preventing false advertising of products in the marketplace.").

## IV.    CONCLUSION

Each of the preliminary injunction factors weigh heavily in InSinkErator's favor. InSinkErator respectfully requests that this Court grant InSinkErator's Motion and enter its Proposed Order to put an immediate stop to Joneca's deception and the irreparable harm it is causing.

Respectfully submitted,

DATED:  December 23, 2024         KATTEN MUCHIN ROSENMAN LLP

By:    /s/David Halberstadter
         David Halberstadter
         Attorneys for Plaintiff

## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Plaintiff InSinkErator LLC, certifies that this brief contains 6,518 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

DATED:  December 23, 2024          KATTEN MUCHIN ROSENMAN LLP


By:   /s/David Halberstadter

David Halberstadter

Attorneys for Plaintiff

Katten

Katten Muchin Rosenman LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
+1.310.788.4400 tel  +1.310.788.4471 fax