UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] Order Regarding Motion for Preliminary Injunction [22, 36] [Public]**

Before the Court is Plaintiff InSinkErator LLC's ("InSinkErator") motion for preliminary injunction (Mot., Dkt. Nos. 22, 36.) Defendant Joneca Company, LLC ("Joneca") filed an opposition. (Opp'n, Dkt. No. 38.) InSinkErator replied. (Reply, Dkt. No. 47.)

The Parties appeared for oral argument on January 6, 2025. The Court ordered that InSinkErator and Joneca meet and confer before submitting a joint brief regarding the specifics of granting the requested injunction. On January 8, 2025, the Parties submitted a joint brief. (Joint Brief, Dkt. No. 69.)

For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

This case is about an alleged pattern of false advertising by Joneca with regard to the horsepower of its various garbage disposals. InSinkErator claims to be the world's largest manufacturer of garbage disposals for home and commercial use. (Mot. at 2.) InSinkErator was "the original innovator of garbage disposal technology," and continues to lead the industry today. (Id.) Because of its longevity and leadership in the industry, it has built up a reputation and considerable goodwill among retailers and consumers. (Id.)

Joneca is "a family-operated company" that focuses on the international disposer market. (Opp'n at 2.) In 2005, Joneca entered the U.S. market, at which time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

InSinkErator was dominating. (Id.) In an effort to find its niche, Joneca offered a new type of garbage disposals that used permanent magnet direct current ("PMDC") rather than the conventional alternating current ("AC") models used by InSinkErator. (Id.) Within a couple of years, Joneca began securing contracts with Costco and Menards to sell its disposers online, and eventually in-store. (Id.)

Joneca claims to offer garbage disposals at 1/2, 3/4, 1, and 1 1/4 horsepower (frequently referred to as "HP"). (Mot. at 3; DeLizio Decl. Exs. R–X.) Joneca prominently displays these horsepower ratings on its product packaging, as well as its promotional materials online and in brick-and-mortar retail stores nationwide. (Id.; Decl. of Rebecca Eubanks ("Eubanks Decl."), Dkt. No. 36, ¶¶ 14–17.) These garbage disposals tend to match the same horsepower advertised by InSinkErator on its disposals, but at a cheaper price. (Mot. at 4.) Joneca's garbage disposals are sold at many of the same national brick-and-mortar and online retailers as InSinkErator's disposals, including notable retailers such as Amazon.com, Costco, HD Supply, Lowe's, Menards, and The Home Depot. (Id. at 3.)

On or around August 29, 2024, InSinkErator started testing Joneca's garbage disposals and discovered "a substantial disparity in measured horsepower compared to Joneca's claims." (Mot. at 7.) The maximum horsepower measured was approximately 39% below the claimed 1 1/4 horsepower disposal, and 24% below the claimed 1 horsepower disposal. (Id.; Decl. of Christopher Zamecnik, Dkt. No. 27, ¶ 28.) After investigating further, InSinkErator found that all of Joneca's products did not produce the claimed horsepower and that Joneca could not produce a true 1 or 1 1/4 horsepower product. (Id.)

Joneca did not deny InSinkErator's findings, but rather, asserts that the recognized standard for garbage disposals looks only at *input* horsepower and not the *output* horsepower measured by InSinkErator. (Opp'n at 4–5.) Thus, Joneca does not believe it has made any false statement because all of its tested samples met or exceeded the *input*-based horsepower rating. (Id. at 6.)

InSinkErator now seeks to enjoin Joneca from making any false and deceptive horsepower claims regarding Joneca-made garbage disposal products in advertising, marketing, promotional, or other commercial materials, whether made to retailers, wholesalers, or other third parties. (Mot. at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions. On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy never awarded as of right. Id. (citation omitted).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). To satisfy the irreparable injury element, plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22 (citations omitted).

## III. DISCUSSION

### A.   Initial Evidentiary Objections

"[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). In many circuits, the Federal Rules of Evidence do not apply to preliminary injunction hearings. See, e.g., SEC v. Cherif, 933 F.2d 403, 412 n.8 (7th Cir. 1991). District courts in the Ninth Circuit have likewise found that affidavits in support or opposition to a preliminary injunction motion need not meet the standards of the Federal Rules of Evidence. Bracco v. Lackner, 462 F. Supp. 436, 442 (N.D. Cal. 1978). "The weight to be given to such evidence is a matter for the Court's discretion, upon consideration of the competence, personal knowledge, and credibility of the affiant." Id.; C. Wright and A. Miller, 11 Federal Practice and Procedures § 2949 at 469–73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

    <u>1.</u>    <u>Joneca's Objections</u>

    To support its motion for a preliminary injunction, InSinkErator submitted declarations from six individuals, along with accompanying exhibits. (<u>See</u> Mot. at 3.) Joneca objects to various portions of three of the declarations: William Eisenstadt, Rebecca Marie Eubanks, and Christopher Zamecnik. (Dkt. No. 38.)

    With respect to the objection of William Eisenstadt, Joneca argues that various paragraphs should not be considered where Eisenstadt does not have the necessary knowledge, skill, experience, training, or education to opine on the matter. (Objection to Eisenstadt, Dkt. No. 38-8 at 2.) Joneca objects under Rule 702 of the Federal Rules of Evidence. The Court disagrees. Dr. Eisenstadt has specialized knowledge "in the field of electronic circuitry and in the design and testing of circuits for ignition systems and power electronics." (Decl. of William R. Eisenstadt ("Eisenstadt Decl."), Dkt. No. 28.) The portions that Joneca objects to all relate to his opinion on motor mechanical systems, horsepower findings, and electric motors. (<u>See</u> <u>id.</u> ¶¶ 15, 21, 24–26, 30.) These subjects are within the knowledge and competence of Dr. Eisenstadt. Moreover, Dr. Eisenstadt states that he reviewed the relevant literature in the garbage disposal category. (<u>Id.</u> ¶¶ 15, 30.) Therefore, Joneca's objection is overruled. To the extent that Dr. Eisenstadt makes general assertions about what horsepower consumers should prefer, the Court will weigh such evidence with less import.

    Joneca also objects to portions of Eubanks' Declaration on the grounds that the statements lack foundation and constitute hearsay. (<u>See</u> Objection to Eubanks, Dkt. No. 38-9 at 2.) Specifically, Joneca argues that several of the statements made by Eubanks could not have been based on personal knowledge when she did not begin working at InSinkErator until January 2024. (<u>Id.</u> at 3.) The Court disagrees. Eubanks Declaration makes clear that she has "extensive knowledge of InSinkErator's business, its products, its sales and marketing strategies and data, and its relationships with retailers and others who purchase InSinkErator's products at wholesale and at retail." (Eubanks Decl., ¶ 1.) Moreover, in each of the paragraphs cited by Joneca, Eubanks either states directly, or had previously stated, that she personally reviewed the information necessary to come to her conclusion. Thus, Eubanks does not lack personal knowledge. Additionally, the Court finds that Eubanks' opinions regarding the impact of Joneca's false advertising are proper lay testimony. Finally, with respect to any potential hearsay—which Joneca does not specify—the Court will weigh such statements accordingly. <u>See</u> <u>Johnson v.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

Finally, Joneca objects to two paragraphs of Zamecnik's declaration because they constitute improper lay opinion testimony and lack foundation in violation of Federal Rules 602, 701, and 702. (Objection to Zamecnik, Dkt. No. 38-10 at 2.) The Court overrules these objections. Damecnik is a Product Engineering Technician II at InSinkErator who spends the vast majority of his time testing motors in InSinkErator's laboratories. (Zamecnik Decl. ¶¶ 1, 5.) His opinions about how horsepower affects garbage disposal performance are not only proper lay opinion from personal knowledge based on years of experience, but also generally known facts in the industry. (See, e.g., Eubanks Decl. Ex. G.) This objection is overruled.

### 2. InSinkErator's Objections

InSinkErator likewise objects to several portions of three declarations filed by Joneca in opposition to the preliminary injunction motion. First, InSinkErator objects to the Declaration of Edward Chavez on the basis that certain paragraphs contain inadmissible lay opinion. (Objection to Edward Chavez, Dkt. No. 41 at 2.) The Court overrules these objections. Edward Chavez is the founder and President of Joneca and has personal knowledge of the matters involved in this motion. The portions of the declaration objected to by InSinkErator are matters for which Edward Chavez would have personal knowledge and could provide his opinion.

InSinkErator also objects to portions of Jonathan Chavez's Declaration on the basis that he is not an expert and has provided inadmissible lay testimony. (Objection to Jonathan Chavez, Dkt. No. 42 at 2.) Jonathan Chavez is Edward Chavez's son and an employee of Joneca. (Id.) His opinions about the garbage disposal market and testing come from personal experience and reviewing Joneca's records and files stored in the ordinary course of business. (Decl. of Jonathan Chavez, Dkt. No. 38-3, ¶ 1, 10, 12.) To the extent that Jonathan Chavez attempts to offer expert testimony about motor mechanics on the basis of his technical aerospace experience, (see id. ¶¶ 5–6), the Court will disregard accordingly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

Finally, InSinkErator objects to portions of Garrett McCormick's Declaration on the basis that he is testifying about industry standards in the garbage disposal industry without having experience in the industry. (Objection to McCormick, Dkt. No. 43 at 2.) The Court overrules this objection. Much like InSinkErator's expert, McCormick is qualified in his field of electrical and mechanical engineering and shares many of the same qualifications—including IEEE senior member status—as InSinkErator's expert, Eisenstadt. (See Decl. of McCormick ("McCormick Decl."), Dkt. No. 38-2, ¶ 1–4.) Thus, the Court overrules the objection at this stage.

  B. *Likelihood of Success on the Merits*

To establish a likelihood of success for a false advertising claim under section 43(a) of the Lanham Act,[1] a plaintiff must establish: (1) a false statement of fact about a product in a commercial; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

  1. False Statement of Fact

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Id. at 1139. Demonstrating falsity is a two-step process. First, courts must determine the unambiguous claim made by an advertisement and second, find whether that claim is false. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002). If a statement is "susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." Kwan Software Eng'g, Inc. v. Foray Techs., LLC, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014).

---

[1] 15 U.S.C. § 1125(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

InSinkErator argues that Joneca's advertising claims offering 1/2, 3/4, 1, and 1 1/4 horsepower disposals are unambiguous and literally false. (Mot. at 7.) As to the first step, the Court finds that Joneca's advertisement is an unambiguous claim to offer 1/2, 3/4, 1, and 1 1/4 horsepower garbage disposals. (See Mot. at 4 (showing images of Joneca's products plainly stating 1 HP, 1 1/4 HP and 3/4 HP.) The packaging asserts a horsepower rating in large font on the cover of the product. (Id.) The advertisement unequivocally claims that a given machine has a specific horsepower, such as 1 HP, 1 1/4 HP, 3/4 HP, or 1/2 HP. (Id.) Thus, the remaining question is whether such statement is literally false or true, but likely to mislead consumers.

InSinkErator claims that Joneca's advertising is literally false. InSinkErator claims that after testing the mechanical output of Joneca's disposals, it noticed a "substantial disparity" in the measured horsepower compared to Joneca's claims. (Id.) For instance, the maximum horsepower measured was approximately 39% and 24% below the claimed 1 1/4 and 1 horsepower, respectively. (Id.) After conducting more tests, (see id. at 8–9), InSinkErator found that Joneca could not produce a single true 1 or 1 1/4 horsepower product. (Id. at 9.) Thus, InSinkErator argues, Joneca's claims are literally false.

Joneca disagrees, arguing that the industry standing for measuring horsepower of disposers is "based on the *input* horsepower drawn by the full *disposer system*," and not the output power measured by InSinkErator. (Opp'n at 8.) Specifically, Joneca's expert, Garrett P. McCormick ("McCormick") relies on the Underwriter Laboratories ("UL") compliance standard UL 430 Waste Disposers ("UL 430"), which establishes a method for rating horsepower of garbage disposals on an input basis. (See McCormick Decl. ¶ 16.) Section 16.4 states that "[t]he horsepower rating shall be based on the current input under maximum normal load. . . ." (Id. ¶ 27.) McCormick found that "in the absence of any other established industry-specific standards, it would be both typical and appropriate for industry participants to rely upon the industry's specific UL safety standard for the classification of products in that industry." (Id. ¶ 18)

In response, InSinkErator argues that the UL 430 standard is inapplicable because it is a safety standard and not meant to be used to measure horsepower. (See Reply at 3–5.) InSinkErator is correct that UL 430 is plainly a safety guide for ensuring that switches and controls can safely handle the input current drawn by a motor. (See Rebuttal Decl. of Shiliang Wang ("Wang Decl."), Dkt. No. 47, ¶¶ 10–11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

InSinkErator's argument is supported by Section 16.4, which provides that a Current Input Test should be run "regardless of any horsepower rating that is: a) Marked on the disposer or motor b) Referenced in any literature packaged with the disposer; or c) On the packaging of the disposer." (Id. ¶ 9.) Perhaps most persuasively, engineers at UL confirmed that "UL 430 is a safety standard for Waste Disposers and is not meant to be used to determine the horsepower ratings of Waste Disposers." (Id. Ex. A.) Joneca points to no other authority suggesting that input power is the proper interpretation for labeling horsepower.

InSinkErator also provides its own authority to support that horsepower must be measured by using the motor's mechanical *output* and not merely *input* horsepower. (See Reply at 5 (citing Eisenstadt Decl. ¶ 15).) InSinkErator's expert, Dr. Eisenstadt, relies on various sources to come to this conclusion. (Decl. of Eisenstadt ¶ 16–20.) For instance, the U.S. Department of Energy finds that, "[b]y definition, a motor of a given rated horsepower is expected to deliver that quantity of power in a mechanical form at the motor shaft." (Decl. of Eisenstadt ¶ 16.) The Institute of Electrical and Electronics Engineers ("IEEE") testing standards define a motor's power based on the motor's output in horsepower. (Id. ¶¶ 17–18.) The National Electrical Manufacturers Association ("NEMA") requires claims of horsepower on motors to be derived from the torque output by the motor. (Id. ¶ 19.) Finally, Stephen J. Chapman's Electric Machinery Fundamentals (5th ed. 2012), a standard text in the field, gives the formula for measuring horsepower and describes horsepower as a function of mechanical power on the motor shaft (i.e., output). (Id. ¶ 20.) Beyond its expert, InSinkErator provides the website of a national retailer, Build with Ferguson, which defines horsepower based on output, claiming that horsepower is defined as "[t]he total power output capability from the included motor, measured in horsepower." (Eubanks Decl., Ex. J.)

Ultimately, a court may determine literal falsity of an advertisement "based on its own common sense and logic interpreting the message." See Edminston v. Jordan, 98 Civ. 3298 (DLC), 1999 WL 1072492, at *9 (S.D.N.Y. Nov. 24, 1999). In this case, the Court is persuaded that Joneca's claims are literally false by necessary implication where its garbage disposals do not deliver the output of the horsepower they purport to provide. The general consensus among engineers, even if not specific to the garbage disposal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

industry, appears to be that horsepower is determined by mechanical output.[2]  Therefore, InSinkErator is likely to show literal falsity.

        2.        <u>Falsity Deceived Retailers and Consumers</u>

     Where a district court finds that a claim is literally false, there is a presumption of deception or reliance.  See <u>Castrol Inc. v. Pennzoil Co.</u>, 987 F.2d 939, 943 (3d Cir. 1993); <u>see also</u> <u>Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP</u>, 2016 WL 6023822, at *6 (C.D. Cal. Aug. 18, 2016) ("Statements that are literally or deliberately false create a presumption of deception and reliance.")  This presumption of deception exists whether in the context of injunctive relief or not.  See <u>McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.</u>, 938 F.2d 1544, 1549 (2d Cir. 1991) (applying the presumption of deception in the injunction context); <u>Mut. Pharm. Co. v. Ivax Pharms., Inc.</u>, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception [and] the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.").[3]  In this case, the Court has determined that the claimed horsepower is literally false.  Thus, deception is presumed.

        3.        <u>Materiality</u>

     "Materiality can be shown where defendants misrepresent 'an inherent quality or characteristic' of a product."  <u>Nat'l Basketball Ass'n v. Motorola, Inc.</u>, 105 F.3d 841, 855 (2d Cir. 1997).  In this case, given the importance of horsepower to the quality and characteristics of a garbage disposal, the Court finds that InSinkErator is likely to

---

[2] However, the Court recognizes that Joneca only provided a single contrary authority, UL 430, and that better authority may exist specific to the garbage disposal industry.  Thus, it is possible that a claim of horsepower on a package may still be subject to potentially different interpretations in the garbage disposal industry.  Nevertheless, based on the evidence presented to this Court, the input-based interpretation does not seem reasonable.

[3] This presumption is not applicable where recovery is premised on a true, but misleading claim. <u>Ivax</u>, 459 F. Supp. 2d at 933.  "The reason for this difference in proof is that, while 'a court may find on its own that a statement is literally false,' whether a representation is impliedly misleading is not something that is readily susceptible to being evaluated absent 'evidence [showing] actual consumer deception.'"  <u>Abbott Labs. v. Mead Johnson & Co.</u>, 971 F.2d 6, 14 (7th Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

succeed in showing that the false horsepower claims are material based on its inherent importance to the product.  See Visioneer, Inc. v. UMAX Techs., Inc., 1998 WL 856080, at *4 (N.D. Cal. Dec. 7, 1998) (finding that a representation higher capacity hardware suggests a representation of a higher quality product and is thus material).  Nevertheless, even assuming that the horsepower is not an inherent part of the product, the Court finds that InSinkErator would likely show that the false advertising was material.

      InSinkErator provided market research to show that consumers ranked horsepower as one of the top purchasing considerations for garbage disposals.  (See Eubanks Decl. ¶¶ 19, 23.)  Moreover, the retailer perspective supports that horsepower is a key differentiating factor when it comes to purchasing and advertising garbage disposals.  For instance, at Lowe's retail store and The Home Depot retail store, garbage disposals are organized and advertised by horsepower.  (Id. Exs. D, E.)  In fact, competitors' disposals (namely, Joneca and InSinkErator) are displayed side-by-side based on horsepower (i.e., Joneca's 1HP disposal adjacent to InSinkErator's 1HP disposal).  (Id.)  This signals that horsepower is an important—if not primary—distinction used by retailers to market to consumers.

      Such a distinction is fitting considering the common sense impression that more horsepower means more efficiency.  For instance, at The Home Depot retail store, 1 HP disposals are listed as "Heavy Duty," 3/4 HP disposals are listed as "Medium Duty," and 1/3–1/2 HP are listed as "Light Duty."  (Id. Ex. E.)  The Build with Ferguson website defines "Horsepower" as "[t]he total power output capability from the included motor, measured in horsepower."  (Id. Ex. J.)  The Lowe's website tells consumers: "Garbage disposal horsepower (HP) determines what the disposal is capable of grinding."  (Id. Ex. G.)  Lowe's also tells consumers that "models with higher HP motors have better sound insulation and run more quietly than basic models."  (Id.)  Finally, The Home Depot website tells customers that "[t]he higher the HP, the better the disposal will run. Food waste will be ground into finer particles and you'll have fewer jams."[4]  (Id. Ex. L.)

---

[4] To the extent the Home Depot statements are hearsay, they are nevertheless appropriate for consideration on a motion for preliminary injunction.  See Johnson, 572 F.3d at 1083.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

Both consumer and retailer experience, along with common sense, suggest that horsepower is a critical determination to consumers when purchasing a garbage disposal. Therefore, InSinkErator is likely to succeed in showing materiality.

        4.        <u>Interstate Commerce</u>

Neither party disputes that Joneca's alleged falsehoods have entered interstate commerce. Indeed, Joneca's statements of horsepower appear on its national website. (<u>See</u> Eubanks Decl. ¶¶ 8, 9, 14–18.) Thus, the Court finds InSinkErator would be likely to satisfy this element.

        5.        <u>Likelihood of Injury</u>

InSinkErator argues that it has been or is likely to be injured by a direct diversion of sales or a lessening of goodwill associated with its product. (<u>See</u> Mot. at 15 (citing <u>Southland Sod Farms</u>, 108 F.3d at 1139).) For the following reasons, the Court agrees.

InSinkErator and Joneca are direct competitors in the garbage disposal industry. (<u>See</u> Opp'n at 3 ("Joneca has operated alongside [InSinkErator] and others in the U.S. for 20 years").) According to Joneca, InSinkErator "dominates the U.S. disposer market with approximately 70% or more share," but has been "losing its foothold" in recent years. (<u>Id.</u> (citing Edward Chavez Decl. ¶ 15).) Joneca claims that part of InSinkErator's slide has been a result of reliance on outdated motor designs, which is precisely where Joneca has found its innovative niche. (<u>Id.</u> at 2.) InSinkErator argues that its loss of revenue is the direct result of Joneca's unfair competition. (Mot. at 16.)

Both Joneca and InSinkErator sell their disposals in many of the same large retailers. (<u>See</u> Mot. at 16.) Moreover the horsepower—and thereby falsehood—is prominently displayed at the point-of-sale in retail shops. Indeed, as discussed above, horsepower is commonly used to differentiate garbage disposals and typically serves as a proxy for efficiency and value. Thus, given that a false statement is prominently displayed on a direct competitor's product, and sold side-by-side at the same retailer as if to compare products and value, there is a real likelihood that InSinkErator may be injured either by diverted sales or diminished goodwill. <u>See</u> <u>Homeland Houswares, LLC v. Euro-Pro Operating LLC</u>, 2014 WL 4187982, at *5 (C.D. Cal. Aug. 22, 2014) ("Finally, given the statements' materiality and the fact that the products are sold by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

same retailers, there is little basis for doubt that Homeland is likely to be injured as a result of the false statements in the form of diverted sales or diminished goodwill.")

      6.     Conclusion

InSinkErator has shown a likelihood to satisfy all of the elements of its false advertising claim.[5] The consensus among engineers, retailers, and consumers is that output, and not input horsepower, is what must be measured. Thus, Joneca appears to be making a false statement where it purports to offer a true horsepower that it cannot deliver. This factor tilts in favor of InSinkErator.

    B.    *Irreparable Harm*

A plaintiff establishes a likelihood of irreparable harm when it demonstrates that it is unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date, in the ordinary course of litigation. See Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 851–52 (9th Cir. 2009). A loss of market share or a permanent loss of customers as a result of an infringing product can support a finding of irreparable harm. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001); Apple, Inc. v. Samsung Elecs. Co., 909 F. Supp. 2d 1147, 1152 (N.D. Cal. 2012). Similarly, the loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief. SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012); Stark v. Diageo Chateau & Estate Wines Co., 907 F. Supp. 2d 1042, 1066 (N.D. Cal. 2012); Seed Servs., Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012).

The Ninth Circuit has yet to hold expressly that the presumption of irreparable harm has been eliminated in trademark cases, but it eliminated the presumption in copyright and patent cases. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 996 (9th Cir. 2011). Specifically, after discussing eBay v. MercExchange, and

---

[5] The Court notes that absent a finding of literal falsity, InSinkErator neither argued, nor provided the necessary evidentiary support, for a claim that Joneca's product was literally true, but misleading. Thus, in the event that literal falsity was not proven, its motion would fail to show any likelihood of success or serious question going to the merits of its claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

Winter, the Ninth Circuit stated: "Thus, under eBay, a presumption of irreparable harm is equally improper in a case based on copyright infringement as it is in a case based on patent infringement." Flexible Lifeline, 654 F.3d at 996. This Court agrees with the many district courts in the Ninth Circuit that hold that a plaintiff no longer is entitled to such a presumption in trademark cases. See, e.g., Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1093 (N.D. Cal. 2012); BoomerangIt, Inc. v. ID Armor, Inc., 2012 WL 2368466, at *4 (N.D. Cal. June 21, 2012) (citing cases); Seed Servs., 868 F. Supp. 2d at 1004–05; Groupion, LLC v. Groupon, Inc., 826 F. Supp. 2d 1156, 1167 (N.D. Cal. 2011).

    InSinkErator argues that Joneca's false claims have caused significant price erosion and profit margin erosion because InSinkErator's products are "more expensive to produce than Joneca's falsely labeled products." (Mot. at 19.) In other words, "InSinkErator has been forced to offer more favorable terms to retailers, including significantly reducing its prices and profit margins," in order to compete. (Id.) This causes an "incalculable" amount of future loss given that it is difficult to raise prices or return to previous margins. (Id.) Joneca argues that these claims of price erosion are insufficient because InSinkErator has not disclosed those margins nor demonstrated that Joneca's false claims are attributable to the higher costs associated with InSinkErator's production. The Court agrees with Joneca that InSinkErator has offered little evidence of its profit margin losses, but more importantly, has done little to show that the losses are attributable to Joneca rather than healthy competition. Rather, InSinkErator has provided one recent instance of losing shelf space to Joneca, ███████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████.[6] From these facts, InSinkErator presumes its losses must be caused by Joneca. The Court will not presume as much. Therefore, on the basis of price erosion, InSinkErator has not sufficiently demonstrated a likelihood for irreparable harm.

    InSinkErator also bases its claim of irreparable harm on the potential diversion of sales and diminished goodwill. (Mot. at 17.) InSinkErator argues that it is actively bidding on retailer contracts against Joneca who "undercuts InSinkErator's prices with false horsepower claims." (Id.) InSinkErator worries that there is an immediate threat of

---

[6] (Eubanks Declaration, Dkt. Nos. 23 (redacted), 36-1 (unredacted).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

losing these bids and the goodwill associated with these contracts. (Id.) Joneca states that InSinkErator has only identified one contract that it is bidding for and has failed to claim that Joneca is even competing for that contract. (Opp'n at 17.) Not so. InSinkErator identified one such retailer that chose to award more space to Joneca over InSinkErator.[7] (Eubanks Decl. ¶¶ 41–42.) Additionally, InSinkErator has claimed that it is currently bidding on private label contracts with major retailers and that "Joneca's false claims and consequent fake value proposition continue to harm [its] retailer bids in which Joneca and InSinkErator compete." (Id. ¶ 44.) This claim of harm to goodwill is the type of "[e]vidence of threatened loss of prospective customers or goodwill [that] certainly supports a finding of the possibility of irreparable harm." See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001). Therefore, InSinkErator has demonstrated a probability of irreparable injury to its goodwill.

### C. Balance of Hardships

Having found that InSinkErator at least raised serious questions going to the merits, the Court must now determine whether the hardship balance "tips sharply toward the plaintiff," assuming the other two elements are also met.[8] See Cottrell, 632 F.3d at 1132.

#### 1. Hardship to InSinkErator

InSinkErator argues that without an injunction, it will continue to lose retailer contracts, as well as its relationships, sales, profits, goodwill, brand recognition, and shelf space. (Mot. at 21.) Additionally, "InSinkErator is currently bidding on a private label contract with a major retailer . . . worth millions of dollars in sale as well as incalculable benefits such as goodwill with the retailer." (Eubanks Decl. ¶ 44.) As put by InSinkErator, "[t]here is no question that if Joneca is permitted to continue making its false horsepower claims, retailers and consumers will continue to be duped into purchasing disposals with far weaker motors than Joneca claims." (Id. at 22.) Joneca responds that InSinkErator would not be prejudiced if the injunction does not issue because InSinkErator is owned by an "industrial giant Whirpool with $19 billion in

---

[7] Pursuant to this Courts Order, the name of this retailer is sealed. (Dkt. No. 32.)

[8] As discussed, irreparable harm and public interest lean in favor of InSinkErator.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

annual net sales in 2023 [] alone." (Opp'n at 20.) Further, if InSinkErator wanted to, it could re-sticker all of its own products with higher horsepower classifications. (Id.)

The Court finds that InSinkErator will likely suffer some hardship without an injunction. It seems possible, if not likely, that InSinkErator could continue to lose out on retailer contracts and goodwill of its long-standing clients because of Joneca's claims of similar horsepower at cheaper prices. Having been one of the founders of garbage disposals and a current industry leader, InSinkErator stands to lose market share through deceptive advertising.

### 2. Hardship to Joneca

On the other side, Joneca argues that its "entire business would be jeopardized by the requested preliminary injunction." (Opp'n at 19.) Joneca asserts that the requested relief would force Joneca to halt business and create overwhelming costs associated with removing 160,000 disposer units from shelves from across 7,000 stores nationwide. (Id.) Joneca would have to remove packaging on all products within 45 days, cease communicating with retailers about horsepower ratings during its contract negotiations, and stop any new advertising. (Id.)

InSinkErator responds that it only seeks to enjoin Joneca from making false statements. (Mot. at 21.) The injunction would not prohibit any truthful advertising, lawful communication with retailers, or even necessarily require the removal of packaging when re-stickering is available. (Id.) Thus, InSinkErator argues, there is no harm because the injunction only prevents unlawful conduct. See Cadence Design Sys., Inc. v. Avant! Corp., 125 Fl.3d 824, 830 (9th Cir. 1997) ("The district court appears to have been strongly influenced by the fact that an injunction would be devastating to Avant!'s business, which we hold to be error warranting reversal of the district court's decision); see also Multicraft Imports, Inc. v. Mariposa USA, Inc., 2018 WL 11352041, at *11 (C.D. Cal. Jan. 19, 2018).

The Court agrees that the injunction is properly tailored to only prohibit false claims of horsepower, thus limiting Joneca's hardship. Joneca would be free to explain during retailer bids and sales presentations that its products have a certain horsepower *input*, or alternatively, to explain that InSinkErator's AC induction motor design requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

more output horsepower to provide the same level of performance as Joneca's PMDC motor. Such is not a hardship, but rather the truth, as Joneca has described it.

In light of these considerations, the Court finds that the balance of hardships leans in favor of InSinkErator.

    D.    *Public Interest*

"If . . . the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051, 1081 (E.D. Cal.), aff'd, 348 F. App'x 288 (9th Cir. 2009).

Here, the public has a strong interest in avoiding confusion caused by false claims of horsepower. This is particularly true where the two products—garbage disposals—are being sold side-by-side among direct competitors, in the same retail stores, and being distinguished by their claimed horsepower. See Warner Bros. Entm't v. Glob. Asylum, Inc., 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012), aff'd sub nom., 544 F. App'x 683 (9th Cir. 2013) ("[T]he most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy.").

    E.    *Weighing the Winter Factors*

In the Ninth Circuit, courts may evaluate the Winter factors on a sliding scale. In this case, the Court finds that each of the Winter factors weighs in favor of InSinkErator. Accordingly, the Winter factors weigh in favor of granting the motion for preliminary injunction.

    F.    *Issuance of a Bond*

Rule 65(c) of the Federal Rules of Civil Procedure conditions issuance of a preliminary injunction upon the applicant's giving of security, generally in the form of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

the posting of a bond. Specifically, Rule 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have broad discretion when setting the amount of the bond. GoTo.com, 202 F.3d at 1211.

Moreover, despite the seemingly-mandatory language in Rule 65(c), the Ninth Circuit has instructed district courts that they may dispense with the bond requirement altogether in certain circumstances; for example, when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 910 (9th Cir. 2003)). Similarly, when the plaintiff establishes a strong likelihood of success on the merits, the district court has the discretion to impose a "minimal bond or no bond at all." Van de Kamp v. Tahoe Reg'l Planning Agency, 766 F.2d 1319, 1326 (9th Cir. 1985).

As discussed, Joneca faces some potential harm to its business upon the issuance of a preliminary injunction, not limited to the re-stickering of nearly 160,000 units across 7,000 stores nationwide, in addition to reputation harms and potential concerns arising from retailer contract bidding. Thus, a bond is proper in this case. After hearing oral argument, the Court finds that $500,000 is an appropriate amount for the bond.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for preliminary injunction as to Joneca's use and claims of horsepower.

The Court **ORDERS** that Joneca, its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation therewith and who have actual notice of the injunction,[9] are enjoined from:

---

[9] This language ensures that any affiliates, distributors, or dealers without actual notice of the injunction are not preliminarily enjoined.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

a. Making any false and deceptive horsepower claims regarding Joneca-made garbage disposal products in any advertising, marketing, promotional, or other commercial materials or communications, whether oral or written and in any medium, to retailers, wholesalers, or other third parties for purposes of obtaining contracts for sale of Joneca-made garbage disposal products, whether branded, licensed, or private label, including in any retailer bids and sales presentations. Any horsepower-related communications to retailers, wholesalers, or other third parties for the purposes of obtaining contracts for the sale of Joneca-made garbage disposal products will include a clear and conspicuous disclaimer[10] stating: "Horsepower claimed on package does not indicate motor output or motor power applied for processing."

b. Making any false and deceptive horsepower claims regarding Joneca-made garbage disposal products in any new advertising, marketing, promotional, or other commercial materials or communications created or disseminated by Joneca on or after the date of this Order, whether oral or written and in any medium, including on all packaging of garbage disposal products, whether branded, licensed, or private label, and on all online and offline promotional materials produced, shipped, or disseminated on or after the date of this Order. Any horsepower-related claims in any new advertising, marketing, promotional, or other commercial materials will include a disclaimer stating: "Horsepower claimed on package does not indicate motor output or motor power applied for processing." With respect to the sale of products, this applies to all products being currently sold but not yet shipped and shall take effect within seven (7) days of the effective date of this Order.

---

[10] A disclaimer must be clear and conspicuous. For the purposes of this injunction, the disclaiming sticker on packages should have a red border with all-white background. The text of the disclaimer shall be in a font no smaller than 14-point. The disclaimer shall be placed near the claim of horsepower on the front of the product package. For illustration, the Court references those product packages seen in Eubank's Decl., Dkt. No. 36-1, Ex. C, as appropriate positions to place the disclaimer sticker.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02600-JVS-ADS | Date | January 10, 2025 |
| Title | InSinkErator LLC v. Joneca Company, LLC et al. | | |

    c.    Assisting, permitting, or causing to be made by any third party any false and deceptive horsepower claims regarding Joneca-made garbage disposal products in any new advertising, marketing, promotional, or other commercial materials or communications created or disseminated on or after the date of this Order, whether oral or written and in any medium, including on all packaging of Joneca-made garbage disposal products, whether branded, licensed, or private label, and on all online and offline promotional materials including on retailer or wholesaler websites, and in-store signage and displays; and

    d.    Assisting, permitting, or causing the continued display of any false and deceptive horsepower claims in any advertising, marketing, promotional, or other commercial materials or communications currently in stores or in any third party's possession or otherwise already disseminated by Joneca prior to the date of this Order, whether oral or written and in any medium, including on all packaging of Joneca-made garbage disposal products, whether branded, licensed, or private label, and on all online and offline promotional materials including websites and in-store signage and displays. Joneca shall have 90 days after the effective date of this Order to comply with this provision.

Joneca shall provide the Court with one mock-up of each type of packaging it offers with the proposed sticker on it. Joneca shall also file a compliance report with the Court after 60 days. Joneca is ordered to deliver a copy of this Order to retailers carrying its disposers within ten (10) days of the effective date of this Order.

The Court **FURTHER ORDERS** that the foregoing injunctive relief shall not take effect until both of the following circumstances have occurred:

    1.    InSinkErator files proof with the Court that a bond in the amount of $500,000 has been posted.

    2.    Following InSinkErator's posting of the bond, the Court's Order shall be **STAYED** for seven (7) days.

**IT IS SO ORDERED.**