Kalpana Srinivasan (SBN 237460)
Michael Gervais (SBN 330731)
Anna Coll (SBN 337548)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
mgervais@susmangodfrey.com
acoll@susmangodfrey.com

Joseph Grinstein (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jgrinstein@susmangodfrey.com

*Attorneys for Plaintiff and Counter-Defendant Insinkerator LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| INSINKERATOR LLC, A Delaware limited liability company,<br>                 *Plaintiff*,<br>vs.<br>JONECA COMPANY, LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation<br>                 Defendants.<br>JONECA COMPANY, LLC, a Delaware limited liability company,<br>                 *Counter-Claimant*,<br>vs.<br>INSINKERATOR LLC, a Delaware limited liability company,<br>                 *Counter-Defendant*. | Case No.: 8-24-cv-02600-JVS-ADS<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Judge:  Honorable James V. Selna<br><br>Date:  October 20, 2025<br>Time:  1:30 pm<br>Dept:  Courtroom 10C<br><br>Action Filed: November 27, 2024 |

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1
II.  Relevant Background ............................................................................................ 2
      1.   Product Packages Missing Disclaimers ....................................................... 4
      2.   In-Store Signs and Displays Missing Disclaimers ...................................... 4
      3.   Online Listings with Hidden or Missing Disclaimers ................................ 5
      4.   Failure to Cure ............................................................................................. 8
III. Argument and Authorities ..................................................................................... 9
      1.   Joneca is Flouting a Clear Preliminary Injunction, Causing Ongoing Harm ........................................................................................................... 10
      2.   Joneca's Explanations of its Noncompliance are Unavailing ................... 11
      3.   Coercive Sanctions Are Warranted to Compel Full Compliance ............. 14
IV.  CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dorman v. Int'l Harvester Co.*,
    46 Cal.App.3d 11 (1975)..................................................................................11

*F. T.C. v. Cyberspace. Com LLC*,
    453 F.3d 1196 (9th Cir.2006)............................................................................7

*F.T.C. v. OMICS Group Inc.*,
    302 F.Supp.3d 1184 (D. Nev. 2017) ...............................................................10

*Gen. Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986)..........................................................................12

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir.2000)...........................................................................10

*LifeScan, Inc. v. Shasta Tech.*,
    LLC, No. No. 12–cv–06360–JST, 2013 WL 3200629 (N.D. Cal.
    June 24, 2013)...................................................................................................10

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023)............................................................................7

*Parsons v. Ryan*,
    949 F.3d 443 (9th Cir. 2020)............................................................................12

*Removatron Int'l Corp. v. F.T.C.*,
    884 F.2d 1489 (1st Cir.1989) ...........................................................................11

*Salazar v. Buono*,
    559 U.S. 700 (2010)............................................................................................8

*Shell Offshore Inc. v. Greenpeace, Inc.*,
    815 F.3d 623 (9th Cir. 2016)............................................................................12

*Velasco v. Paccar, Inc.*,
    No. LA CV13-09407, 2017 WL 11632291 (C.D. Cal. Sept. 22,
    2017) ..................................................................................................................11

## I. Introduction

Some court orders are complicated. The Preliminary Injunction Order is not. If Joneca Company, LLC ("Joneca") wants to keep touting the horsepower of its garbage disposals, it must tell consumers the truth behind the number. That is exactly what the PI Order requires: any horsepower claim by Joneca must be accompanied by a "clear and conspicuous disclaimer" stating "Horsepower claimed on package does not indicate motor output or motor power applied for processing." Dkt. 71 ("PI Order") at 18. Joneca was given specific instructions on how to make those disclaimers prominent (red-bordered stickers on product packages, 14-point font, placed near the horsepower claim), and was forbidden from "assisting, permitting, or causing" any third party (like retailers) to continue displaying false or unqualified horsepower claims after the PI Order. *Id.* at 19.

Months have passed, and Joneca still has not followed this Court's order. InSinkErator LLC ("ISE") has uncovered widespread noncompliance with the preliminary injunction. Schmidt Decl. at ¶¶ 3–15; Polanco Decl. at ¶3; Stanley Decl. at ¶3. Store shelves remain stocked with Joneca's horsepower claims on garbage disposal packages without the required disclaimer stickers. *Id*. In-store signs and displays trumpet Joneca's horsepower claims with no disclaimers in sight. Schmidt Decl. at ¶ 6. Online listings for Joneca's products emphasize horsepower claims while burying the disclaimer in fine print or in places where consumers are unlikely to see it. *Id.* at ¶¶ 8–15. In short, Joneca has failed to do what the PI Order unambiguously required it to do, undermining the very purpose of the preliminary injunction – to prevent consumers from being misled by Joneca's inflated horsepower claims.

ISE respectfully requests that the Court enforce the PI Order. The PI Order is not a mere suggestion or an empty formality – it is a binding order that Joneca must obey, full stop. ISE seeks an order compelling Joneca's immediate compliance with the PI Order, together with appropriate coercive sanctions to ensure Joneca gets the

job done this time. Anything less would reward Joneca's defiance of the plain text and intent of this Court's Order.

## II. **Relevant Background**

This false-advertising case centers on Joneca's misleading horsepower claims for its garbage disposals. Its horsepower claims do not reflect the product's actual output power. After finding that ISE was likely to succeed on its Lanham Act claims, the Court issued a preliminary injunction on January 10, 2025 to prevent ongoing deception to consumers and to stop the harm to ISE. The PI Order's requirements are straightforward:

- All horsepower claims must include a disclaimer: Joneca is forbidden from making a horsepower claim about its garbage disposals without a "clear and conspicuous" disclaimer accompanying the claim. PI Order at 18. This applies to all media and material – product packaging, online or print advertising, marketing communications, retailer presentations, etc. The Court even provided the language to include in the required disclaimer: "Horsepower claimed on package does not indicate motor output or motor power applied for processing." *Id*.

- Disclaimer must be "clear and conspicuous": To ensure the disclaimer is actually seen by consumers, the Court set specific visibility requirements for disclaimers on product packages. The disclaimer "must be clear and conspicuous," meaning the sticker should have a red border on an all-white background, with text in at least 14-point font, and it "shall be placed near the claim of horsepower on the front of the product package." *Id*. In other words, a consumer confronting the horsepower claim should immediately see the disclaimer in close proximity to the horsepower claim, not hidden or buried away.

- No false horsepower claims via third parties: The PI Order also prohibits Joneca from "assisting, permitting, or causing to be made by

any third party" any false or deceptive horsepower claims in advertising or promotional materials. *Id.* at 19. This means Joneca must ensure that retailers who sell its products do not display unqualified horsepower claims in stores or online. If Joneca's garbage disposals are advertised on a retailer's website or a store shelf as "1 HP," that advertisement must include the disclaimer (or else the horsepower claim should be removed). Joneca was required to provide a copy of the injunction to all retailers carrying its garbage disposals within 10 days of its entry, so that retailers would also be on notice of these requirements. *Id.* at 19.

- 90-day grace period for existing materials: Recognizing that some non-compliant marketing materials or inventory might already be in the pipeline, the Court gave Joneca a 90-day grace period to cure its existing horsepower claims. *Id.* Specifically, Joneca had 90-days from the Order's effective date to remove or fix any false horsepower claims in materials "currently in stores or in any third party's possession" that were already disseminated before the Order. *Id.* In practice, this meant that by May 6, 2025, any Joneca product on store shelves shipped before the Order should have been stickered with the Court-ordered disclaimer, and any old signage or online listings should have been corrected or removed.

The above requirements are not optional or aspirational – they are explicit commands of this Court, spelled out in detail in the PI Order. Joneca was fully bound to comply. It is against this clear mandate that Joneca's failure to comply must be judged.

Despite the clarity of the preliminary injunction, Joneca's compliance has been, at best, spotty and inadequate. ISE, through its investigations, has identified multiple categories of noncompliance, detailed below. These violations are not isolated or trivial – they are widespread and go to the heart of the purpose of the

3

preliminary injunction, which is to ensure that consumers are informed that Joneca's horsepower claims do not represent actual motor output.

### 1. Product Packages Missing Disclaimers

The most glaring violation of the PI Order is Joneca's failure to ensure that all product packages are stickered with the required disclaimer. Consumers walking into various retail stores as recently as July 2025 would still find Joneca's garbage disposals on the shelves bearing horsepower claims on the front of the box, but no red-bordered disclaimer sticker as required. For example, from June 2, 2025 to June 5, 2025, ISE's investigator visited Home Depot stores in five different cities in Georgia and observed Joneca's garbage disposals on display without the required disclaimer. Schmidt Decl. at ¶ 4. At some locations, a portion of Joneca's products had stickers while others did not – suggesting that only some inventory was updated, leaving a mix of compliant and non-compliant packages on the shelf. *Id.* Other locations had zero stickered packages. *Id.* at ¶¶ 4–6; *see also* Polanco Decl. at ¶3; Stanley Decl. at ¶3.

These are clear-cut violations of the PI Order's mandate that "any horsepower-related claims" on packages include the disclaimer. PI Order at 18. Joneca had no later than 7 days after the PI Order's effective date to ensure all currently selling but not yet shipped products got stickers, and 90 days to retrofit any already shipped inventory. *Id.* at 19. Those deadlines are long past. If some retailers have Joneca garbage disposals without the required stickers, the blame lies with Joneca, who is the party that is solely responsible for ensuring compliance with the PI Order. Joneca was obligated not just to sticker a few token products, but "all products" being sold after the grace period. *Id.* at 18. The presence of so many unstickered Joneca products in stores this long after the Court's Order is indefensible.

### 2. In-Store Signs and Displays Missing Disclaimers

Joneca's disregard for the required disclaimer extends beyond the product package. ISE's investigators also documented in-store signs and displays that

4

promote Joneca's garbage disposal horsepower claims without the required disclaimer. Schmidt Decl. at ¶¶ 3–7. For example, the display at the Home Depot in Gaithersburg, Maryland touts the horsepower claim for Joneca's Glacier Bay garbage disposals without any disclaimers. *Id.* at ¶ 5. Similarly, the display at Home Depot in West Niles, Illinois touts the horsepower claim for Joneca disposals, and while some 1/2 HP disposals are stickered, none of the 1 HP disposals are stickered at all. *Id.* at ¶ 3.

This is precisely the scenario the injunction anticipated and sought to prevent: Joneca is "assisting, permitting, or causing" third parties (the retailers) to make horsepower claims without the required disclaimer. Whether the signs or displays were created by Joneca or by the retailer, Joneca has a duty to ensure that any such claims are corrected to include the disclaimer or replaced with compliant signs or displays that include the disclaimer. By failing to do so, Joneca is effectively allowing false or misleading claims to persist in stores, well beyond the 90-day cure period.

It is evident that Joneca's communication of the disclaimer requirement to its retail partners was either insufficient or ineffective. Joneca was ordered to deliver a copy of the injunction to retailers within 10 days of the effective date of the PI Order. *Id.* at 19. One would expect that Joneca would accompany that with clear instructions. Yet, the on-the-ground reality months later is that retailers like the Home Depot and Lowe's continue to display Joneca horsepower claims without the required disclosure. Schmidt Dec. at ¶ 3–6. If Joneca conveyed the requirements, it failed to enforce them. And, if it didn't convey the requirements, then that is an even more blatant violation of the PI Order. Either way, consumers perusing store aisles continue to be shown Joneca's misleading horsepower claim without the court-mandated disclaimer in violation of the PI Order.

        3.    <u>Online Listings with Hidden or Missing Disclaimers</u>

A large percentage of garbage disposal sales occur in the online marketplace. Yet, on multiple major retail websites, Joneca's products are advertised with

horsepower claims that a consumer will see long before (if ever) they see the required disclaimer. The problem takes several forms online.

*First*, Joneca fails to include disclaimers in its search results. When consumers search for garbage disposals on retailer websites (*e.g.*, Amazon.com, HomeDepot.com, Lowes.com, etc.), the search results will display product names and key features. Joneca's products typically appear as, for example, "Waste Maide 10-US-WM-058-3B Garbage Disposal Anti-Jam Stainless Steel Food Waste Grinding System, 1/2 HP Economy, Black" and "Project Source Continuous Feed 3/4-HP Septic Safe Corded Garbage Disposal with Noise Insulation" Schmidt Decl. at ¶¶ 8–10. The search result titles include the horsepower claim but without the disclaimer – nothing to indicate the measured horsepower is input, not output. The Court did not explicitly mention "search results" pages in its Order, but the spirit of the preliminary injunction is that the disclaimer should accompany any horsepower claim at the point it is presented. *E.g.*, PI Order at 18 ("Any horsepower-related claims . . . will include a disclaimer"). For many online shoppers, the search results are the first and maybe only glance they will give to the product's basic specifications before clicking "Add to Cart." By failing to ensure the disclaimer is present at this crucial juncture, Joneca is doing an end-run around the preliminary injunction.

Joneca is likely to argue that it cannot insert the disclaimer into search results. Not so. At the parties meet and confer on August 20, counsel for InSinkErator identified several possibilities of how the disclaimer could appear in search results. Melsheimer Decl. at ¶ 3. This could include inserting the disclaimer on the thumbnail (i.e., the picture of the product) or inserting the disclaimer in the text immediately above or below the product title. If Joneca cannot feasibly insert a disclaimer into the product title or search result, then the only compliant alternative is to remove the horsepower claim from search results. Joneca has done neither.

*Second,* Joneca's disclaimers are not "clear and conspicuous" on product pages. Some Joneca listings include the disclaimer on the product page but only

buried within the text where consumers are unlikely to see it. Schmidt Decl. at ¶¶ 11–15. On other retail websites, the disclaimer is found only under a collapsible section where a user would have to click to expand to see it. *Id.* For example, a consumer visiting Home Depot's website would encounter the 1/2 horsepower claim for the TurboGrind 1/2 HP Continuous Feed Garbage Disposal with Power Cord in multiple places before clicking through to the product specification page where the disclaimer is buried in the text. *Id.* at ¶ 12. Yet, the main product overview and images tout the horsepower claim multiple times with no immediate disclaimer. *Id.* The user would have to click the "View More Details" text (that is offset to the right in the fourth bullet point) in order to be taken to the "Product Details" down below. *Id.* In the "Product Details," the disclaimer does not appear in the first paragraph of "About This Product." It instead appears as the second clause in the first bullet point under "Highlights."

On other websites, the disclaimer might appear in fine print or not at all. *Id.* at ¶¶ 11, 13–15. Oftentimes, the product title at the top of the page contains the horsepower claim with no asterisk or footnote symbol to flag that there's a clarifying disclaimer below – meaning a consumer sees the highlighted horsepower claim up top and has no reason to suspect that there's an explanatory disclaimer somewhere else on the product page. Even where the disclaimer is present somewhere on the page, it is anything but "clear and conspicuous." Joneca's online marketing often features eye-catching banners or carousel images on the product page – but the disclaimer will be in a small font buried on the page. *Id.* at ¶¶ 11–15. The visual impression given to consumers is overwhelmingly the horsepower claim with no equally visible cue that the horsepower claim is not what it seems. On many of these product pages, a consumer can add the disposal to their online cart and buy it without ever seeing the disclaimer at all. A disclaimer that technically exists on the page but is presented in a manner that is easy to overlook does not satisfy the "clear and

conspicuous" standard. This defeats the purpose of the disclaimer and thus flouts the injunction.

Notably, the Court instructed Joneca on the appropriate sticker placement on product packages. PI Order at 18, n.2. The red-bordered sticker was clearly meant to stand out to consumers. The required disclaimer should have the same effect online. Yet, Joneca's online approach means that many consumers never see any disclaimer at all when encountering the horsepower claim in virtual stores. This frustrates the core purpose of the PI Order and misleads consumers at a critical point of sale.

Joneca deflects by pointing to the disclaimer on the page. But the PI Order requires more than a formalistic token compliance. It requires that consumers confront the disclaimer where the horsepower claim is made. By placing the disclaimer in obscure and hard-to-see locations, Joneca has not complied with the substance of the Court's mandate. If anything, this tactic – hiding the disclosure in fine print – is a hallmark of misleading advertising that courts have long criticized. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) ("[I]f a defendant does commit an act of deception on the front of a product, then the presence of fine print revealing the truth is insufficient to dispel that deception.") (citations omitted); *F. T.C. v. Cyberspace. Com LLC*, 453 F.3d 1196, 1200 (9th Cir.2006) (finding that "fine print" disclosures do not allow a marketer to escape liability for misleading advertisements).

    4. <u>Failure to Cure</u>

ISE has acted in good faith and with restraint in response to Joneca's violations. ISE did not immediately rush to court at the first sign of noncompliance. Instead, ISE has attempted to resolve these issues directly with Joneca without burdening the Court.

ISE promptly notified Joneca of specific noncompliance issues as they were discovered. ISE initially notified Joneca of its noncompliance on May 13, 2025 and requested that Joneca take corrective action. Melsheimer Decl. at ¶ 4. The parties

have exchanged multiple letters and emails since then to try and resolve ISE's concerns over Joneca's failure to comply with the PI Order. *Id.* at ¶¶ 3–7. In addition, the parties met and conferred on June 13, 2025, and again on August 20, 2025, to discuss the compliance shortfalls. ISE provided examples of non-compliance to Joneca in an effort to show Joneca precisely where the noncompliance is occurring. *Id.* at ¶¶ 3–4. Notably, Joneca has failed to reciprocate this exchange of information. ISE first requested in June that Joneca provide the report prepared by the third-party contractor it hired to complete the disclaimer stickering. *Id.* at ¶ 6. Joneca did not provide it. Two months later, ISE renewed that request for the compliance report, which Joneca ignored without explanation. *Id.* at ¶ 3.

Unfortunately, ISE's efforts to engage with Joneca on these issues have not translated into effective action. ISE has continued to monitor the marketplace and Joneca's widespread noncompliance has continued to the present. Joneca is either unwilling or unable to comply absent court intervention. ISE cannot – and should not have to – accept Joneca's non-compliance with the PI Order. ISE has given Joneca numerous opportunities to avoid this motion to enforce the preliminary injunction by simply doing what is required by the Court's order. Joneca's continued noncompliance leaves ISE with no choice but to seek the Court's assistance to ensure that the PI Order is followed.

### III. Argument and Authorities

Despite the Court's issuance of a 19-page PI Order setting forth in detail the Court's reasons for granting ISE's Motion for Preliminary Injunction, and despite ISE's repeated communications putting Joneca on notice of its noncompliance, Joneca refuses to comply. The PI Order is clear and unambiguous in its directives. Joneca is capable of complying. Indeed, the required actions – stickering, in-store signs and displays, online disclaimers – are straightforward and within Joneca's control or influence. Yet, clear and convincing evidence amassed by ISE shows that Joneca violated the PI Order repeatedly and persistently. A preliminary injunction

9

affords the prevailing party a "right[]" to its enforcement, and the district court must take actions necessary to "vindicate[]" that right. *Salazar v. Buono*, 559 U.S. 700, 712-13 (2010).

        1.    <u>Joneca is Flouting a Clear Preliminary Injunction, Causing Ongoing Harm</u>

Joneca's conduct violates the letter and spirit of the preliminary injunction. The PI Order requires that the disclaimer appear with the horsepower claim. PI Order at 18 ("Any horsepower-related claims . . . will include a disclaimer"). Joneca's practice: horsepower claims continue to appear without the disclaimer in many places (store packages, signs/displays, and online search results and product pages). The PI Order requires the disclaimer be "clear and conspicuous" (*i.e.*, prominent, proximate, and eye-catching). *Id.* at 18. Joneca's practice: where a disclaimer exists, it is often hard to find, easy to miss, and anything but prominent. The PI Order set a 90-day deadline to clean up old materials. *Id.* at 19. Joneca's practice: several months since the 90-day deadline passed, noncompliant materials are still easy to find in the marketplace. This is not a close call or a matter of reasonable interpretation. It is a pattern of open noncompliance.

Importantly, Joneca cannot credibly claim it substantially complied with the PI Order or that any deviations were *de minimis*. The violations identified are numerous and systemic, not a one-off slip. Joneca will likely point to the steps it took to comply. But the existence of so many violations demonstrates that Joneca has not taken all reasonable steps to ensure its compliance. Indeed, some of its failures – such as wholly unstickered packages and missing disclaimers on in-store signs and displays – suggest no effort at all was made in certain channels.

Joneca also cannot hide behind the involvement of third parties, like retailers or the vendor it hired to sticker products, to excuse compliance. The Court anticipated that issue and explicitly forbade Joneca from "permitting" false claims by third parties. PI Order at 19 ("Assisting, permitting, or causing . . ."). Joneca was obligated

to use its leverage and contractual relationships to make sure its garbage disposals were marketed in compliance with the PI Order. This might mean, for example, not shipping new inventory to a retailer until they confirm existing stock is stickered, or requiring in distribution agreements that the retailer display the disclaimer online where the horsepower claim is displayed, or compliance checks to confirm that the vendor hired to sticker existing inventory completed its work. As the product supplier, Joneca has significant influence; it can insist on certain measures and, indeed, was court-ordered to deliver the injunction to its retailers. If a particular retailer proved recalcitrant, Joneca could have promptly informed the Court or sought guidance – not simply shrugged its shoulders. The inference is that Joneca either failed to convey urgency to its partners or acquiesced in their noncompliance because it benefits from maintaining its deceptive horsepower claims without the disclaimer. In either case, the onus and responsibility remain on Joneca to comply with the PI Order.

2. <u>Joneca's Explanations of its Noncompliance are Unavailing</u>

ISE anticipates that Joneca may argue that Court intervention is unwarranted for its noncompliance. ISE disagrees.

*First*, Joneca is likely to argue that it has substantially complied with the PI Order and only minor issues remain. The record flatly contradicts this claim. Schmidt Decl. at ¶¶ 3–15. Widespread lack of disclaimers and hard-to-find disclosures on major retail platforms is not minor, it strikes at the core message reaching consumers. ISE's investigation reveals a patchwork of compliance. InSinkErator has identified missing product packages in retail stores throughout the country, including in California, Texas, Illinois, Pennsylvania, Maryland, North Carolina, and Georgia. *Id.* ¶¶ 3–6. Substantial compliance means actual compliance in most material respects, not a sprinkling of compliance. Any claim of substantial compliance must be viewed with skepticism given the sheer number of violations documented. *Id.* This is not a case of a single isolated slip-up; it's systemic noncompliance.

*Second*, Joneca is likely to claim that compliance with the PI Order was outside of its control. But the PI Order makes it Joneca's responsibility to control what retailers do with Joneca's product marketing. Joneca cannot pass the buck. If anything, the fact that multiple different retailers – both brick-and-mortar stores and online stores – all failed to include disclaimers strongly suggest that the common denominator is Joneca. It is either failing to instruct them properly or it is not following up to ensure their compliance. Joneca has contracts and business relationships it can leverage; it also had the option to enlist the Court's help if a retailer refused to comply. The law does not allow a party to avoid responsibility by pointing fingers at third parties when it was tasked with ensuring third-party compliance. Joneca also had actual knowledge of these issues since as early as May 13, 2025 and still did not fix them, which undercuts any notion that it was unaware of these issues. It simply has not prioritized compliance with the PI Order.

*Third*, Joneca is likely to argue that the PI Order didn't specifically require the disclaimer appear in certain places, *e.g.*, disclaimers in search results. The PI Order cannot possibly spell out every permutation of how a disclaimer should appear in every context. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir.2000) (explaining that an injunction need not "catalog the entire universe" of its scope but must provide parties with "adequate notice"). It sets forth a broad principle of "clear and conspicuous" disclosure accompanying any horsepower claim. PI Order at 18, n. 10 ("A disclaimer must be clear and conspicuous."). Courts routinely hold that disclaimers in advertising must be clear and conspicuous. *See F.T.C. v. OMICS Group Inc.*, 302 F.Supp.3d 1184, 1190 (D. Nev. 2017) ("[A]ny disclaimers must be prominent and unambiguous to change the apparent meaning and leave an accurate impression."); *LifeScan, Inc. v. Shasta Tech.*, LLC, No. No. 12–cv–06360–JST, 2013 WL 3200629, at *2 (N.D. Cal. June 24, 2013) ("If the image is used in a print advertisement or on a web page, the disclaimer must be clear and conspicuous and must be in the same type (with respect to size and boldness) as is used generally in

the advertisement."); *see also Removatron Int'l Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir.1989) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression."); *Velasco v. Paccar, Inc.*, No. LA CV13-09407, 2017 WL 11632291, at *10 (C.D. Cal. Sept. 22, 2017) ("The implied warranty of fitness for a particular purpose may be disclaimed. To be effective, such a disclaimer 'must be by a writing and conspicuous.'"); *Dorman v. Int'l Harvester Co.*, 46 Cal.App.3d 11, 19-20 (1975) (disclaimers that are not "clear and distinct" are not effective). The specific examples given by the Court make clear the intent. Courts expect reasonable adherence to the purpose of an injunction, not hairsplitting loopholes. Even if the injunction doesn't explicitly say "include the disclaimer in search results," it does say any advertising or promotional materials with the horsepower claim must include the disclaimer. A search result that touts a garbage disposal's horsepower is undoubtedly advertising for the product. Moreover, even if a particular literal reading of the PI Order left some ambiguity, Joneca had an obligation to err on the side of compliance (or seek clarification from the Court) rather than exploit ambiguities to evade the PI Order. The spirit and intent of the PI Order is clear: a consumer seeing "1 HP" should, at the same time, be informed that this horsepower claim does not refer to motor output horsepower. Unfortunately, that is not clear in many scenarios online. Schmidt Decl. at ¶¶ 12–15. Thus, Joneca's implementation fails the preliminary injunction's purpose – which is cure the horsepower claim's deceptiveness – even if Joneca tries to argue technicalities. To allow Joneca to avoid the consequences of the preliminary injunction by placing form over substance would undermine the PI Order and deny ISE the preliminary relief awarded to it by the Court.

*Fourth*, Joneca may argue that it needs more time to ensure compliance. But Joneca has had ample time. The injunction provided 7 days for new packaging, 10 days to notify retailers, 60 days to report, and 90 days to fix preexisting marketing.

PI Order at 19. We are now more than 7 months post-injunction. ISE even extended grace to Joneca by not immediately rushing to Court, but instead giving it multiple opportunities to cure its noncompliance. Unfortunately, the continuing violations demonstrate that without the Court's intervention, Joneca will continue with its partial compliance. The harm to ISE and consumers continues each day Joneca's horsepower claims persist without the appropriate disclaimer.

In short, Joneca cannot justify its conduct. ISE respectfully requests that the Court enforce the PI Order.

### 3. Coercive Sanctions Are Warranted to Compel Full Compliance

The primary goal of civil contempt is to coerce compliance with the Court's order and to compensate the injured party for losses caused by noncompliance. A court may wield its civil contempt powers for two separate and independent purposes: "(1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (internal quotation marks omitted); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("Sanctions for civil contempt may be imposed to coerce obedience to a court order or to compensate the party pursuing the party pursuing the contempt actions for injuries resulting from the contemptuous behavior, or both."). At this stage, ISE seeks only non-monetary coercive sanctions to ensure Joneca fully comply with the PI Order.

Courts may impose non-monetary sanctions aimed at coercing compliance. *Parsons v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020) (approving civil contempt order requiring filing of monthly reports). Coercive sanctions are appropriate to bring Joneca into compliance with this PI Order. In determining the appropriate type of coercive sanctions, "the court should consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." *Gen. Signal Corp.*, 787 F.2d at 1380 (citations and internal quotation marks omitted). Joneca's ongoing violations for months are precisely the

kind of flouting of a court order that warrants coercive sanctions – a clear order and widespread actual violations.

ISE submits that strong measures are needed to bring Joneca into compliance and respectfully requests that the Court impose necessary relief. First, ISE seeks an order declaring Joneca is in violation of the PI Order. A formal finding will underscore the seriousness of Joneca's violations and provide a clear record that Joneca has violated the PI Order. It will also set the stage for further coercive measures if needed. Second, the PI Order required a 60-day compliance report, but Joneca's prior report was evidently insufficient. Dkt. 104 ("Joneca is diligently complying with the PI Order"). ISE requests that the Court require Joneca to provide an updated, comprehensive compliance report within 10 days detailing exactly what has been done to cure each deficiency and further require Joneca to support the report with declarations by the responsible personnel. Finally, the Court could also fashion additional remedies to ensure compliance with its PI Order. The Court, for instance, might order Joneca to post the disclaimer more prominently online. ISE is open to any such measure that the Court believes will best achieve compliance and inform the public.

## IV.   CONCLUSION

For the reasons outlined above, ISE requests that the Court grant its motion to enforce the preliminary injunction order.

Dated: August 27, 2025               SUSMAN GODFREY L.L.P.

By: /s/   *Kalpana Srinivasan*

Kalpana Srinivasan (SBN 237460)
Michael Gervais (SBN 330731)
Anna C. Coll (SBN 337548)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

mgervais@susmangodfrey.com
acoll@susmangodfrey.com

Joseph Grinstein (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366
Fax: (713) 654-6666
jgrinstein @susmangodfrey.com

*Attorneys for Plaintiff and Counter-Defendant Insinkerator LLC*

## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Plaintiff InSinkErator LLC, certifies that this brief contains 4,940 words, which complies with the word limit of L.R. 11-6.1.

/s/ Kalpana Srinivasan