**HOGAN LOVELLS US LLP**
TRENTON H. NORRIS (Bar No. 164781)
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
trent.norris@hoganlovells.com

MICHAEL L. TURRILL (Bar No. 185263)
JOSEPH R. O'CONNOR (Bar No. 274421)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.turrill@hoganlovells.com
joe.oconnor@hoganlovells.com

REBECCA C. MANDEL (*pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
rebecca.mandel@hoganlovells.com

*Attorneys for Defendants*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSINKERATOR LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>JONECA COMPANY LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation,<br><br>Defendants.<br><br>JONECA COMPANY LLC, a Delaware limited liability company,<br><br>Counter-Claimant,<br><br>vs.<br><br>INSINKERATOR LLC, a Delaware limited liability company,<br><br>Counter-Defendant. | Case No.: 8:24-cv-02600-JVS-ADS<br><br>Action Filed: November 27, 2024<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS JONECA COMPANY, LLC AND THE JONECA CORPORATION TO INCREASE PRELIMINARY INJUNCTION BOND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL<br><br>Judge: Honorable James V. Selna<br><br>Date: October 20, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 10C |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on October 20, 2025 in Courtroom 10C of the above-captioned courthouse, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendants Joneca Company, LLC and The Joneca Corporation (collectively, "Joneca") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 65(c) to increase the preliminary injunction bond set in this matter to ▇▇▇▇. *See* ECF No. 70. New facts since the Court's issuance of the bond warrant a change to the amount of the bond, as the $500,000 bond will not sufficiently cover the costs and damages should Joneca be found to have been wrongfully enjoined.

This Motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3, which took place on August 27, 2025. *See* Declaration of Rebecca Mandel, ¶ 9. During this conference, the Parties discussed the substance of the Motion and whether any potential resolution could be reached. *Id.* Counsel for Plaintiff indicated that Plaintiff opposes the Motion. *Id.* As the Parties were unable to reach a resolution, the reasons necessitating this Motion remain.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the Declaration of Jonathan Chavez, the Declaration of Rebecca Mandel, and any other arguments, evidence, or matters that may be properly heard or considered by the Court.

## STATEMENT OF RELIEF SOUGHT

Joneca seeks an order pursuant to Federal Rule of Civil Procedure 65(c) increasing the preliminary injunction bond amount to ▇▇▇▇.

Dated: September 8, 2025

HOGAN LOVELLS US LLP

By: */s/ Trenton. H. Norris*
Trenton H. Norris

*Attorneys for Defendants*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. PROCEDURAL BACKGROUND ............................................................. 2

III. FACTUAL BACKGROUND ..................................................................... 3

IV. LEGAL STANDARD ................................................................................. 6

V. ARGUMENT ............................................................................................... 8

VI. CONCLUSION .......................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v Napster, Inc.*,
 284 F.3d 1091 (9th Cir. 2002) ............................................................................. 8

*AK Futures LLC v. LCF Labs Inc.*,
 2023 WL 2558534 (C.D. Cal. Jan. 3, 2023) ......................................................... 8

*Apple, Inc. v. Samsung Elecs. Co.*,
 877 F. Supp. 2d 838 (N.D. Cal.), *rev'd on other grounds*, 695 F.3d
 1370 (Fed. Cir. 2012) ........................................................................................... 7

*Coldwell Banker Real Est. LLC v. Smile Enters., Inc.*,
 2011 WL 13220121 (C.D. Cal. Mar. 11, 2011) ................................................... 6

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
 321 F.3d 878 (9th Cir. 2003) ............................................................................... 7

*CyberMedia, Inc. v. Symantec Corp.*,
 19 F. Supp. 2d 1070 (N.D. Cal. 1998) ........................................................... 7, 10

*Dass v. Tosco Corp.*,
 2006 WL 8563401 (C.D. Cal. Dec. 18, 2006), *aff'd*, 280 F. App'x
 571 (9th Cir. 2008) .............................................................................................. 7

*Genesis 1 Oil Servs. LLC v. Wismann Grp. LLC*,
 2023 WL 9019019 (C.D. Cal. Nov. 2, 2023) ..................................................... 11

*Gorbach v. Reno*,
 219 F.3d 1087 (9th Cir. 2000) ............................................................................. 9

*Lewis Galoob Toys v. Nintendo of Am., Inc.*,
 1991 WL 1164068 (N.D. Cal. Mar. 27, 1991) ................................................. 8, 9

*Mead Johnson & Co. v. Abbott Labs.*,
 201 F.3d 883 (7th Cir.2000) .............................................................................. 10

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
 16 F.3d 1032 (9th Cir. 1994) ........................................................... 1, 6, 7, 9, 10

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
 2008 WL 11363726 (D. Md. Apr. 25, 2008) ............................................. 7, 9, 10

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*,
 2013 WL 12244286 (C.D. Cal. Feb. 19, 2013) ................................................... 8

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*,
 364 U.S. 642 (1961) ............................................................................................ 8

*Titaness Light Shop v. Sunlight Supply, Inc.*,
   2014 WL 358406 (D. Nev. Jan. 31, 2014) ........................................................... 7

*Usrey v. Chen*,
   2014 WL 12570232 (C.D. Cal. May 29, 2014) ................................................. 10

*White Oak Vineyards & Winery LLC v. White Oak Spirits, LLC*,
   2015 WL 12731903 (C.D. Cal. Mar. 9, 2015) .................................................... 7

**Other Authorities**

11A Charles Alan Wright, et al., Federal Practice & Procedure § 2954
   (3d ed.) ................................................................................................................ 7

Federal Rule of Civil Procedure 65(c) ............................................................. *passim*

## I. INTRODUCTION

Federal Rule of Civil Procedure 65(c) requires a party seeking an injunction to make funds available as a security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongly enjoined or restrained." *See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036–37 (9th Cir. 1994). The current preliminary injunction bond of $500,000 significantly undervalues the damages and costs that Defendants Joneca Company, LLC and The Joneca Corporation (together, "Joneca") have suffered, and will continue to suffer, should it be later determined that they were wrongfully enjoined.

In ordering Plaintiff InSinkErator LLC ("ISE") to post a $500,000 bond, the Court acknowledged that Joneca faces "harm to its business upon the issuance of [the] preliminary injunction" that includes actual compliance costs, like restickering of products, as well as "reputation harms and potential concerns arising from retailer contract bidding." ECF No. 71 ("Order") at 17. While the Court referred to those harms as "potential" in setting the bond amount, *see id.*, Joneca's costs for complying with the injunction are no longer merely possible, they are certain.

Indeed, there has been a significant change in circumstances since the time the bond amount was set. Specifically, Joneca has now complied with the Court's Order, expending more than ███████ in its extensive compliance efforts, which is more than double (and nearly triple) the current bond amount. This ███████ amount is a conservative assessment, as it reflects only out-of-pocket compliance costs and does not even take into account the numerous other harms that Joneca has and will continue to suffer as long as the preliminary injunction remains in effect.

The appropriate amount of a bond ordered under Rule 65(c) is the amount of potential harm that will be caused if the injunction has been issued improperly. The current bond amount is wholly insufficient. As such, Joneca respectfully requests

1

1  that the Court increase the bond amount to ▉▉▉▉▉▉▉ to account for the actual,

2  provable costs Joneca has incurred as a result of the preliminary injunction.

3  **II.  PROCEDURAL BACKGROUND**

4  ISE filed its complaint on November 27, 2024, asserting claims for false

5  advertising and interference with prospective economic advantage due to alleged

6  false horsepower claims on Joneca-made garbage disposal products ("Products" or

7  "Product").  *See* ECF No. 1.  On December 6, 2024, ISE filed a Motion for

8  Preliminary Injunction ("PI Motion"), *see* ECF Nos. 22, 22-1, which Joneca opposed.

9  ECF No. 38.  The Court tentatively granted ISE's PI Motion on January 3, 2025.

10  At the hearing on the PI Motion, the Court indicated its intention to set the

11  bond at $500,000.  ECF No. 72, at 22:14-15.  Per the Court's request, the Parties

12  submitted a joint filing detailing their respective proposals on the scope and timing

13  of the injunction.  ECF No. 69.  In that submission, Joneca stated that it did not

14  believe that the $500,000 bond amount adequately covered Joneca's anticipated costs

15  for complying with the injunction, and noted that it may petition the Court in the

16  future for an increase in the bond amount if circumstances warranted.  ECF No. 69,

17  at 7 & 11 n.5.

18  The Court granted ISE's PI Motion on January 10, 2025.  *See generally* Order.

19  In the Order, among other things, the Court ordered that Joneca place a disclaimer on

20  its existing and already disseminated marketing and packaging stating that

21  "Horsepower claimed on package does not indicate motor output or motor power

22  applied for processing."  *Id.* at 17–19.  The Court also ordered that Joneca not assist,

23  permit, or cause the continued display of such horsepower claims on online and

24  offline promotional materials, including third-party websites, in-store signage, and

25  in-store displays.  *Id.*  The Court further ordered ISE to post a bond in the amount of

26  $500,000 on the basis that Joneca faces "potential harm" to its business upon the

27  issuance of a preliminary injunction, including the stickering of its Products

28  nationwide, reputational harms, and potential concerns arising from retailer contract

bidding. *Id.* at 17. ISE filed notice that it posted the $500,000 bond amount on January 15, 2025. ECF No. 77.

On January 15, 2025, Joneca appealed the Order to the U.S. Court of Appeals for the Ninth Circuit. Oral argument was held before the Honorable Judges Berzon, Higginson, and Sung on August 22, 2025. As of the date of this filing, no decision by the Ninth Circuit has been issued.

On August 27, 2025, ISE filed a Motion to Enforce Preliminary Injunction, seeking to broaden the interpretation of the Order and impose additional costs on Joneca. Joneca's Opposition brief is due on September 19, 2025.

### III.   FACTUAL BACKGROUND

Joneca has taken all reasonable steps within its power to comply with the Order.[1] As a result, Joneca has invested no less than ▮▮▮▮▮ to comply with the Order, including labor costs for approximately ▮▮ hours,—well more than twice the current bond amount. Declaration of Jonathan Chavez ("Chavez Decl.") ¶ 2. Joneca's efforts include, but are not limited to, the following:

<u>Product Packaging</u>:  As an initial matter, all Products shipped out from Joneca's factory bear the required disclaimer. Joneca had to design the labels, including coordination with customers on the redesign and to requalify product packaging, as well as incur substantial labor costs to apply stickers at the factory to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 3. This has been an extremely labor-intensive process, requiring everything from engineering bill of materials update approvals to pre-shipment quality inspection. *Id.* ¶ 3.

In addition, Joneca undertook extensive efforts to sticker the universe of Products already in retail channels – by far the biggest compliance expense Joneca has incurred. *Id.* To implement the disclaimer on this universe of Products, Joneca worked diligently with its customers and third-party contractors to apply stickers to

---

[1] Joneca will provide additional argument on this issue in its forthcoming Opposition to ISE's Motion to Enforce Preliminary Injunction.

Products in stores and distribution centers across the United States. *Id.* Because Joneca is a small, family-run business with only 29 employees in total (including 24 full-time, 4 contract, and 1 part-time workers), in order to sticker these Products on the scale and urgency required by the Order, Joneca offered its customers two main options by facilitating two simultaneous work streams. *Id.*

For customers that preferred to handle the stickering process in-house or through the use of their own vendor, Joneca provided detailed instructions and materials to facilitate stickering ▮▮▮▮ of Product units. *Id.* For Joneca's other customers, Joneca engaged third-party contractor that visited ▮▮▮▮ of brick-and-mortar retail stores to physically sticker ▮▮▮▮ of additional Product units already disseminated across all 50 States. *Id.* This effort required significant logistical coordination, including additional contractual agreements, access permissions, and security assurances in order to enter retailers' brick-and-mortar stores and/or distribution centers to complete the stickering process. *Id.* At each location, in addition to stickering the Products, the third-party contractor recorded how many units were in stock and of what horsepower classification, photographed stickered product, and obtained signed attestations from store managers verifying the visit. *Id.*

In total, Joneca effectuated the stickering of more than ▮▮▮▮ in-store units of existing inventory to comply with the Order. *Id.* Simultaneously, Joneca also stickered the inventory for its Products which had already been packaged prior to the Order, but had not yet been shipped out to retailers, including inventory at its own warehouse and distribution centers, requiring substantial employee time and labor and additional costs to design and purchase new materials and discard pre-existing materials. *Id.* ¶ 4.

<u>In-Store Signage and Displays</u>: Joneca worked closely with its retail customers to ensure that in-store signage and displays that mention horsepower also include the required disclaimer. *Id.* ¶ 5. Joneca either designed new signage for its

1  customers or worked together with its customers to co-design their signage to ensure
2  compliance. *Id.* To install the new signage and displays, Joneca offered retailers
3  options that best fit their needs. *Id.* Some customers opted to use a third-party
4  contractor, provided at Joneca's cost, to install updated signage and displays in brick-
5  and-mortar stores. *Id.* Other retailers opted to handle the process in-house; for these
6  customers, Joneca paid to print and ship all updated signage and displays. *Id.*

<u>Website Updates</u>: Joneca diligently updated all websites on which its Products are sold to include the required disclaimer. This effort required approximately ▓▓ hours in labor costs, as Joneca coordinated with a dozen different third parties to implement the disclaimer in the manner best suited to each individualized webpage and customer. *Id.* ¶ 6.

Joneca's various costs across these numerous workstreams total ▓▓▓ and include the following:

- ▓▓▓ in third-party contractor costs to sticker Products at brick-and-mortar retail stores and distribution centers and install revised signage and displays. *Id.* ¶ 7.
- ▓▓▓ in printing and materials costs for the disclaimer stickers for product packaging and in-store signage and displays. *Id.*
- ▓▓▓ in costs to relabel product in Joneca's control at its factory and distribution centers, including costs for labor, materials, and discarded labels that can no longer be used. *Id.*
- ▓▓▓ in shipping costs to provide disclaimer stickers for product packaging and in-store signage and displays. *Id.*
- ▓▓▓ in labor to coordinate and manage re-labeling efforts with customers. *Id.* These efforts have included, but are not limited to, coordinating with customers to provide instruction and monitor compliance with the Order, collaborating with customers to redesign and re-qualify product packaging, and managing factory and warehouse relabeling operations and logistics. *Id.*

- ▮▮▮ to design disclaimer stickers for existing packaging and in-store signage and displays, redesign carton artwork for new Products with the required disclaimer, and update designs for all in-store signage and displays, trade show signage, brochures, and online marketing with required disclaimer. *Id.*

- ▮▮▮ in labor to implement online marketing changes to Joneca's website and all third-party websites for retailers that sell Joneca-manufactured Products online. *Id.*

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) permits a court, in issuing a preliminary injunction or a temporary restraining order, to order that a party post a "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Indeed, there is a rebuttable presumption that a wrongfully enjoined party is entitled to have an injunction bond executed and to recover provable damages up to the amount of the bond. *See Nintendo of Am., Inc.*, 16 F.3d at 1036–37. This presumption allows for a party that is wrongfully enjoined to receive compensation on its damages "when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Id.* "The purpose of the bond requirement is: (1) to discourage the moving party from seeking preliminary injunctive relief to which it is not entitled; (2) to assure [the] court that if it errs in granting such relief the moving party will bear the cost of the error; (3) to provide a wrongfully-enjoined party a source from which it may readily collect damages without further litigation." *Coldwell Banker Real Est. LLC v. Smile Enters., Inc.*, 2011 WL 13220121, at *3 (C.D. Cal. Mar. 11, 2011); *see also Dass v. Tosco Corp.*, 2006 WL 8563401, at *2 (C.D. Cal. Dec. 18, 2006), *aff'd*, 280 F. App'x 571 (9th Cir. 2008).

The district court is afforded wide discretion in setting the amount of the bond. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th

Cir. 2003). "[T]he amount of the bond is an upper limit on an injured party's redress for a wrongful injunction, [and] courts have held that 'district courts should err on the high side.'" *See Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 918 (N.D. Cal.), *rev'd on other grounds*, 695 F.3d 1370 (Fed. Cir. 2012) (citing *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000)) (reasoning, in a Lanham Act case, that "[w]hen setting the amount of security, district courts should err on the high side"). Indeed, when determining the amount of the bond, courts have considered many factors including any losses and expenses that the enjoined party would incur in order to comply with the injunction (including cost of re-labeling and re-branding), lost revenues and profits that would have been earned by enjoined party, and damage to the enjoined party's reputation as a result of the injunction. *See, e.g.*, *Nintendo*, 16 F.3d at 1039; *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1080 (N.D. Cal. 1998); *White Oak Vineyards & Winery LLC v. White Oak Spirits, LLC*, 2015 WL 12731903, at *11 (C.D. Cal. Mar. 9, 2015); *Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 2008 WL 11363726, at *2 (D. Md. Apr. 25, 2008); *see also* 11A Charles Alan Wright, et al., Federal Practice & Procedure § 2954 (3d ed.) (noting that a bond usually "covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained"). The court may also consider the moving party's ability to post the requested bond. *See Titaness Light Shop v. Sunlight Supply, Inc.*, 2014 WL 358406, at *4 (D. Nev. Jan. 31, 2014).

District courts also have wide discretion to *modify* the terms of the bond posted by the moving party. Indeed, a district court has the inherent authority to modify a preliminary injunction in consideration of new facts. *See A&M Records, Inc. v Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002); *see also Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647–48 (1961) (noting that the

district court has "wide discretion" to modify injunction based on changed circumstances or new facts). Courts retain the power to modify or dissolve an injunction in the face of changed law or circumstances at any time, and this power includes the ability to change the amount of the bond that must be posted. *See Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244286, at *2 (C.D. Cal. Feb. 19, 2013); *AK Futures LLC v. LCF Labs Inc.*, 2023 WL 2558534, at *2 (C.D. Cal. Jan. 3, 2023) ("Courts have wide discretion to increase the bond amount, so long as it is based on a 'reasonable estimation' of the enjoined party's 'potential damages resulting from the injunction.'").

To warrant an increase in the bond amount, an enjoined party must "only show that damage is certain; not that the amount of damage is certain" since the "injunction bond merely puts a ceiling on damages." *Lewis Galoob Toys v. Nintendo of Am., Inc.*, 1991 WL 1164068, at *1–2 (N.D. Cal. Mar. 27, 1991) (increasing the initial bond from $100,000 to $15 million in response to four separate increase requests throughout the injunction).

## V. ARGUMENT

The current bond will not adequately cover Joneca's damages and costs if it has been wrongfully enjoined – as it maintains it has been. Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order ***only if*** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The Court has already recognized that a bond is proper in this case. Order at 17. However, new facts presented in connection with this motion show that the current $500,000 injunction bond does not provide adequate security. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) ("the purpose of . . . a bond is to cover any costs or damages suffered by the [party sought to be enjoined], arising from a

wrongful injunction"). Federal Rule of Civil Procedure 65(c) requires this inadequacy to be rectified by the Court.

Here, the evidence of Joneca's actual costs for compliance clearly demonstrates that Joneca has been damaged by the injunction at a substantially higher amount than the current bond amount. *See* Chavez Decl. ¶ 7. Indeed, the evidence shows that some of the "potential harms" that the Court found that Joneca could suffer as a direct result of complying with the Order are no longer speculative but certain. Order, at 17. While the "potential harm" the Court considered in setting the initial bond amount included (among other things) the cost to re-label Products, new circumstances—namely the *actual* costs to re-label the Products—at minimum warrant a modification of the initial bond amount. *Id.* Joneca has offered concrete calculations of costs actually incurred that total over ███████. *See supra* Section III.

The evidence that Joneca presents regarding its actual compliance costs presents a rational and reasonably certain basis from which an increase to the bond amount can be determined. *See* Chavez Decl. ¶ 7; *see also Nintendo*, 16 F.3d at 1034–35, 1039 (reflecting that courts have wide discretion to increase bond amounts based on a reasonable estimate of damages); *Lewis Galoob*, 1991 WL 1164068, at *1–2, *4 (increasing a bond from $1.6 million to $15 million based on declarations supporting lost sales and market share, and noting since the bond is the ceiling on damages, that "ceiling should not restrict the enjoined party from proving after trial the full extent of its forecast damages"); *Sanderson Farms*, 2008 WL 11363726, at *2 (reasoning that "certain predictable direct costs associated with the preliminary injunction order" is a factor in determining a sufficient bond amount).

Moreover, Joneca's request seeks only the most conservative bond amount increase, as Joneca seeks an increase based on its actual incurred expenses, and not the numerous other harms Joneca is suffering on the basis of the preliminary injunction that Joneca contends was wrongfully entered. Indeed, the enjoined party's

actual cost to comply with an injunction is only *one* factor courts consider in determining a sufficient injunction bond amount. *See, e.g.*, *Sanderson Farms*, 2008 WL 11363726, at *2 (considering, among other things, the direct costs associated with compliance, potential lost profits, and damage to customer and consumer relations in determining the bond amount); *Usrey v. Chen*, 2014 WL 12570232, at *9 n.16 (C.D. Cal. May 29, 2014) (noting lost profits, costs related to cancellations of contracts and unreleased products, costs related with recalling the product, and damage to reputation and loss of goodwill as among the factors to be considered in determining the appropriate bond amount). Specifically, the potential harm and damages that Joneca will incur as a result of the injunction if it is ultimately determined to be wrongfully issued would also include those harms directly referenced by the Court (*i.e.*, reputation harm and concerns arising from retailer contract bidding), Order at 17, as well as lost sales, profits, and market share, s*ee, e.g.*, *CyberMedia, Inc.*, 19 F. Supp. 2d at 1080 (considering lost profits, promotional costs for unreleased products, damage to reputation, costs associated with recall required by the injunction); *Mead Johnson*, 201 F.3d at 887–88 (requiring the district court consider both direct costs incurred as a result of the injunction as well as other damage such as loss of market share, and noting that courts should "err on the high side" when setting bonds because "an error in the other direction produces irreparable injury" to the enjoined party should the injunction be found erroneous); *Nintendo*, 16 F.3d at 1034–35, 1039 (affirming the district court's consideration of lost sales and lost profits when increasing the bond amount); *see also* Chavez Decl. ¶ 8. Moreover, if Joneca is ultimately found to have been wrongfully enjoined, the costs of reversing Joneca's changes to product packaging, in-store signage, and websites are expected to add additional cost. *Id.* While Joneca does not pursue an increase of the bond amount on the basis of these other harms at this time—in part because these harms are still ongoing and yet to be quantified—they would only serve to justify an even higher bond than the ▓▓▓▓▓ requested.

Accordingly, an increase of the bond to ██████ is the minimum amount needed to provide adequate security for Joneca should it ultimately be found that Joneca was wrongfully enjoined.[2] As the evidence shows, this amount represents a provable, conservative amount by which Joneca has already been damaged as a direct result of its compliance with the injunction. *See, e.g.*, *Genesis 1 Oil Servs. LLC v. Wismann Grp. LLC*, 2023 WL 9019019, at *2 (C.D. Cal. Nov. 2, 2023) ("[A]lthough the party seeking execution of the bond must adequately prove its damages, 'mathematical certainty' is not required.") (collecting cases).

Given that the certain financial threat that the injunction has already posed is significantly higher than the current bond amount, Joneca respectfully requests the Court increase the bond amount to a minimum of ██████ to provide adequate security for Joneca's actual costs should Joneca ultimately be found to have been wrongfully enjoined.

## VI. CONCLUSION

For the reasons set forth above, Joneca respectfully requests that this Court modify its preliminary injunction Order and increase the bond amount to a minimum of ██████

Dated: September 8, 2025                    HOGAN LOVELLS US LLP

*/s/ Trenton H. Norris*

———————————————
Trenton H. Norris

*Attorneys for Defendants*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

---

[2] To the extent the Court credits any of ISE's arguments in its currently pending Motion to Enforce Preliminary Injunction, *see* ECF No. 139, and requires additional compliance efforts by Joneca—which it should not—Joneca reserves the right to submit an additional motion to increase the bond amount to cover any additional compliance costs.

11
DEFS.' NOTICE OF MOTION AND MOTION TO INCREASE BOND
Case No.: 8:24-cv-02600-JVS-ADS

## Certificate of Compliance

The undersigned, counsel of record for Defendants Joneca Company, LLC and The Joneca Corporation certifies that this brief contains 3,607 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 8, 2025

*/s/ Trenton H. Norris*

Trenton H. Norris

**PROOF OF SERVICE**

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067. On September 8, 2025, I served a copy of the within document(s):

- **Defendants Joneca Company, LLC and The Joneca Corporation's Unopposed Application for Leave to File Under Seal Portions of Motion to Increase Preliminary Injunction Bond and Supporting Declaration of Jonathan Chavez Under Seal;**

- **Declaration of Rebecca C. Mandel In Support Of Defendants Joneca Company, LLC and The Joneca Corporation's Unopposed Application for Leave to File Under Seal Portions of Motion to Increase Preliminary Injunction Bond and Supporting Declaration of Jonathan Chavez Under Seal;**

- **[Proposed] Order Granting Defendants Joneca Company, LLC and The Joneca Corporation's Unopposed Application for Leave to File Under Seal Portions of Motion to Increase Preliminary Injunction Bond and Supporting Declaration of Jonathan Chavez Under Seal;**

- **Redacted Notice of Motion and Motion of Defendants Joneca Company, LLC and The Joneca Corporation to Increase Preliminary Injunction Bond and Memorandum of Points and Authorities In Support Thereof;**

- **Redacted Declaration of Jonathan Chavez In Support Of Defendants Joneca Company, LLC and The Joneca Corporation's Motion to Increase Preliminary Injunction Bond;**

- **Unredacted Notice of Motion and Motion of Defendants Joneca Company, LLC and The Joneca Corporation to Increase Preliminary Injunction Bond and Memorandum of Points and Authorities In Support Thereof;**

- **Unredacted Declaration of Jonathan Chavez In Support Of Defendants Joneca Company, LLC and The Joneca Corporation's Motion to Increase Preliminary Injunction Bond; and,**

- **[Proposed] Order Granting Motion of Defendants Joneca Company, LLC and The Joneca Corporation to Increase Preliminary Injunction Bond.**

DEFS.' NOTICE OF MOTION AND MOTION TO INCREASE BOND
Case No.: 8:24-cv-02600-JVS-ADS

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Kalpana Srinivasan, Esq.<br>Michael Gervais, Esq.<br>Anna C. Coll, Esq.<br>**SUSMAN GODFREY L.L.P.**<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Tel: (310) 789-3100<br>Fax: (310) 789-3150<br>ksrinivasan@susmangodfrey.com<br>mgervais@susmangodfrey.com<br>acoll@susmangodfrey.com | Joseph Grinstein, Esq.<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana St., Suite 5100<br>Houston, TX 77002-5096<br>Tel: (713) 651-9366<br>Fax: (713) 654-6666<br>jgrinstein@susmangodfrey.com<br><br>*Attorneys for Plaintiff and Counter-Defendant*<br>INSINKERATOR LLC |

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 8, 2025, at Los Angeles, California.

_____
Hien Tran