Kalpana Srinivasan (SBN 237460)
Michael Gervais (SBN 330731)
Anna Coll (CA 337548)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
mgervais@susmangodfrey.com
acoll@susmangodfrey.com

Joseph Grinstein (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jgrinstein @susmangodfrey.com

*Attorneys for Plaintiff and*
*Counter-Defendant Insinkerator LLC*
*[See additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| INSINKERATOR LLC, A Delaware limited liability company<br><br>*Plaintiff*,<br><br>vs.<br><br>JONECA COMPANY, LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation<br><br>*Defendant*s. | Case No. 8-24-cv-02600-JVS-ADS<br><br>Judge: Honorable James V. Selna<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL<br><br>DATE:     October 20, 2025<br>TIME:     1:30 pm<br>PLACE:  Courtroom 10C<br><br>Action Filed: November 27, 2024 |
| JONECA COMPANY, LLC, a Delaware limited liability company,<br><br>*Counter-Claimant*,<br><br>vs.<br><br>INSINKERATOR LLC, a Delaware limited liability company,<br><br>*Counter-Defendant*. | |

# TABLE OF CONTENTS

PAGE

I.    Introduction ......................................................................................... 4

II.   Argument .............................................................................................. 5

    A.    Product Packaging ..................................................................... 6

        1.    Joneca's Excuses for its Noncompliance are Unpersuasive ........ 6

        2.    ISE Continues to See Noncompliance with Product
            Packages Across the Country. .................................................. 10

    B.    In-Store Signage and Displays ................................................ 10

    C.    Online Product Pages .............................................................. 12

    D.    Online Search Results ............................................................. 15

III.   CONCLUSION ................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir.2000) ............................................................................. 11

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    2015 WL 12746229 (C.D. Cal. Apr. 21, 2015) ............................................. 9, 10

**Rules**

L.R. 7-3 .................................................................................................................... 5

## I.     **Introduction**

Joneca's opposition magnifies the problems with its compliance with the Court's PI Order. It offers excuses that ISE predicted in its opening brief, and each remains unpersuasive. Its representations that it substantially complied with the requirement to sticker product packages and in-store signage is contradicted by the numerous packages and signage that ISE uncovered without the disclaimer. As for online marketing, Joneca tries to deflect blame for its noncompliance on third parties by claiming ISE's requests are not "feasible." In doing so, it fails to substantiate those third party "policies," likely because they are demonstrably false. The opposition makes clear that Joneca has not substantially complied with the PI Order.

ISE's motion is not a "gotcha," nor did it "scour" the country for noncompliance with product packages. ISE sampled random stores in locations throughout the country to see if Joneca complied with the Court's PI Order. What it found was a systemic problem with Joneca's  compliance. In fact, ISE conducted a subsequent investigation since the filing of its motion, and it continues to discover numerous packages and in-store signage and displays that lack disclaimers. Reply Declaration of Adeline Schmidt ("Schmidt Reply Decl.") ¶¶ 3–10, Exs. A–H; Reply Declaration Rodney Polanco ("Polanco Reply Decl.) ¶¶ 3–4, Ex. A; Reply Declaration of William Melsheimer ("Melsheimer Reply Decl.") ¶ 2, Ex. A; Reply Declaration of Joanna Stanley ¶¶ 3–5, Exs. A–C; Declaration of Joseph Grinstein ¶ 3, Ex. A. Each time over the last few months that Joneca has asserted that these are "*de minimis*" ISE has offered more examples of deficiencies. These are not technical violations—they are emblematic of a widespread problem with Joneca's compliance.

Joneca's opposition is also wrong about the parties meet and confers. The parties conferred two times to discuss Joneca's noncompliance, including in June and August. Dkt. 139-29–33. Both before and after the conferences, ISE explained the problems it uncovered with Joneca's compliance in detailed letters and emails, which included specific examples of noncompliance. Each time, ISE requested information

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION
Case No.: 8-2-cv-02600-JVS-ADS

from Joneca about its compliance. *Id.* For example, ISE twice requested that Joneca provide the report from the third-party contractor it hired to conduct the disclaimer stickering. Dkt. 139-32; Dkt. 139-29. Joneca never provided that report. In fact, Joneca even represented that "we will provide any further information, including with regard to the efforts of Joneca's contractor, in our briefing to the court." Dkt. 139-29. Notably absent from Joneca's opposition is the third-party contractor's compliance report. Instead, Joneca provides "summaries" of its contractor's visits to certain stores that are contradicted by ISE's visits to those same stores weeks or months later. The parties' conferences resulted in an impasse because Joneca refused to acknowledge its noncompliance and was unwilling to correct the deficiencies that ISE identified both online and in stores. After eight months of noncompliance with the PI Order, ISE was left with no choice but to file its motion.[1]

## II.    <u>Argument</u>

Joneca has not substantially complied with the Court's PI Order. First, product packages throughout the country still—that is, eight months after the PI Order—lack the required disclaimer. These are not one-offs, but rather examples of a pervasive problem with Joneca's compliance. Second, in-store signage and displays likewise lack the disclaimer, and Joneca's interpretation that the disclaimer does not apply to informational placards displayed next to the products is unreasonable. Finally, Joneca has failed to include a "clear and conspicuous" disclaimer in online promotional materials. Its excuses for burying the disclaimer on product pages are meritless, and its interpretation that the PI Order does not apply to search results is wrong. Joneca has not taken all reasonable steps to comply with the PI Order. The numerous examples of noncompliance both in retail stores and online are clear and convincing

---

[1]  ISE satisfied the requirements of L.R. 7-3 because it thoroughly discussed Joneca's noncompliance and a motion to enforce compliance multiple times before filing its motion. Dkt. 139-29–33. ISE sought to resolve these issues by providing examples, offering suggestions, and requesting information. Joneca's failure to provide the requested information coupled with its widespread noncompliance thwarted any attempt to reach resolution.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION
Case No.: 8-2-cv-02600-JVS-ADS

evidence that Joneca has not substantially complied with the injunction. ISE has met its burden to show that Joneca has not complied with the PI Order, and its motion should be granted.

### A.    Product Packaging

#### 1.    Joneca's Excuses for its Noncompliance are Unpersuasive

Joneca offers a litany of excuses in an attempt to rebut the noncompliance that ISE uncovered at various retail locations. First, and as ISE expected, Joneca claims that the examples that ISE identifies are "*de minimis*." Dkt. 152-1 ("Opp.") at 8. This is not the first time that Joneca has tried to claim that ISE's examples were merely one-offs. In its May 20, 2025 letter, Joneca claimed that "any remaining unlabeled product that somehow escaped the stickering effort is *de minimis*." Dkt. 139-31 at 1–2. In its July 3, 2025 letter, Joneca again claimed that the additional examples ISE identified were "outliers" and "*de minimis*." Dkt. 139-33 at 2. And, once again, in its opposition brief, Joneca claims that the latest examples ISE identified are "*de minimis*." Opp. at 4. This is not a credible position. As a preliminary matter, ISE cited numerous examples in its motion that were not previously identified to Joneca. To claim each successive example is *de minimis* plainly ignores the numerous examples that ISE continues to provide. ISE sent its investigators out to stores in seven different states across the country, including California, Texas, Illinois, Pennsylvania, Maryland, North Carolina, and Georgia. Dkt. 139-1 at ¶¶ 3–6. The ISE employees did not "scour" their states hunting for packages without disclaimers, but rather to the local stores close to where they lived. That they quickly identified so many examples of packages lacking disclaimers reveals systemic deficiencies in Joneca's stickering and are not one-off or *de minimis* problems.

The Declaration of Jonathan Chavez cites "document[s] summarizing Joneca's contractor's visit" to some of the stores that ISE identified. Dkt. 152-2 ("Chavez Decl.") at ¶¶ 19–24. It is unclear why Joneca does not provide the full report, which ISE requested several times. It is also unclear if these documents were prepared by

the contractor itself (because no names or company are identified in the documents) or by Joneca (and reflect Joneca's summary of what it was told by the contractor). Regardless, these summaries reveal that Joneca's contractor visited the retail stores in April. *Id.* But the unstickered packages ISE uncovered were all *after* Joneca's contractor visited the store. Dkt. 139-1. Joneca's stickering efforts were therefore inadequate and incomplete. For the retailers that chose to conduct the stickering themselves, Joneca's instructions (which they have not provided) must have been deficient. Joneca claims that the existence of the unstickered packages "do not make sense." Opp. at 9. ISE agrees, as its spot checks should not consistently find examples of deficient packaging if Joneca had complied with the PI Order. But it is. Joneca's assertions that it substantially complied with the PI Order "do not make sense" considering the widespread examples of noncompliance that ISE continues to uncover.

Second, Joneca claims that the fact that ISE's pictures are only of one side of the product package means it could still be in compliance. Opp. at 8. Joneca asks the Court to assume that the stickers must be on one of the other three sides of the product package. There is no basis for such an assumption. For nearly all the pictures attached to the declaration of Adeline Schmidt, the picture was taken of the front of the product packages as they would appear to a consumer walking the aisles of the store. The disclaimer was required to be displayed on the front side of the product packages. PI Order at 18 n.10 ("The disclaimer shall be placed near the claim of horsepower on the front of the product package."). If Joneca had applied the stickers according to the PI Order, they would have appeared in the pictures on the front side of the packages. They did not. Joneca's position that ISE should have included pictures from each side of the product packages to find the disclaimer also defeats the spirit of the PI Order.

Third, Joneca claims that the unlabeled units could be due to one of (1) customer returns that were purchased before the inventory was stickered, (2) in-

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION
Case No.: 8-2-cv-02600-JVS-ADS

transit delivery, or (3) inventory unavailable to the contractor. Opp. at 10. These excuses presuppose that Joneca had a one-time obligation to comply. Not so. Joneca's one-time stickering does not relieve it of its efforts to comply with the PI Order. Joneca was enjoined from "[m]aking any false and deceptive horsepower claims regarding Joneca-made garbage disposal products in any advertising, marketing, promotional, or other commercial materials or communications" and from "[a]ssisting, permitting, or causing to be made by any third party any false and deceptive horsepower claims regarding Joneca-made garbage disposal products." PI Order at 18–19. That is an ongoing obligation. Indeed, Joneca appears to agree that its obligations are ongoing as it applies the disclaimer sticker to all new products that leave its facilities. Chavez Decl. ¶ 6. This applies equally to the product packages in circulation that had left Joneca's facilities before the PI Order issued. Joneca's knowledge of retail stores' return policies (*see* Opp. at 10) means it was well aware of the possibility of customer returns or of in-transit inventory. Joneca has an obligation to return to those stores to ensure they are stickered. These unstickered packages are not a *de minimis* amount or "on-off returns"—███ units in customer returns over a three-month period from Home Depot alone is substantial. Joneca cannot renounce its obligations to thousands of product packages. Those packages should have been stickered when they were originally purchased. The number of returns are likely even higher taking into account other retail stores like Lowe's, Walmart, and Costco. It is immaterial that Joneca "does not receive real-time, store-level information" about returns or inventory. *See* Opp. at 11 n.5. Joneca or its contractor can easily return to the stores periodically to check if the product packages are stickered. Joneca could also ask its retail customers to periodically check that the disposals on the shelves have the disclaimer and to report that information back to Joneca. There is no evidence Joneca has done any of this. Joneca has not taken all reasonable steps to comply with the PI Order.

The crux of Joneca's position is that the problems that ISE uncovered were the fault of the third-party retailers, not Joneca. *See* Opp. at 12. But Joneca cannot hide behind its customers and disavow the numerous examples of noncompliance. The Court enjoined Joneca from assisting, permitting, or causing third parties from making false and deceptive horsepower claims, meaning Joneca is on the hook for the noncompliance of its retail customers. Joneca could have easily returned to the retail locations periodically and communicated with them frequently about the importance of the disclaimer sticker and the steps to be taken to ensure compliance. There is no evidence that Joneca did anything beyond its one-time, haphazard stickering of certain stores.

Joneca's citation to *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, is distinguishable, as the defendant in that case took reasonable steps to ensure compliance with the Court's order, while Joneca has not. As the Court noted, the defendant "undertook tracking of its retailers' weekly sell-through of the Nutri Ninja Pro, to determine whether there was likely to be remaining stock with the disputed packaging on retailers' shelves" which allowed it to "generated estimates of how quickly the retailers were depleting their old stock." *Homeland Housewares*, 2015 WL 12746229, at *3 (C.D. Cal. Apr. 21, 2015) (citations omitted). Additionally, the defendant undertook "a voluntary recall of packaging as to Bad, Bath, and Beyond," and "also undertook to sticker over all the packages its contractors could find on the shelves at Target and Walmart." *Id.* Unlike the defendant in *Homeland Housewares*, there is no evidence that Joneca tracked inventory at retail locations or recalled its products at any retail location. Although Joneca endeavored to sticker product packages through a contractor, the defendant in *Homeland Housewares* substantiated the precise number of packages it stickered, while Joneca has not. The defendant in that case did substantially more to comply with that order than Joneca did here. Finally, the Court noted its surprise that the plaintiff was discovering violations *six months* after the defendant claimed to ship all packages with the corrected

advertising, and invited the plaintiff to renew its motion if discovery turns up that the defendant was wrong. *Id.* at *4. Here, ISE is still uncovering problems *eight months* after the Court's PI Order despite Joneca's claim that it stopped shipping packages without the disclaimer.

2. <u>ISE Continues to See Noncompliance with Product Packages Across the Country.</u>

Since the filing of ISE's motion to enforce, ISE has conducted additional investigations into Joneca's noncompliance. Attached to this motion are additional examples of product packages missing disclaimers that ISE's investigators have uncovered within the last two weeks in stores throughout the country. Schmidt Reply Decl. ¶¶ 3–10; Polanco Reply Decl. ¶¶ 3–4; Grinstein Decl. ¶ 3. ISE continues to see noncompliance in retail stores across the country. Each time Joneca asserts that missing disclaimers are "one-offs," ISE's spot checks quickly disprove that notion by identifying  more and more examples of noncompliance. These examples of non-compliant disclaimers, discovered more than eight months after the Court's PI order, reflect a systemic problem in Joneca's approach to complying with the injunction.

B. <u>In-Store Signage and Displays</u>

Joneca's opposition likewise disclaims any responsibility for the problems identified with in-store signage. It first claims that Home Depot and Lowe's maintain control over their placards, not Joneca. The only support Joneca presents is from the Chavez Declaration, which asserts that those stores "maintain control over the design and implementation of their price placards." Chavez Decl. ¶ 35. Joneca does not cite any company policy or communication with the retailer to substantiate that claim. Nor does Joneca provide any indication that it communicated with the retailer to ask them to correct the false advertising on the placards, such as by placing the disclaimer sticker next to the HP claim. The Court should not accept these representations at face value.

Joneca also claims that the placards are beyond the scope of the PI Order. Joneca was enjoined from assisting, permitting, or causing third parties from making

false and deceptive horsepower claims "in any advertising, marketing, promotional, or other commercial materials or communications currently in stores or in any third party's possession or otherwise already disseminated by Joneca prior to the date of this Order . . .  including websites and in-store signage and displays." PI Order at 19. The placards next to the products on the product shelves qualify as in-store signage or displays. To be clear, ISE is not referring to the price placards that are small enough to only fit the price and the barcode, but rather the informational placards that list the disposal brand, its HP, warranty, RPM, and other facts like whether a cord is included, the anti-jam design and the noise level. *See* Melsheimer Reply Decl. ¶ 2, Ex A; Schmidt Reply Decl. ¶¶ 3, 5–6, Exs. A, C, and D; Polanco Reply Decl. ¶¶ 3–4, Ex. A; Stanley Reply Decl. ¶¶ 3, 5, Exs. A, C; Grinstein Decl. ¶ 3, Ex. A. Considering the host of information appearing on those cards—the first of which is horsepower—there is plenty of room for the disclaimer. Those placards are undeniably signage because they promote the brand of the disposal and its features. Indeed, those are often the *only* signs in the stores that are brand-specific, as the signage at retail stores for disposals are typically limited to categorizing the disposals by horsepower. *See* Schmidt Reply Decl. ¶¶ 3–10, Exs. A–H.

Joneca cannot escape its obligations by pointing to the broad language of the PI Order as lacking specificity. As ISE explained in its motion, the Court was not required to spell out every permutation of how a disclaimer should appear in every context. Mot. at 12 (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir.2000) ((explaining that an injunction need not "catalog the entire universe" of its scope but must provide parties with "adequate notice"). These placards are well within the scope of the PI Order, and Joneca's interpretation that these are excluded is not a reasonable or good faith interpretation of the PI Order. Joneca's interpretation is also inconsistent with its own conduct—Joneca has placed the disclaimer on placards at certain Lowe's locations. Stanley Reply Decl. ¶ 4, Ex. B. It cannot claim that the placards are outside of the scope of the PI Order while also applying the

disclaimer in some stores (Lowe's), but not others (Home Depot).  This type of selective compliance violates the PI Order.

ISE has since uncovered additional examples of Joneca failing to comply with its obligations to place the disclaimer on in-store signage and displays like placards. Melsheimer Reply Decl. ¶ 2, Ex A; Schmidt Reply Decl. ¶¶ 3, 5–6, Exs. A, C, and D; Polanco Reply Decl. ¶¶ 3–4, Ex. A; Stanley Reply Decl. ¶¶ 3, 5, Exs. A, C; Grinstein Decl. ¶ 3, Ex. A. These include placards in Home Depot stores across the country. In fact, while Joneca provides a few examples of the disclaimers on in-store signage at a Lowe's store, Joneca does not provide *any* evidence that in-store signage and displays at Home Depots, which has thousands of locations across the country, display the disclaimer at all. Joneca cannot hide behind excuses of customer returns, in-transit products, or inventory for its failure to comply. The in-store signage and displays do not change, and Joneca could have applied the disclaimer on the placards and other in-store signage one time in each store to satisfy its obligations. It did not do so. Joneca has not substantially complied with the PI Order as to in-store signage and displays.

## C.    <u>Online Product Pages</u>

Like its approach to in-store signage, Joneca seeks to hide behind the broad language of the Court's Order to claim that it has complied. The PI Order was not silent about how the disclaimer should appear. The Court made clear that the disclaimer—whether appearing on product packages or online listings—must be "clear and conspicuous," a point that Joneca agrees to in principle but fails to implement in practice. PI Order at 18 n.10. ISE's insistence on "clear and conspicuous" disclaimer is not a "competitive preference" as Joneca claims, but a straightforward and Court-ordered requirement.

Joneca states that ISE has "no basis" that some websites lack the disclaimer. But the Walmart listing for the "American Standard Slim Line 1.25HP Food Waste Disposer" lacks the disclaimer. Melsheimer Reply Decl. ¶ 3, Ex. B. In fact, beneath

the "Product details" appears Walmart's own disclaimer: "We aim to show you accurate product information. Manufacturers, suppliers and others provide what you see here, and we have not verified it.  See our disclaimer." *Id.* Thus, while Joneca may be right that it "does not control these websites," Opp. at 16, websites like Walmart's appear to give Joneca wide latitude to place the necessary disclaimer in the product details section of the pages.

Joneca denies that the disclaimers online are buried in fine print. Opp. at 16. But the websites themselves prove otherwise. Home Depot is just one example, and the disclaimers on its site are incredibly difficult to find. On the product page for a Glacier Bay 3/4 HP disposal, three bullet points appear near the top of the page next to pictures of the product. Melsheimer Reply Decl. ¶ 4, Ex. C at 2–7. These include information about the disposal, including "Compact design perfect for kitchens with restricted cabinet space," "Features corrosion-proof stainless steel grinding components," and "Complete with bioshield antimicrobial technology to prevent odors." *Id.* Joneca offers no reason why the disclaimer does not appear there at the top of the page. Only until the user clicks "View More Details" are they taken to the "About this Product" section, where the user then has to scroll past the illustrations about product features to the "Highlights" section that provides the disclaimer. *Id.* This assumes that the user even clicks the "View More Details" at all—if not, the user has to scroll from the top of the page several times to arrive at the "Product Details." *Id.* Then, the disclaimer appears only if the user clicks to expand the "Product Details" box, which  forces the user to scroll even further past various illustrations of product features (including horsepower) before seeing the text box that includes the disclaimer. The disclaimer is then buried with other text and very difficult for the user to find. Before finding that disclaimer, the user sees at least six horsepower claims before encountering the disclaimer. *Id.* That cannot possibly be "clear and conspicuous." The user can even click "Add to Cart" to purchase the disposal at the top of the page without scrolling far enough to see the disclaimer. If a

user can visit the product page, add the product to their cart, and pay for it without ever encountering the disclaimer, then it is plainly not "clear and conspicuous."

Joneca claims that Home Depot's website "precludes the main image displayed on product landing pages from containing text." Opp. at 17; Chavez Decl. ¶ 48. That appears to be yet another made-up policy for which Joneca provides no support. Joneca cannot substantiate such a claim because it is demonstrably false. Home Depot allows text to appear on the main image of its products, including garbage disposals. Attached as Exhibit C to the Melsheimer Reply Decl. are examples from Trifecte, which has the text "Quick and Efficient Garbage Disposals" on the main image, and Forno Acqua, which has the text "Built-in Motion Activated Cabinet Light" and "Pre-Wired Air Switch & Power Cord" on the main image. Melsheimer Decl. ¶ 4, Ex. C at 8–10. Indeed, even ISE includes text on the main image of its disposals, including text like "NOW WITH 5 YEAR LIMITED WARRANTY." *Id.* The Court should not credit Joneca's representations or Mr. Chavez's declaration about the policies of third-party retailers. Nor should the Court credit Joneca's representations about the technical feasibility of disclaimers. There is no reason why the disclaimer cannot appear at the top of the page. For example, a consumer purchasing pepper spray on Amazon from a State that bans pepper spray is met with a red text disclaimer at the top of the page next to the product title. Melsheimer Reply Decl. ¶ 5, Ex. D. ISE offered this example at the parties meet and confer, and Joneca offered no reason this could not be done for its garbage disposals.

The deficiencies are not limited to Home Depot, as Joneca implies, as Joneca buries the disclaimer on other retail websites in places where the consumer is unlikely to see it. Walmart's website does not include a clear and conspicuous disclaimer at the top of the webpage. The user has to scroll to see the "About this item" box, which now has a series of bullet points but does not include the disclaimer. Melsheimer Reply Decl. ¶ 3, Ex. B. Instead, the user must click "View full item details," which takes the user down to the "Product details." *Id.* The disclaimer does not appear in

the first paragraph, but instead appears in the first bullet point below the first paragraph. *Id.* Notably, if the user does not click that "View full item details," then the user must scroll to the "About this item" and click it to expand in order to encounter the disclaimer. *Id.* Additionally, a user visiting the Lowe's website likewise has to scroll before they encounter the disclaimer. Dkt. 139-20. The disclaimer should appear at the top of a retailer's product webpage next to or immediately below the product title.

Joneca has plainly not complied with the PI Order for the product websites that sell its disposals. It has not implemented the disclaimer in the first feasible location, but has instead buried them in places that consumers have to dig to find. The above examples show that Joneca's approach to compliance on product pages has been unreasonable. Moreover, Joneca's reference to the disclaimer in ISE's Builder series is irrelevant. ISE was not the party found to be falsely advertising its horsepower claims and is not under a Court order to display a clear and conspicuous disclaimer. Joneca's excuses and finger pointing are not substitutes for its obligations to comply with this Court's ruling.

### D.  <u>Online Search Results</u>

Joneca does not dispute that the disclaimer does not appear in search results on retail websites. *See* Opp. at 18–20. In doing so, it tries to assert that it is not feasible to do so. The Court should not credit Joneca's assertion that "most retailers, as a policy, do not permit text" on thumbnail images. Joneca provides no company policy to support that assertion, and its claim is plainly disproved by the other product images that display text. Melsheimer Reply Decl. ¶ 4, Ex. C at 8–10. Joneca can and should display the disclaimer in the thumbnail images. Similarly, the Court should not credit Joneca's representations on whether it is feasible to display the disclaimer in the text beneath the product images, as it offers no support for why it is not feasible. The search results on Walmart's website, for example, contains numerous text entries below the product image, including: the seller's name, product title, ratings out of

five stars, the price, promotions, installation information, product information like "grind storage" and "noise level," and pickup and delivery information. Melsheimer Decl. ¶ 3, Ex. B at 9. If the websites can fit all that information, surely the disclaimer can fit too. Joneca has not proven otherwise but instead claims that it would be impractical to include the disclaimer in search results.  Joneca should not be the arbiter on whether the disclaimer is "illegible" or makes sense "from a practical standpoint." Opp. at 19. This attitude of selective compliance is problematic—Joneca is required to comply with the PI Order regardless of its opinions on how to display the disclaimer.

Joneca is also wrong that it "repeatedly asked ISE to provide an example of a disclaimer proposal for search results and received no response." Opp. at 20. As Exhibit A to the Melsheimer Declaration—which is an email from counsel for ISE to Joneca recapping the parties' meet and confer—notes: "I gave a few examples of how disclaimers could appear in search results, whether in the thumbnail or in the text immediately below the product title." Dkt. 139-29 at 4. Those examples included having the disclaimer in the thumbnail image or in the text below the thumbnail where the promotional and informational text appears.

Faced with the reality that a disclaimer in search results is feasible, Joneca instead claims that placing the disclaimer in search results is not within the scope of the PI Order. This is a self-serving, unreasonable interpretation. As ISE explained, the Court need not identify every possible permutation in an injunction. Mot. at 12. It is Joneca that is violating the text and spirit of the PI Order by taking the position that if the order did not identify an activity, it must be outside the scope. Not so. The PI Order enjoins Joneca from making false and deceptive horsepower claims "in **any** new advertising, marketing, promotional, or other commercial materials . . . on **all online and offline promotional materials** produced, shipped, or disseminated on or after the date of this Order." PI Order at 18 (emphasis added). A search result that

touts a garbage disposal's horsepower is "advertising" for the product and falls squarely within the "online [] promotional materials" that this Court envisioned.

Joneca claims that search results are "no different from a customer who walks into a retail store and asks an employee where to find the garbage disposals, and is directed by the employee to the correct aisle." Opp. at 19. This is the wrong analogy. Joneca's scenario of asking the store employee "where are the garbage disposals?" is the equivalent of an online consumer typing "garbage disposal" in the search bar to be directed to the search results for disposals. The correct analogy is that the search results are virtual shelves akin to the physical shelves that display the disposals in-store. In both scenarios, different disposals appear side-by-side, classified by horsepower, with prices and promotional information listed with the disposals. (To take it one step further, visiting a product webpage is akin to a customer picking up a product package and reading the information on the different sides of the package). The PI Order explicitly applies to "in-store signage and displays." It must apply to the equivalent displays online. Finally, Joneca asserts that a reasonable consumer would know that the search results do not provide the full information about the product. Opp. at 19. First, that shows the importance of including the disclaimer in the first information they see about the product to give the consumer accurate information about what they are buying. Second, as explained above, search results include a host of information about the product: the seller's name, product title, ratings out of five stars, the price, promotions, installation information, product information like "grind storage" and "noise level," and pickup and delivery information. Joneca offers no credible reason why the disclaimer should not be included, too.

## III.    **CONCLUSION**

Joneca has not substantially complied with the Court's PI Order. It has not taken all reasonable steps to comply and has adopted interpretations as to what is required that are plainly unsupported. Joneca should be held accountable for its

noncompliance. For the foregoing reasons, the Court should grant ISE's motion to
enforce.


Dated: October 3, 2025

                                **By:** /s/       *Kalpana Srinivasan*
                                Kalpana Srinivasan (SBN 237460)
                                Michael Gervais (SBN 330731)
                                Anna Coll (SBN CA 337548)
                                SUSMAN GODFREY L.L.P.
                                1900 Avenue of the Stars, Suite 1400
                                Los Angeles, CA 90067-6029
                                Telephone: (310) 789-3100
                                Facsimile: (310) 789-3150
                                ksrinivasan@susmangodfrey.com
                                mgervais@susmangodfrey.com
                                acoll@susmangodfrey.com

                                Joseph Grinstein (pro hac vice)
                                SUSMAN GODFREY L.L.P.
                                1000 Louisiana St., Suite 5100
                                Houston, TX 77002-5096
                                Tel: (713) 651-9366
                                Fax: (713) 654-6666
                                jgrinstein @susmangodfrey.com

                                William J. Melsheimer (*pro hac vice*)
                                Stuart E. Pollack (*pro hac vice*)
                                SUSMAN GODFREY L.L.P.
                                One Manhattan West
                                New York, NY 1001
                                Tel: (212) 336-8330
                                Fax: (212) 336-8340
                                jmelsheimer@susmangodfrey.com
                                spollack@susmangodfrey.com

                                *Attorneys for Plaintiff and*
                                *Counter-Defendant Insinkerator LLC*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff InSinkErator LLC, certifies that this brief contains 4,952 words, which complies with the word limit of L.R. 11-6.1.


Dated: October 3, 2025                    */s/ Kalpana Srinivasan*
                                          Kalpana Srinivasan