**HOGAN LOVELLS US LLP**
TRENTON H. NORRIS (Bar No. 164781)
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
trent.norris@hoganlovells.com

MICHAEL L. TURRILL (Bar No. 185263)
JOSEPH R. O'CONNOR (Bar No. 274421)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:(310) 785-4600
Facsimile:(310) 785-4601
michael.turrill@hoganlovells.com
joe.oconnor@hoganlovells.com

REBECCA C. MANDEL (*pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
rebecca.mandel@hoganlovells.com

*Attorneys for Defendants and Counter-Claimant*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSINKERATOR LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>JONECA COMPANY LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation,<br><br>Defendants.<br><br>JONECA COMPANY LLC, a Delaware limited liability company,<br><br>Counter-Claimant,<br><br>vs.<br><br>INSINKERATOR LLC, a Delaware limited liability company,<br><br>Counter-Defendant. | Case No.: 8:24-cv-02600-JVS-ADS<br><br>Action Filed: November 27, 2024<br><br>**DEFENDANTS JONECA COMPANY, LLC AND THE JONECA CORPORATION REPLY IN SUPPORT OF MOTION TO INCREASE PRELIMINARY INJUNCTION BOND**<br><br>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL<br><br>Judge: Honorable James V. Selna<br><br>Date:  October 20, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 10C |

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................... 1

II. LEGAL STANDARD ............................................................................... 2

III. ARGUMENT ............................................................................................ 2

    A.    Joneca's Actually Incurred Compliance Costs of ▇▇▇▇▇ Constitute a Significant Change Warranting an Increased Bond. ........................ 3

    B.    Joneca's Compliance Costs Are Supported and Reasonable. .................. 6

    C.    The Current Bond Does Not Provide Adequate Security For Joneca. ................................................................................................... 8

    D.    Joneca's Motion Is Timely and Proper. .................................................. 11

IV. CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Cases** Page(s)

*AK Futures LLC v. LCF Labs Inc.*,
  2023 WL 2558534 (C.D. Cal. Jan. 3, 2023) ................................................. 6, 8, 10

*BNSF Ry. Co. v. Float Alaska IP, LLC*,
  2023 WL 6783506 (C.D. Cal. Aug. 28, 2023) ......................................................... 3

*Brookfield Commc'ns., Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................................... 10

*Coldwell Banker Real Est. LLC v. Smile Enters., Inc.*,
  2011 WL 13220121 (C.D. Cal. Mar. 11, 2011) ................................................. 2, 11

*Dass v. Tosco Corp.*,
  2006 WL 8563401 (C.D. Cal. Dec. 18, 2006), *aff'd*, 280 F. App'x 571 (9th Cir. 2008) ............................................................................................................. 9

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*,
  365 U.S. 642 (1961) ................................................................................................ 2

*Genesis 1 Oil Servs. LLC v. Wismann Grp. LLC*,
  2023 WL 9019019 (C.D. Cal. Nov. 2, 2023) ........................................................... 9

*Koch v. Hankins*,
  928 F.2d 1471 (9th Cir. 1991) ................................................................................. 2

*Lewis Galoob Toys v. Nintendo of Am., Inc.*,
  1991 WL 1164068 (N.D. Cal. Mar. 27, 1991) ............................................. 6, 7, 10

*Matek v. Murat*,
  862 F. 2d 720 (9th Cir. 1988) ................................................................................. 2

*Momento, Inc. v. Seccion Amarilla USA*,
  2009 WL 1974798 (N.D. Cal. July 8, 2009) ........................................................... 8

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
  16 F.3d 1032 (9th Cir. 1994) ................................................................................... 3

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*,
  2013 WL 12244286 (C.D. Cal. Feb. 19, 2013) ....................................................... 2

*Softketeers, Inc. v. Regal West Corp.*,
  No. 8:19-cv-00519-JVS, ECF No. 69 (C.D. Cal. May 15, 2019) ........................... 6

*Walczak v. EPL Prolong, Inc.*,
  198 F.3d 725 (9th Cir. 1999) ................................................................................. 10

**Other Authorities**

Federal Rule of Civil Procedure 65(c) ....................................................................... 8

## I. INTRODUCTION

Months ago, when the Court set the preliminary injunction bond at $500,000, it was only able to consider, and Defendants Joneca Company, LLC and The Joneca Corporation (together, "Joneca") were only able to proffer, an estimate of the "potential" costs and damages that Joneca might incur as a result of complying with the Court's Order Regarding Motion for Preliminary Injunction ("Order"). ECF No. 71 at 17. Since that time, contrary to the arguments of Plaintiff InSinkErator LLC ("ISE") in opposition, *see* Opposition to Motion to Increase Preliminary Injunction Bond ("Opp." or "Opposition"), ECF No. 157-2, the facts have in fact significantly changed. Joneca has now complied with the Order by effectuating the labeling of ▓▓▓▓▓▓▓ of packages, installing signage and displays with the required disclaimer in stores, and updating all websites where its products are sold to include at least one, if not multiple, clear and conspicuous disclaimers. Motion to Increase Preliminary Injunction Bond ("Mot." or "Motion"), ECF No. 143, at 3–5. As a result of these diligent efforts, Joneca incurred over ▓▓▓▓▓▓ in actual, provable expenses. *Id.* at 5. The fact that Joneca spent ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the current bond amount to comply with the Order is a new and significant development warranting an increase in the bond to provide adequate security for Joneca should it ultimately be found that Joneca was wrongfully enjoined.

ISE's arguments against a bond increase are unavailing. *First*, Joneca's actual costs of compliance can and do constitute a significant change in facts under the standard for modifying bond amounts. *Second*, these costs are fully supported by appropriate declaratory evidence and are entirely reasonable given Joneca's extensive efforts to diligently comply with the Order. *Third*, the current bond does not cover ▓▓▓▓ the costs that Joneca has already incurred—let alone other harms to Joneca's business it has and will continue to incur—undermining a fundamental purpose of the bond requirement. Finally, Joneca's Motion, filed only *after* Joneca incurred the costs warranting the increase to the bond amount, is timely and proper.

1  The Court should increase the bond amount to ████████ to account for the actual, provable compliance costs that Joneca has incurred to date.

## II. LEGAL STANDARD

A district court has the inherent authority to modify a preliminary injunction based on a change in facts. *See Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 365 U.S. 642, 647–48 (1961) (noting the district court has "wide discretion" to modify injunction based on changed circumstances or new facts).[1] This power includes the ability to change the amount of the bond that must be posted. *See Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244286, at *2 (C.D. Cal. Feb. 19, 2013).

The Ninth Circuit has held that "the limit of damages a party can obtain for wrongful injunction both against the surety and the plaintiff, is the amount of the bond." *Matek v. Murat*, 862 F. 2d 720, 733 (9th Cir. 1988), *disapproved on other grounds*, *Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991) (citing *Buddy Sys., Inc. v. Exer–Genie, Inc.*, 545 F.2d 1164, 1168 (9th Cir. 1976)). As such, "[w]hen setting the amount of security, district courts should err on the high side [because] [a]n error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Coldwell Banker Real Est. LLC v. Smile Enters., Inc.*, 2011 WL 13220121, at *3 (C.D. Cal. Mar. 11, 2011) (citation omitted)).

## III. ARGUMENT

The changed fact of Joneca's actually incurred costs to comply with the Order warrants an increase to the bond amount. Since the Court set the current bond, Joneca has spent over ████████ to comply with the Order. These costs are supported by detailed evidence and are entirely reasonable given the numerous changes Joneca had to make across multiple retailers and physical and online materials. In view of

---

[1] Despite its bluster, *see* Opp. at 5, ISE does not actually disagree with this standard, which Joneca set forth in its Motion, Mot. at 7–8.

Joneca's substantial expenditures, the current bond is wholly insufficient. Permitting ISE to post a bond of ███████ the sum total Joneca has spent on compliance risks denying Joneca an avenue to collect its incurred damages if Joneca is ultimately found to have been wrongfully enjoined. Finally, Joneca's Motion is timely and proper now that Joneca has incurred actual, provable costs to comply with the Order. The Court should grant Joneca's Motion and increase the bond amount to account for these changed facts.

### A. Joneca's Actually Incurred Compliance Costs of ███████ Constitute a Significant Change Warranting an Increased Bond.

ISE primarily objects to Joneca's Motion based on its unsubstantiated view that the actual costs of compliance cannot constitute a "significant change in facts or law." Opp. at 6. It then alternatively argues that Joneca's actual costs reveal that no significant change has occurred, misrepresenting Joneca's prior estimates to inaccurately suggest that compliance costs were materially less than previously anticipated. Neither argument is well-taken.

As an initial matter, the fact of actually incurred costs provides an appropriate basis to modify the bond amount. Joneca has spent more than ███████ to dutifully comply with the Order. Mot. at 5. At the time the Court set the preliminary injunction bond, these costs were only—and could only be—a reasonable estimate of "potential" costs based on the facts available at the time. Order at 17. However, new facts have since become available because Joneca has actually incurred definitive costs associated with its compliance that substantially exceed the amount of the bond. These new facts make it evident that the current bond significantly undervalues the true costs of compliance. *See, e.g.*, *BNSF Ry. Co. v. Float Alaska IP, LLC*, 2023 WL 6783506, at *11 n.10 (C.D. Cal. Aug. 28, 2023) (noting that an enjoined party may seek to modify a preliminary injunction bond "upon a showing of 'a significant change in facts or law' . . . including . . . increased rebranding costs") (internal citation omitted); *see also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,

16 F.3d 1032, 1036 (9th Cir. 1994) (holding that a wrongfully enjoined party is entitled to recover damages only "up to the amount of the bond"). ISE offers no authority for its proposition that the incurring of substantial actual costs, as opposed to mere cost estimates, does not constitute a change in facts.

ISE also misreads Joneca's prior submissions from January, in which Joneca estimated its anticipated compliance costs to the best of its abilities given constraints on time and available information. *See* ECF No. 65-1; ECF No. 69. Contrary to ISE's assessment that Joneca's prior estimates were "double what Joneca now claims it has now incurred," Opp. at 6, the total ballpark figure that Joneca previously submitted to the Court is remarkably close to the total amount Joneca has incurred to comply with the Order. Specifically, Joneca estimated that if the Court required a disclaimer sticker be affixed to all product packages, it would cost ▮▮▮ to comply. ECF No. 65-1 at 9. In this scenario, Joneca asked the Court to set the bond to ▮▮▮ in total to incorporate the costs of "switching back" to its then-existing horsepower labeling, given the significant likelihood that Joneca will be found to have been wrongfully enjoined at trial or on appeal. *Id.* at 7, 9. To date, Joneca has spent over ▮▮▮ to comply with the Order. Mot. at 5. Subtracting the "switch back" costs that Joneca previously submitted in its original estimate, but is not currently using as a basis for its bond increase request, the difference between Joneca's originally estimated costs of compliance and its actual costs of compliance is approximately ▮▮▮. Opp. at 6.

Indeed, Joneca's largest expense by far was hiring a third-party contractor to visit ▮▮▮ of brick-and-mortar retail stores to sticker nearly ▮▮▮ units already disseminated across all 50 States. Mot. at 3–4. Joneca originally estimated this effort would cost approximately ▮▮▮. ECF No. 65-1 at 9. Joneca ended up spending over ▮▮▮ for contractor services, plus ▮▮▮ more in printing and shipping the necessary materials. Mot. at 5. The anticipated cost of the

contractor thus is largely consistent with Joneca's actual expenditures.[2] Other modest differences in projected expenses are explained by the fact these were solely estimates, pulled together on a short timeframe with solid but imperfect information. Rather than illuminating any sort of "conflicting stance," Opp. at 11, Joneca's previous submissions demonstrate its estimated compliance costs were thoughtful and well-considered.

That being said, the estimates Joneca previously submitted were just that—*estimates*. The Court treated them as such in its Order when it recognized the "potential" harms Joneca faced in light of the preliminary injunction. Order at 17. Circumstances, however, have changed; these costs are no longer estimates; they are legitimately incurred expenses supported by evidence. Joneca does not merely *expect* to spend over ▮▮▮ to comply with the Order—it *actually* spent over ▮▮▮ to label ▮▮▮ of packages, apply the disclaimer to signage and displays in stores, and clearly and conspicuously implement the disclaimer on websites where its products are sold. Mot. at 5. ISE's recently-filed baseless Motion to Enforce Preliminary Injunction, *see* ECF No. 139 ("Motion to Enforce") now seeks to broaden the Order to require *additional* costly compliance efforts by Joneca, which would only exacerbate the inadequacy of the current bond.[3] The Court should

---

[2]   Likewise, the number of units that Joneca estimated it would need to relabel also closely approximate final counts, contrary to ISE's assertion. Based on its best forecasts of orders and sell-through rates, Joneca previously estimated it would need to label ▮▮▮ units; to date, Joneca has labeled over ▮▮▮ units with the required disclaimer. ECF No. 65-1 at 5; ECF No. 152-1 at 6.

[3]   Indeed, ISE's most recent submission reveals the extent of the onerous requirements and exorbitant costs ISE seeks to impose on Joneca without cause. Based on a handful of problematic package photos that ISE newly submits on Reply (which do nothing to address the discredited photos of its initial submission), ISE makes the outlandish demand that Joneca *return* to *thousands* of retail stores across the country that its contractor *already* visited (and documented) to "ensure" packages are stickered. *See* ISE's Reply In Support Of Motion To Enforce Preliminary Injunction, ECF No. 163-1, at 8. ISE breezily claims, with no support, that Joneca (a 29-person company located in California) or its contractor (retained at the expense of ▮▮▮) can "easily return to the stores periodically to check if the product packages are stickered" *Id.* ISE thus opposes any obligation even to post a bond for the substantial outlays Joneca has already made, all the while seeking to exponentially increase Joneca's burden and costs. Should ISE be granted any relief

modify the bond in light of new facts to account for the actual costs Joneca has already incurred as a result of complying with the Order.

### B. Joneca's Compliance Costs Are Supported and Reasonable.

Despite ISE's aspersions, Joneca's compliance costs are both supported and reasonable. The costs are explained in detail in the Declaration of Jonathan Chavez in Support of Joneca's Motion to Increase the Preliminary Injunction Bond, ECF No. 145-2. Mr. Chavez's declaration describes Joneca's comprehensive compliance efforts and corresponding costs with respect to product packaging, in-store signage and displays, and website updates. *See id.* at 2–5. These efforts are supported in further detail by Joneca's Opposition to ISE's Motion to Enforce, ECF No. 152-1, which included an additional declaration and supporting exhibits from Mr. Chavez, ECF No. 152-2. The thorough descriptions of these costly, labor-intensive efforts refute ISE's accusation that Joneca's compliance costs are "excessive" or "unreasonable." Opp. at 10; *see also* ECF No. 145-1 at 2–5; ECF No. 152-1 at 5–7. Mr. Chavez's declaration provides a reasonably certain basis from which Joneca's requested increase to the bond amount can be determined. *See AK Futures LLC v. LCF Labs Inc.*, 2023 WL 2558534, at *2 (C.D. Cal. Jan. 3, 2023) ("Courts have wide discretion to increase the bond amount, so long as it is based on a 'reasonable estimation' of the enjoined party's 'potential damages resulting from the injunction.'") (quoting *Dass v. Tosco Corp.*, 136 F. App'x 21, 24 (9th Cir. 2005)).

Moreover, courts regularly rely on declaratory evidence to decide bond motions. *See, e.g.*, *Lewis Galoob Toys v. Nintendo of Am., Inc.*, 1991 WL 1164068, at *2-4 (N.D. Cal. Mar. 27, 1991) (increasing a bond from $1.6 million to $15 million based on declarations supporting lost sales and market share); *Softketeers, Inc. v. Regal West Corp.*, No. 8:19-cv-00519-JVS, ECF No. 69, at 2 (C.D. Cal. May 15,

---

on its unreasonable Motion to Enforce—which it should not be—a separate and corresponding additional substantial increase to the bond amount to provide adequate security for Joneca would be necessary.

1  2019) (increasing bond from $10,000 to $75,000 based on declaration supporting
2  projected losses and costs). Indeed, the evidence Joneca provided in support of its
3  Motion is far more detailed than the evidence ISE proffered to obtain the underlying
4  injunction itself. ISE's Motion for Preliminary Injunction proffered numerous vague
5  claims by way of declarations that did not include the underlying materials. *See, e.g.,*
6  ECF No. 22 at 12 (citing Declaration of Rebecca Marie Eubanks, ECF No. 23,
7  ("Eubanks Decl.") ¶¶ 19, 23 for the claim that "recent market research showed
8  consumers ranked horsepower as one of the top purchasing considerations for
9  disposals," without supporting that statement with the actual market research); *id.* at
10 17–18 (citing Eubanks Decl. ¶¶ 36, 44, 51 for the allegation that ISE risked losing
11 retailer relationships, including "a major private label retailer contract," without
12 identifying any specific retailer). The Court relied on these statements in its Order.
13 *See* Order at 10, 14. It cannot be the case that purely declaratory evidence is
14 appropriate for a finding on an underlying injunction, but not on a bond modification
15 request. Indeed, where, as here, a party "obtained its preliminary injunction under
16 the standard of 'likely success on the merits[,] [then] [c]ertainly no higher standard
17 should be assigned the enjoined party seeking a reasonable ceiling on its potential
18 remedy." *Lewis Galoob Toys*, 1991 WL 1164068, at *2. Joneca's ███████ in
19 compliance costs is adequately supported by Mr. Chavez's detailed declaration in
20 support of this Motion and further bolstered by Joneca's Opposition to ISE's Motion
21 to Enforce and Mr. Chavez's additional supporting declaration.

22  ISE's speculative nitpicking of Joneca's costs also does not provide a basis to
23 deny Joneca relief on the bond. For instance, ISE criticizes as "excessive" the ███
24 ███ that Joneca spent updating all websites on which its products are sold. Opp. at
25 10. Hardly so. As a practical matter, each customer's website is designed differently,
26 meaning Joneca could not apply a one-size-fits-all method to implementing the 98-
27 character disclaimer on every website. ECF No. 152-2 ¶ 38. Instead, Joneca was
28 required to spend numerous hours understanding the limitations of each website's

1  specific restrictions on structure, format, and content in order to implement the
2  disclaimer in a feasible, clear and conspicuous location. *See id.* ¶¶ 37–38. In total,
3  Joneca coordinated with a ▮▮▮▮▮▮▮ to update over ▮ individual
4  webpages in the manner best suited to each customer. *Id.* ¶ 37. Similarly, ISE's
5  accusation the costs Joneca incurred to coordinate and manage relabeling efforts with
6  its customers were "excessive" also has no basis in fact. Opp. at 11. Joneca's diligent
7  efforts to comply with the Order have required an enormous investment in labor from
8  this small, family-run business, including but not limited significant time
9  collaborating with customers to redesign and requalify product packages, managing
10 contractor, factory, and warehouse logistics and operations to relabel ▮▮▮▮
11 ▮▮▮▮ of packages, and overseeing injunction compliance. ECF No. 145-2 ¶ 6.

12     Moreover, ISE's throwaway complaint that Joneca's costs are unreasonable
13 because of Joneca's "lack of compliance" with the injunction is absurd. Joneca has
14 separately detailed its extensive compliance efforts and documented the evidence of
15 its package stickering, sign, and website updates in its Opposition to the Motion to
16 Enforce. *See* ECF No. 155. Joneca's ▮▮▮▮▮ in incurred compliance costs are
17 supported, reasonable, and warrant an increase to the current bond amount.

18         **C. The Current Bond Does Not Provide Adequate Security For**
19             **Joneca.**

20     Federal Rule of Civil Procedure 65(c) permits a court to require the party
21 seeking a preliminary injunction to make funds available as a security "in an amount
22 that the court considers proper to pay the costs and damages sustained by any party
23 found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The
24 purpose of the bond requirement is to ensure that there is sufficient security set aside
25 to pay the costs and damages sustained by the wrongfully enjoined party." *AK*
26 *Futures*, 2023 WL 2558534, at *4; *see also Momento, Inc. v. Seccion Amarilla USA*,
27 2009 WL 1974798, at *5 (N.D. Cal. July 8, 2009) (finding that the bond serves to
28 "assure[] the enjoined party that it may readily collect damages from the funds posted

or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured"). The current $500,000 bond falls far short of covering the costs already sustained by Joneca to comply with the Order, let alone the other harms to its business that Joneca has and will continue to suffer so long as the Order remains in effect and for which Joneca is not currently seeking a bond increase. As such, the bond is wholly inadequate under Rule 65(c).

The current bond does not cover ▬▬▬ the costs that Joneca has already incurred to comply with the preliminary injunction. Allowing ISE to post a bond of ▬▬▬▬ the sum total Joneca has already spent on compliance would flout the most basic purpose of the bond requirement and risk denying Joneca an avenue to collect its due damages if Joneca is ultimately found to have been wrongfully enjoined.[4] *See, e.g.*, *Genesis 1 Oil Servs. LLC v. Wismann Grp. LLC*, 2023 WL 9019019, at *2 (C.D. Cal. Nov. 2, 2023) (finding that despite evidence reasonably showing the injunction caused the wrongfully enjoined party to suffer over $3,000,000 in damages, enjoined party was only entitled to recover to existing bond amount of $200,000); *Dass v. Tosco Corp.*, 2006 WL 8563401, at *2 (C.D. Cal. Dec. 18, 2006), *aff'd*, 280 F. App'x 571 (9th Cir. 2008) (finding that wrongfully enjoined party could only recover up to the amount of the bond, despite being able to "establish[] with reasonable certainty that it suffered damages greatly in excess of the bond amount"). In fact, ISE acknowledges that the amount of the bond is the "limit of the damages the defendant can obtain for a wrongful injunction, provided the plaintiff was acting in good faith." Opp. at 8 (citing *AK Futures*, 2023 WL 2558534, at *2). In other words, the bond is likely the *maximum* amount that Joneca

---

[4] The Court has already recognized that a bond is proper in this case. Order at 17. Joneca continues to vigorously dispute ISE's likelihood of success on the merits. Given the significant likelihood that Joneca will be found to have been wrongfully enjoined, either at trial or on appeal, decision of which is pending before the U.S. Court of Appeals for the Ninth Circuit following oral argument on August 22, 2025, it is critical the bond amount at least account for the costs Joneca has *already incurred* to comply with the Order.

can recover from ISE if the preliminary injunction is reversed on appeal or at trial. *See Lewis Galoob Toys*, 1991 WL 1164068, at *2 (noting that the bond sets the "ceiling on damages" for the enjoined party).

Contrary to ISE's characterization, Joneca asks only for a modest, conservative increase to the bond sufficient to cover the costs it has already incurred to comply with the Order. Joneca's requested increase from $500,000 to ▇▇▇▇▇ is hardly a "dramatic[]" increase. Opp. at 4. The cases that ISE cites in its Opposition confirm as much. *See id.* at 4–5 (citing *Brookfield Commc'ns., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1044 (9th Cir. 1999) (denying request to increase bond 16-fold, from $25,000 to $400,000); *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733–34 (9th Cir. 1999) (denying request to increase bond 20-fold, from $100,000 to $2 million). Indeed, in *AK Futures*, a case ISE analogizes to at length, Opp. at 11-12, this Court denied the defendant's request to increase the bond amount by **515 times** the original bond amount. *See* 2023 WL 2558534, at *4. That case is further distinguishable because the defendant in *AK Futures* only supported this genuinely "dramatic" increase with the same "questionable" estimates it had previously submitted. *Id.* at *3. Here, Joneca has submitted evidence based on new concrete facts showing the actual, provable costs it has incurred as a direct result of complying with the Order, which are remarkably close to the costs it projected were likely at the time of the initial briefing on the preliminary injunction motion.

Joneca's request for an increase of $800,000 to account for its already-incurred compliance costs is also not "unfair" to ISE. Opp. at 4. ISE will not be prejudiced by this modest increase, particularly given that the amount is consistent with Joneca's prior estimates. *See Lewis Galoob Toys*, 1991 WL 1164068, at *4 (finding the non-enjoined party will not be prejudiced by an increase in the bond amount because "it would cost [the company] nothing if it wins" and it would not be required to pay "any portion of the posted bond unless the injunction is lifted" and the enjoined party "can prove actual damages"). Nor can ISE credibly claim any reliance interest in the

current bond amount. The Order in no way guaranteed ISE would only be subject to a maximum bond of $500,000. *See* Order at 16–17. Indeed, ISE concedes that a change in circumstances can warrant a modification to an injunction. *See* Opp. at 4. Furthermore, ISE has long been on notice that Joneca might seek to increase the bond if circumstances warranted. *See* ECF No. 69 at 7, 11 n.5 (reserving the right to petition the Court for an increase in bond if circumstances warrant). Any notion that ISE "accepted the injunction," Opp. at 9, on the condition of a specific bond amount is farcical. Rather, ISE assumed the risk the Court could issue a bond of any amount when it decided to move for a preliminary injunction.

Fundamentally, the current bond is inadequate to ensure ISE will properly "bear the cost of the error" if Joneca is found to have been wrongfully enjoined. *Coldwell Banker*, 2011 WL 13220121, at \*3. At present, ISE would bear ▇▇▇ the cost of the error—even as it seeks to impose additional costs on Joneca through its unfounded Motion to Enforce. Such an outcome would plainly contravene the purpose of the bond requirement in Rule 65(c), which is intended to be sufficient to "pay the costs and damages sustained by any party found to have been wrongly enjoined or retrained," not a symbolic fraction of them. Fed. R. Civ. P. 65(c). For these reasons, the Court should increase the current bond amount to adequately protect Joneca's provable, incurred costs.

### D. Joneca's Motion Is Timely and Proper.

In a last-ditch effort to defeat Joneca's moderate bond increase request, ISE contends that Joneca should have immediately appealed the bond amount or filed a motion for reconsideration before this Court. Opp. at 12–13. Not so. This Motion is the proper and timely vehicle for seeking an increase to the bond amount.

At the time the Court set the bond amount and when Joneca noticed its appeal, Joneca had not yet incurred the costs for which it now seeks an increase of the bond amount. After all, the Court based the bond amount on the only evidence then available: Joneca's reasonable estimates of likely compliance costs. A motion for

reconsideration immediately following the Order would have been a waste of judicial resources because Joneca did not have any evidence different from what the Court already considered in setting the current bond. However, the facts and circumstances have now changed. Having incurred actual, demonstrable costs of ████████ the bond amount to comply with the Order, this is the appropriate time to ask the Court to increase the bond to protect Joneca to at least the extent of its actually-incurred costs.

## IV.   CONCLUSION

The current preliminary injunction bond of $500,000 significantly undervalues the costs and damages that Joneca has suffered, and will continue to suffer, should it be later determined that it was wrongfully enjoined. Joneca respectfully requests that the Court increase the bond amount to ████████ to account for the actual, provable costs Joneca has incurred to date as a result of the Order.

Dated: October 6, 2025                HOGAN LOVELLS US LLP

*/s/ Trenton H. Norris*
Trenton H. Norris

*Attorneys for Defendants and Counter-Claimant*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Joneca Company, LLC and The Joneca Corporation certifies that this brief contains 4,191 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 6, 2025

*/s/ Trenton H. Norris*
Trenton H. Norris