# Exhibit 1

**HOGAN LOVELLS US LLP**
TRENTON H. NORRIS (Bar No. 164781)
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
trent.norris@hoganlovells.com

MICHAEL L. TURRILL (Bar No. 185263)
JOSEPH R. O'CONNOR (Bar No. 274421)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:(310) 785-4600
Facsimile:(310) 785-4601
michael.turrill@hoganlovells.com
joe.oconnor@hoganlovells.com

REBECCA C. MANDEL (*pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
rebecca.mandel@hoganlovells.com

*Attorneys for Defendants and Counter-Claimant*
JONECA COMPANY, LLC and
THE JONECA CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSINKERATOR LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>JONECA COMPANY LLC, a Delaware limited liability company, and THE JONECA CORPORATION, a California corporation,<br><br>Defendants.<br><br>JONECA COMPANY LLC, a Delaware limited liability company,<br><br>Counter-Claimant,<br><br>vs.<br><br>INSINKERATOR LLC, a Delaware limited liability company,<br><br>Counter-Defendant. | Case No.: 8:24-cv-02600-JVS-ADS<br><br>Action Filed: November 27, 2024<br><br>**DEFENDANTS' SURREPLY TO PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL<br><br>Judge: Honorable James V. Selna<br><br>Date:  October 20, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 10C |

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SURREPLY TO PL.'S REPLY IN SUPPORT OF MOT. TO ENFORCE
Case No.: 8:24-cv-02600-JVS-ADS

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     ARGUMENT ........................................................................................... 1

    A.    ISE Did Nothing To Rehabilitate Its Deficient Packaging Evidence From Its Prior Submission ...................................... 2

    B.    ISE's New Packaging Evidence Is Inadequate To Meet Its Burden .................................................................................. 3

    C.    ISE's New Price Placard Evidence Is Nothing More Than The Same Placard Photographed Across Different Stores ........................... 6

    D.    The New Examples ISE Purports To Identify Of Webpages Without Disclaimers Are Unauthorized Listings Of Joneca-Made Disposers .................................................................. 6

    E.    Joneca's Statements Regarding Retailers' Website Policies Are Based on Retailers' Requirements ................................ 7

    F.    ISE's Supposed "Example" Of Implementing The Disclaimer In Search Results Pages Is Neither Substantiated Nor Workable .............. 9

III.    CONCLUSION ...................................................................................... 10

CERTIFICATE OF COMPLIANCE ................................................................ 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*FTC v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999) ................................................................. 1

*Giles v. Sardie*,
   191 F. Supp. 2d 1117 (C.D. Cal. 2000) .................................................. 1

**Other Authorities**

Fed. R. Evid. §§ 602, 802 ........................................................................... 4

## I.    INTRODUCTION

After failing to support its overreaching Motion to Enforce Preliminary Injunction ("Motion), ECF No. 139, with convincing evidence, Plaintiff InSinkErator LLC ("ISE") submits 17 new exhibits and five additional declarations with its Reply In Support of Motion to Enforce Preliminary Injunction, ECF No. 161 ("Reply") that are similarly lacking.  Not only does ISE offer no reason why it could not have provided these exhibits when it filed its original Motion, but, for the reasons explained below, this untimely evidence is wholly insufficient to meet ISE's burden of proving by "clear and convincing" evidence any alleged violations of the Court's Order Regarding Motion for Preliminary Injunction ("Order"), ECF No. 71.  *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted).  The Court should deny ISE's Motion.

## II.    ARGUMENT

As a threshold matter, the Court should not even consider the "evidence" newly submitted on Reply, including photos from store visits and screenshots of third-party websites.  *See, e.g.*, *Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

In any event, ISE's new and improper evidence fails to rescue its Motion for at least the following reasons.  *First*, ISE's new packaging evidence does nothing to rehabilitate the deficient evidence it originally used to support its Motion.  *Second*, ISE's new packaging evidence, like its packaging evidence before, is inadequate to meet its burden by clear and convincing evidence, let alone to show that Joneca did not substantially comply with the Order's requirement to sticker packaging.  *Third*, ISE's new price placard evidence is nothing more than the same placard photographed across different stores as to which the Order does not apply.  *Fourth*, ISE's supposed new examples of online product pages without the disclaimer are merely unauthorized listings by unverified resellers.  *Fifth*, Joneca's statements

DEFS.' SURREPLY TO PL.'S REPLY IN SUPPORT OF MOT. TO ENFORCE
Case No.: 8:24-cv-02600-JVS-ADS

regarding retailers' website policies are based on the retailers' own guidance. *Finally*, ISE's supposed "evidence" of implementing a disclaimer in search results pages is neither substantiated nor workable.

### A. ISE Did Nothing To Rehabilitate Its Deficient Packaging Evidence From Its Prior Submission.

ISE offered *zero* valid evidence in support of its opening Motion.  Among other failures, ISE's previously submitted evidence was inadequate for Joneca to evaluate, as ISE failed to show all sides of the purportedly unstickered packages.  *See* Opposition to Motion to Enforce Preliminary Injunction ("Opp."), ECF No. 155, at 9.  The notion that ISE's photos were sufficient because they captured "the front of the product packages as they would appear to a consumer walking the aisles of the store," Reply at 7, is not credible.  Indeed, packages frequently get turned around on shelves by customers and store employees, and ISE's investigators may well have gotten confused about whether they were looking at the front or back of the package. Declaration of Jonathan Chavez In Support of Surreply to Motion to Enforce ("Chavez Decl.") ¶ 2.  Without looking at all four panels, there is no way to ensure *any* of the packages ISE identified in its Motion lacked the disclaimer.  *Id.*

Joneca rebutted ISE's original packaging evidence at length and in detail, annotating ISE's photos to show packages properly bearing disclaimers, clearly facing the wrong direction, and reflecting significant damage, among other issues. *See* Declaration of Jonathan Chavez In Support of Opposition to Motion to Enforce Preliminary Injunction ("Chavez Opp. Decl."), ECF No. 155-1, ¶¶ 15–25.  ISE simply glosses over these deficiencies in its Reply.  *See generally* Reply.  It does not, for example, offer declarations from the investigators who conducted the store visits submitted with ISE's original Motion indicating that they reviewed all sides of packaging.  Instead, ISE attempts to shift the burden, claiming that Joneca is asking the Court to "assume that the stickers must be on one of the other three sides of the product package," Reply at 7, when in fact it is ISE that is asking the Court to assume

that the stickers are *not*.  ISE likewise had no response to Joneca's significant evidence from numerous store visits showing the vast majority of packages are, in fact, labeled.  *See generally id.*; *see also* Chavez Opp. Decl. ¶¶ 8–14; Declaration of Justine Chang In Support of Opposition to Motion to Enforce Preliminary Injunction ("Chang Opp. Decl."), ECF No. 150-3, ¶¶ 3-8; Declaration of Angie McGinnis In Support of Opposition to Motion to Enforce Preliminary Injunction ("McGinnis Opp. Decl."), ECF No. 150-4, ¶¶ 3-8; Declaration of Rebecca C. Mandel In Support of Opposition to Motion to Enforce Preliminary Injunction ("Mandel Opp. Decl."), ECF No. 150-1, ¶¶ 12-14.

## B. ISE's New Packaging Evidence Is Inadequate To Meet Its Burden.

Recognizing these fatal flaws in its Motion, ISE submits an entirely new batch of store visits in support of its Reply.   This new evidence is not only untimely, it is also completely inadequate to meet ISE's burden.  Rather than show a "systemic problem with Joneca's compliance," Reply at 4, at most, ISE has demonstrated a handful of unstickered packages.  ISE submits photos of only six packages from all four sides with its Reply.  *See* Ex. A to Declaration of Adeline C. Schmidt ("Schmidt Decl."), ECF No. 161-2, at 6-9 (showing four panels of one ½ HP disposer and three panels of one 1 HP disposer (with the front panel omitted entirely and back panel photographed twice)); Ex. B to Schmidt Decl., ECF No. 161-3 (showing four panels of one  ½ HP disposer and three panels (not including the front panel) of one 1 HP disposer); Ex. C to Schmidt Decl., ECF No. 161-4 at 1-4 (appearing to show four panels of two disposers); Ex. A to Declaration of Rodney Polanco ("Polanco Decl."), ECF No. 161-16, at 8-11 (appearing to show four panels of one disposer); Ex. A to Declaration of Joseph Grinstein ("Grinstein Decl."), ECF No. 161-22, at 4 (appearing to show four panels of one disposer).  ISE's declarants do not attest to checking packages on all sides for the disclaimer despite Joneca prominently raising this issue in its Opposition, nor do they consistently photograph all four sides of disposer packages, apparently cherry-picking the disposers for which to show all four sides.

*See generally* Schmidt Decl.; Declaration of William J. Melsheimer ("Melsheimer Decl."), ECF No. 161-10; Polanco Decl.; Declaration of Joanna Stanley, ECF No. 161-17; Grinstein Decl.

As before, ISE also omits any context for any of its store visits, including, importantly, how many total units, labeled and unlabeled, were in stores. Consider just one example: ISE claims that an "ESS employee" visited The Home Depot Store #615 in Orange, California on September 26, 2025 and "identified Joneca garbage disposals" without the disclaimer.[1] Schmidt Decl. ¶ 5. As evidence, ISE submits photos of two ½ HP Glacier Bay disposers. *See* Ex. C to Schmidt Decl. The packages are shown in isolation, as if they are the only two in the store. *Id.* Joneca also visited this *exact same store* two weeks before ISE, on September 7, 2025. *See* Chavez Opp. Decl. ¶ 9; Ex. 1 to Chavez Opp. Decl. At that time, there were *23* Glacier Bay waste disposer units on shelves, of which 21 packages were labeled and 2 ½ horsepower packages (apparently the same ones that ISE found a short time later) were unlabeled.[2] Photos from Joneca's visit are shown below. *See also* Ex. 1 to Chavez Opp. Decl.

 

---

[1]   Joneca objects to Paragraphs 3, 4, 5, and 7 of the Declaration of Adeline C. Schmidt on the grounds that these statements lack foundation and constitute hearsay. Fed. R. Evid. §§ 602, 802. These paragraphs vaguely describe store visits and purport to verify photos taken neither by Ms. Schmidt, nor even another ISE employee, but rather by third parties at "ESS." Schmidt Decl. ¶ 2. The photos are not business records of ISE and there is no hearsay exception that applies to render the materials admissible.

[2]   Although Mr. Chavez brought the two unlabeled units to The Home Depot's customer service desk to be processed for return to vendor, it appears these units were placed back on store shelves. Chavez Decl. ¶ 3. Joneca will follow-up with this store again. *Id.*

This context clearly demonstrates Joneca's efforts at labeling and that the two disposers found unlabeled are, in fact, outliers that escaped Joneca's labeling efforts for one of the valid explanations that Joneca has offered.[3]

ISE also submits numerous exhibits regarding store visits where it complains about (and provides photographs of) price placards, but *not* packaging – suggesting that ISE encountered full-stickered inventory at those stores (or else it would have claimed that it found deficient packaging). *See* Ex. A to Stanley Decl. (Spring, Texas); Ex. C to Stanley Decl. (Tomball, Texas); Ex. A to Schmidt Decl. at 11-13 (Carlisle, Pennsylvania); Ex. D to Schmidt Decl. (Nashville, Tennessee); Ex. E to Schmidt Decl. (Shorewood, Illinois); Ex. F to Schmidt Decl. (Victor, New York); Ex. G to Schmidt Decl. (Mukwonago, Wisconsin); Ex. H to Schmidt Decl. at 1-3 (Bellevue, Wisconsin), 4-6 (Bellevue, Wisconsin); Ex. A to Melsheimer Decl. at 2-4 (Dallas, Texas); Ex. A to Melsheimer Decl. 4-7 (Dallas, Texas). By presenting a few packages in isolation and refusing to disclose the total number of packages on shelves, and by stuffing its Reply with photos of *price placards* (addressed *infra*) rather than *packages* to give the illusion of additional "evidence," ISE seeks to hide what is obvious: the overwhelming majority of Joneca's packages on shelves are labeled with the disclaimer.

Fundamentally, evidence of half-a-dozen unstickered packages compared to the evidence of ██████ (and counting) packages that Joneca has relabeled is wholly inadequate to support ISE's Motion, let alone its draconian request that Joneca or its contractor "return" to thousands of retail stores for a *second* time to "ensure" packages are stickered. Reply at 8; *see* Opp. at 6. And contrary to ISE's unfounded belief, neither Joneca (a 29-person company based in California) nor its contractor

---

[3]    As explained in detail in Joneca's Opposition, any *de minimis* amount of packages that slipped through the cracks despite Joneca's extensive efforts is likely for one of the following reasons for which Joneca cannot reasonably correct: older (non-stickered) inventory was returned by a customer, inventory was delayed in transit and escaped the stickering effort, or inventory was not made available to Joneca's contractor for some other reason.

1    (retained at the expense of over ███████) can "easily return to the stores periodically

2    to check if the product packages are stickered."  Reply at 8.  Such an onerous and

3    exorbitantly costly effort would be wholly unwarranted considering ISE's meager

4    evidentiary showing and Joneca's extensive evidence of compliance.

5    **C. ISE's New Price Placard Evidence Is Nothing More Than The Same**

6    **Placard Photographed Across Different Stores.**

7    After filing its deficient Motion, ISE went out to at least 18 stores searching

8    for legitimate examples of unstickered packages.  *See* Exs. A-H to Schmidt Decl.;

9    Ex. A to Melsheimer Decl.; Ex. A to Polanco Decl.; Ex. A to Grinstein Decl.; Ex. A-

10   C to Stanley Decl.  Unable to come up with more than a handful of examples of

11   packages lacking stickers, ISE now submits photos of the same price placard over

12   and over again, claiming noncompliance.  *See, e.g.*, Exs. D, E, F, G, H to Schmidt

13   Decl.; Ex. A to Melsheimer Decl.; Ex. A to Stanley Decl.  However, Joneca does not

14   dispute that the price placards at Home Depot are not stickered—Joneca contests that

15   these materials should be stickered at all.  For the reasons explained in Joneca's

16   Opposition, the Order does not require that price placards, like those depicted, be

17   stickered.  *See* Opp. at 13-15.[4]

18   **D. The New Examples ISE Purports To Identify Of Webpages Without**

19   **Disclaimers Are Unauthorized Listings Of Joneca-Made Disposers.**

20   ISE purports to identify two examples of Joneca-made disposers listed for sale

21   on Walmart's website that do not include the disclaimer.  *See* Reply at 12-13; *see*

22   *also* Melsheimer Decl. ¶ 3.  These websites do not reflect Joneca's sales of its

23   disposers through Walmart.  Rather, both examples are from unauthorized sellers that

24   list Joneca's *Costco*-exclusive private label disposers for resale on *Walmart's*

25   website.  Chavez Decl. ¶ 4.  Indeed, one webpage clearly indicates the disposer as

26

27   _____

[4]    Oddly, ISE appears to complain that some price placards at Lowe's are in fact
stickered. *See* Reply at 11; *see also* Ex. B to Stanley Decl. at 2.  That some stickers
were applied to *over*-sticker beyond the requirements of the Order does not constitute
28   "selective compliance," *id.* at 12, or change Joneca's reasonable interpretation of the
Order.

"Sold by CHEAPEES." *See* Ex. B to Melsheimer Decl. at 5. As to the other, since the Reply was filed, the listing has toggled from "Out of Stock," to "Not Available" to "Sold by FSR Discounts," and back to "Not Available." *See* Chavez Decl. ¶ 4. These are not sales by Joneca customers and Joneca was not aware of these listings prior to ISE's complaint in its Reply. Promptly after receiving ISE's Reply, Joneca contacted the resellers and demanded they remove the unauthorized listings, per Walmart's policy, and also reported both sellers to Walmart. *Id.* Nonetheless, Joneca cannot be expected to police, nor be held accountable for, all instances where an unauthorized seller (or reseller) on a third-party website fails to include the disclaimer. ISE has provided no evidence that any webpage over which Joneca exerts any degree of control lacks a clear and conspicuous disclaimer.[5]

### E. Joneca's Statements Regarding Retailers' Website Policies Are Based on Retailers' Requirements.

In an effort to support its unreasonable view of how disclaimers should be presented on retailer websites, ISE resorts to accusing Joneca of "ma[king] up" a "demonstrably false" restriction by retailers from including text on the main image of the product. Reply at 14. ISE's unfounded and baseless allegation is wrong. Written guidance from The Home Depot, Amazon, and Lowe's plainly states that main product images may not permit text. *See* Ex. B to Chavez Decl. at 7 (Home Depot policy stating, "Main product images should only feature the product ….

---

[5] During meet-and-confer efforts, Joneca's counsel repeatedly asked ISE's counsel for any example of a website wholly lacking the disclaimer. *See, e.g.*, Ex. C to Declaration of William J. Melsheimer In Support Of Motion to Enforce Preliminary Injunction, ECF No. 139-31 at 4 ("If there is a specific website you have identified that lacks a disclaimer, we would gladly investigate."). ISE provided none during the meet-and-confer process, or even in its opening Motion. ISE's failure to previously raise the examples now cited in its Reply is not just indicative of its failure to meet and confer in good faith, *see* Opp. at 3-4, it is indicative of the frivolity of ISE's entire Motion. Had ISE properly raised these particular websites during either one of the parties' two meet-and-confers or in any of its communications, Joneca would have identified that these webpages are unauthorized listings in a meet-and-confer setting (complete with taking appropriate action to have them removed) rather than explaining this fact in an unnecessary motions briefing.

7

1  Iconography, text, water marks or logos are not allowed within the primary image");

2  Ex. C to Chavez Decl. at 2 (Amazon policy stating that main product images should

3  contain "[n]o text, logos, borders, color blocks, watermarks, or other graphics

4  covering the product or in the product background"); Ex. D to Chavez Decl. at 1

5  (Lowe's policy stating that product images must "[s]howcase the product only (no

6  text, logos, or promotional graphics outside of the 'Dimensions 18' slot")). The fact

7  that ISE dug up examples – newly on Reply and never in a meet-and-confer context,

8  despite Joneca's numerous requests – of ISE and other companies displaying text on

9  their main product images means nothing. *See* Ex. C to Melsheimer Decl. at 8-10.

10  Joneca has no information about why or how these images exist or whether these

11  images were or were not authorized by Home Depot, and ISE offers none. Chavez

12  Decl. ¶ 10.

13      Similarly irrelevant is ISE's example of an Amazon product webpage for

14  "Sabre Advanced Pepper Spray." *See* Reply at 14; Melsheimer Decl. ¶ 5. ISE points

15  to a red-text notice at the top of the webpage informing consumers that Amazon

16  cannot ship pepper spray to their desired address "due to local laws or Amazon

17  policy" to argue that Joneca can unilaterally implement the Court's disclaimer in the

18  exact same fashion. *See* Ex. D to Melsheimer Decl. ISE's pepper spray "example"

19  is pure conjecture, not credible argument. ISE provides no evidence showing it is

20  technically feasible for Joneca to implement its required disclaimer in this location

21  on Amazon's website, let alone a single example of a product webpage that has a

22  *product-specific disclaimer* displayed in this manner on Amazon or any other

23  retailers' website. *See generally* Reply. This is unsurprising because, as Joneca has

24  explained in detail, it is not possible for Joneca to reengineer Amazon's website to

25  include whatever disclaimer ISE desires. *See* Ex. 29, 31, 33, 35, 37 to Chavez Opp.

26  Decl; *see also* Chavez Decl. ¶ 11. ISE's random selection of third-party materials

27  from vastly different contexts provides no legitimate evidence about the

28  technological feasibility of adding Joneca's disclaimers wherever ISE wishes.

1      Joneca worked directly with its retailers through their respective approval
2  processes to make changes to product webpages in accordance with the retailers'
3  respective policies.  Chavez Decl. ¶ 5.  Joneca's approach to implementing the
4  disclaimer at the first feasible mention of horsepower appropriately accounted for
5  these retailers' verifiable restrictions on format, structure, and content.  *See* Opp. at
6  15-18; *see also* Exs. 28-37 to Chavez Opp. Decl. (specifically delineating the
7  available fields on each retailer's website and the limitations associated with each
8  field as established by the retailer).

9        **F. ISE's Supposed "Example" Of Implementing The Disclaimer In**
10       **Search Results Pages Is Neither Substantiated Nor Workable.**

11     As Joneca set forth in its Opposition, the Order does not require search results
12 to display the disclaimer.  *See* Opp. at 18-20.  Nor should it.  Search results are a far
13 step beyond Joneca's advertising and packaging, and online product pages.  The
14 Order is directed to "advertising, marketing, promotional, or other commercial
15 materials."  Order at 19.  Search results pages are not advertising or the "equivalent
16 [of] displays online."  Reply at 17.  They present a potential purchaser with options
17 and direct the consumer to more information with a click.

18     Further, as Joneca has explained, as a practical reality, Joneca is not able to
19 incorporate the disclaimer into search results.  Opp. at 19-20.  Notwithstanding the
20 fact the length of the disclaimer would require Joneca to use a font so small it would
21 render the disclaimer totally illegible, most retailers – as policy – do not permit any
22 text on main product images.  *See, e.g.*, Ex. B, C, D to Chavez Decl.  Retailers use
23 the main images from product webpages to generate the thumbnail images that appear
24 in their search results pages.  Chavez Decl. ¶ 12.  And search results pages provide
25 little room for text, as ISE indeed concedes.  *See* Mot. at 6.

26     ISE speculates that "surely" the disclaimer can be added and improperly
27 attempts to shift the burden by complaining that Joneca "has not proven otherwise."
28 Reply at 16.  ISE's putative new evidence is irrelevant.  For example, the places that

ISE speculates may provide space for text beneath the product image (e.g., text entries noting grind stage, noise level, power cord, star rating, price, promotions, installation information, and delivery and pick-up information) on a Lowe's search results page are generated by *Lowe's*, not by Joneca.[6]  Chavez Decl. ¶ 12.  Joneca's understanding is that it is not able to "borrow" from this space to include the disclaimer, as ISE suggests without evidence. *Id.*  ISE's abstract brainstorming about what it would like to see in search results is completely divorced from reality.  To date, ISE has been unable to identify a single concrete example of a disclaimer appearing in the search results page of a third-party retailer website, despite Joneca's multiple requests.[7]

ISE's impracticable and unsupported demand that Joneca include the disclaimer in third-party search results pages is, at base, a request to hobble Joneca from competing in the marketplace by removing Joneca's products from search results altogether.  The Court should reject ISE's naked attempt to broaden the scope of the Order by forcing Joneca to remove its products from search results or remove horsepower classifications from its search results.

## III.  CONCLUSION

For the foregoing reasons, Joneca respectfully requests that Plaintiff's Motion to Enforce be denied.

---

[6]    ISE refers to "Walmart's" search results page in its Reply, at 15, and in the title of the corresponding exhibit, *see* Ex. B to Melsheimer Decl. at 9.  According to ISE's provided hyperlink, however, this is a Lowe's search results page. *See id.*
[7]    Despite protestations to the contrary, ISE's counsel did not "g[i]ve a few examples of how disclaimers could appear in search results."  Reply at 16.  Rather, ISE's counsel orally brainstormed the same half-baked notions that ISE later offered (and Joneca discredited) in its Motion papers to include the disclaimer "in the thumbnail or in the text immediately below the product title."  *Id.*  ISE has never offered a tangible example of these ideas being implemented in any context.

1

2    Dated: October 13, 2025                    HOGAN LOVELLS US LLP

3                                               */s/ Trenton H. Norris*

4                                               Trenton H. Norris

5                                               *Attorneys for Defendants*
                                                *and Counter-Claimant*
6                                               JONECA COMPANY, LLC and
                                                THE JONECA CORPORATION
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Joneca Company, LLC and The Joneca Corporation certifies that this brief contains 3,515 words, which complies with the word limit of L.R. 11-6.1.

Dated:  October 13, 2025

/s/ Trenton H. Norris
Trenton H. Norris