**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INSINKERATOR, LLC, a Delaware limited liability company, | No. 25-286 |
| *Plaintiff - Appellee,* | D.C. No. 8:24-cv-02600-JVS-ADS |
| v. | |
| JONECA COMPANY, LLC, a Delaware limited liability company; JONECA CORPORATION, a California corporation, | OPINION |
| *Defendants - Appellants.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted August 22, 2025
Pasadena, California

Filed December 29, 2025

Before: Marsha S. Berzon, Stephen A. Higginson, and
Jennifer Sung, Circuit Judges.[*]

Opinion by Judge Higginson

---

[*] The Honorable Stephen A. Higginson, Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY**

### False Advertising / Preliminary Injunction

In a case in which garbage-disposal manufacturer InSinkErator, LLC, claimed that its competitor, Joneca Company, LLC, engaged in false advertising in violation of the Lanham Act by marketing garbage disposals with horsepower designations that do not reflect the output power of the disposals' motors, the panel affirmed the district court's preliminary injunction requiring Joneca to place disclaimers on its sales materials and packaging.

The panel held that the district court did not err in determining that InSinkErator was likely to succeed on the merits of its false advertising claims. First, Joneca did not show that InSinkErator was unlikely to succeed on the falsity element of its Lanham Act claim. Second, the district court did not err in finding that Joneca's horsepower claims were material because they likely influenced consumer purchasing decisions.

With respect to the remaining preliminary injunction factors, the panel held that the district court did not err in finding that InSinkErator would be irreparably harmed absent preliminary relief, in balancing the hardships, and in finding that the injunction was in the public interest.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael Gervais (argued) and Kalpana Srinivasan, Susman
Godfrey LLP, Los Angeles, California; Joseph S. Grinstein,
Susman Godfrey LLP, Houston, Texas; Christopher A. Cole,
Michael R. Justus, and Timothy H. Gray, Katten Muchin
Rosenman LLP, Washington, D.C.; David Halberstadter and
Asena Baran, Katten Muchin Rosenman LLP, Los Angeles,
California; Julia L. Mazur, Katten Muchin Rosenman LLP,
Chicago, Illinois; for Plaintiff-Appellee.

Trenton H. Norris (argued), Hogan Lovells US LLP, San
Francisco, California; Michael L. Turrill and Joseph R.
O'Connor, Hogan Lovells US LLP, Los Angeles, California;
for Defendants-Appellants.

## OPINION

HIGGINSON, Circuit Judge:

Defendant-Appellant Joneca Company, LLC, makes
garbage disposals and markets them with horsepower
designations. Joneca's competitor, Plaintiff-Appellee
InSinkErator, LLC, contends that Joneca's horsepower
designations are false advertising because they do not reflect
the output power of the disposals' motors. Joneca responds
that its horsepower designations accurately reflect the
electrical power drawn by its units. On InSinkErator's
motion for a preliminary injunction, the district court agreed
with InSinkErator's definition of horsepower, found that
Joneca's claims were literally false and apt to shift business
from InSinkErator to Joneca, and issued the preliminary

injunction.  Joneca (and a related business entity, the Joneca
Corporation) appeal from the preliminary injunction,
challenging the district court's falsity determination, its
finding that Joneca's horsepower claims were material to
consumer purchase decisions, and its irreparable harm
analysis.    Finding  no  error  in  the  district  court's
determinations, we affirm.

## I.

InSinkErator  and  Joneca  are  competitors.    Both
companies manufacture garbage disposals.  InSinkErator
dominates the U.S. market, which it pioneered almost a
century ago.  Joneca entered the U.S. market in 2005 as a
low-cost competitor.  Joneca attributes its lower prices to
various mechanical advantages, like its use of direct current
and the torque of its smaller grinder turntable.

InSinkErator  contends  that  Joneca  competed  by
misrepresenting the specifications of its units.  Joneca
markets  disposal  units  with  various  horsepower
designations, such as 1/3, 1/2, 3/4, 1, and 1 1/4 horsepower.
Horsepower is a unit of power (in physics terms, the rate at
which  work  is  performed  or  energy  is  transferred).
InSinkErator maintains that, in this context, consumers
necessarily understand references to "horsepower" to mean
"output horsepower"—the amount of power that a disposal's
motor can provide to the disposal's grinding mechanism—
as opposed to "input horsepower," the electric power used
by the system as a whole.  InSinkErator alleges that when it
tested Joneca's products on or around August 29, 2024, it
discovered  that  Joneca's  disposals  produced  output
horsepower substantially below advertised levels.

On November 27, 2024, InSinkErator sued Joneca in
federal district court.  InSinkErator claimed that Joneca's

horsepower representations were actionable as false advertising under the Trademark Act of 1946 (Lanham Act), ch. 540, 60 Stat. 427 (codified as amended in scattered sections of 15 U.S.C.). InSinkErator also brought claims under California law. InSinkErator alleged that the horsepower claims were false and misleading, deceived consumers, and influenced purchasing decisions. InSinkErator further alleged that it had been harmed by these misrepresentations because "Joneca is stealing accounts, sales, and goodwill from InSinkErator by deceiving retailers and consumers into paying for an inferior product that does not meet Joneca's purported specifications." InSinkErator asked for a declaratory judgment that Joneca had violated the Lanham Act, an injunction ordering Joneca to stop its purportedly false advertising, damages, and other relief.

On December 6, 2024, InSinkErator moved for a preliminary injunction. InSinkErator asked the court to restrain Joneca from misrepresenting the horsepower of its units. InSinkErator attached declarations of fact and expert opinion explaining that "[h]orsepower labelling aimed at consumers of garbage disposals should be based on power output, *i.e.*, the mechanical power of the motor as measured at the motor shaft," supporting InSinkErator's testing methodology, and advancing its position that Joneca was impermissibly undercutting InSinkErator's prices while misrepresenting its products' horsepower.

Joneca responded that its advertising was accurate and had not deceived consumers because "the industry standard for measuring horsepower of disposers is based on the *input* horsepower drawn by the full *disposer system*, not the *output* horsepower of the component *motor in isolation*." Joneca supported its position with declarations, including an expert opinion criticizing InSinkErator's reliance upon motor

horsepower in isolation from the full system and stating that input power was used for rating disposal units under Underwriters Laboratories standard UL 430.

InSinkErator filed a reply with rebuttal declarations directed in part to UL 430. Joneca objected and requested that the court disregard the new declarations, or, in the alternative, provide Joneca an opportunity to respond.

On January 10, 2025, after a hearing, the district court granted InSinkErator's motion for a preliminary injunction. The court declined to allow Joneca to introduce additional evidence responsive to InSinkErator's rebuttal declarations. The court determined that InSinkErator was likely to show that Joneca's claims were "literally false by necessary implication," reasoning that "deception [wa]s presumed" as a result. The court found that InSinkErator was likely to show that the deception was material to consumers based on InSinkErator's "market research" and "the common sense impression that more horsepower means more efficiency." Describing a risk to InSinkErator of "diverted sales or diminished goodwill," the court found likely injury to InSinkErator and that the equities favored an injunction. Accordingly, the court required Joneca to place disclaimers on its sales materials and product packaging stating: "Horsepower claimed on package does not indicate motor output or motor power applied for processing." The court ordered InSinkErator to post a $500,000 bond.

Joneca filed a timely notice of appeal.[1]

_____

[1] After oral argument, counsel for Joneca submitted a letter brief, which we have received and reviewed. Simultaneously, counsel filed a motion to file that letter. The motion is denied as unnecessary. *See* FED. R. APP. P. 28(j).

## II.

A district court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *Doe v. Horne*, 115 F.4th 1083, 1099 (9th Cir. 2024). "A district court 'necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Johnson v. Couturier*, 572 F.3d 1067, 1078–79 (9th Cir. 2009) (quoting *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009)). "The district court's interpretation of the underlying legal principles" is reviewed de novo. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). A finding of fact is clearly erroneous "if it is implausible in light of the record, viewed in its entirety, or if the record contains no evidence to support it." *Id.* (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005)). "But 'as long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.'" *Johnson*, 572 F.3d at 1079 (citation modified) (quoting *Am. Trucking Ass'ns*, 559 F.3d at 1052).

When a district court sets a bond for a preliminary injunction, this court "review[s] objections to the amount of [the] bond for abuse of discretion." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001), *as amended* (citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999)).

## III.

We now consider whether Joneca has shown these kinds of errors in the district court's issuance of the preliminary injunction. When evaluating whether to grant a preliminary injunction, a district court considers whether the plaintiff has

established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Johnson*, 572 F.3d at 1078 (alterations in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The district court determined that each of these factors weighed in favor of a preliminary injunction. Joneca challenges the district court's analysis of all four preliminary injunction factors.

## A.

Joneca contends that the district court erred in determining that InSinkErator was likely to succeed on its false advertising claim. "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5 he plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (footnotes omitted); *see also* 15 U.S.C. § 1125(a). The district court found that InSinkErator had "shown a likelihood to satisfy all of the elements of its false

advertising claim." Joneca takes issue with the district
court's analysis of the falsity and materiality factors.[2]

i.

First, Joneca argues that its horsepower claims, based on
input to the device as a whole rather than the output available
to the grinding mechanism, were not false. This case
involves literal falsity, which is one of the ways "[t]o
demonstrate falsity within the meaning of the Lanham Act."
*Southland Sod*, 108 F.3d at 1139.[3] Literal falsity may be
evaluated by (1) determining "the claim conveyed by the
advertisement" and then (2) assessing whether this claim is
literally false. *Clorox Co. P.R. v. Proctor & Gamble Com.
Co.*, 228 F.3d 24, 34 (1st Cir. 2000); *accord Scotts Co. v.
United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002);
*Novartis Consumer Health, Inc. v. Johnson & Johnson-
Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir.
2002); *Johnson & Johnson * Merck Consumer Pharms. Co.
v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir.
1992).

The scope of a claim is determined "in its full context."
*Southland Sod*, 108 F.3d at 1139. Accordingly, a message
may be conveyed explicitly or by "necessary implication,"
*id.*—*i.e.*, when the message is "necessarily and
unavoidably . . . received by the consumer," *Novartis*, 290

---

[2] The district court presumed deception based on falsity. Joneca argues
that the district court's conclusions on the deception factor were
incorrect because of its incorrect falsity analysis. Joneca does not
otherwise challenge the district court's analysis of deception.

[3] Alternatively, a plaintiff may show that a statement was "literally true
but likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d
at 1139; *see, e.g.*, *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820,
829 (9th Cir. 2011). Only literal falsity is at issue here.

F.3d at 588, from "the words or images" of the advertisement "considered in context," *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). Put otherwise, "[a] claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox*, 228 F.3d at 35.

The district court found Joneca's claims literally false by necessary implication. The court determined that "[t]he advertisement unequivocally claims that a given machine has a specific horsepower, such as 1 HP, 1 1/4 HP, 3/4 HP, or 1/2 HP." And the court agreed with a definition introduced by InSinkErator from a national retailer's website that described horsepower for a disposal unit as "[t]he total power output capability from the included motor." The court drew support for that definition from the opinion of InSinkErator's expert, who relied on testing standards and a standard text in the field as indicating "[t]he general consensus among engineers." The court was not persuaded by Joneca's expert's citation to UL 430, agreeing with InSinkErator that "UL 430 is plainly a safety guide for ensuring that switches and controls can safely handle the input current drawn by a motor." The court noted that Section 16.4 of UL 430 provided for current input testing "regardless" of horsepower designations on the motor or accompanying packaging.

As a threshold issue, Joneca appears to urge this court to assess the meaning of its claims, including any necessary implications, de novo. In *Southland Sod*, however, this court indicated that assessing an advertisement's meaning to its audience can involve factual considerations. *See Southland Sod*, 108 F.3d at 1144 ("[A] jury could reasonably conclude that the bar chart advertisements, when read as a whole,

contain literally false statements."); *see also, e.g.*, *World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*, No. 24-4976, 2025 WL 2427613, at \*2 (9th Cir. Aug. 22, 2025); *Clorox*, 228 F.3d at 34; *Mead Johnson & Co. v. Abbott Lab'ys*, 209 F.3d 1032, 1034 (7th Cir. 2000) (per curiam); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998); *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944–45 (3d Cir. 1993); *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 979 (2d Cir. 1988).

Even if Joneca is correct that advertisement claims should be construed de novo like contract terms—a question we need not reach or decide today—we would still review subsidiary factual findings bearing on construction for clear error. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324 (2015) (establishing clear error review for subsidiary factual determinations going to the scope of patent claims). It is such factual findings that are at issue here. Reviewing conflicting evidence on the scope of Joneca's horsepower claims, the district court found InSinkErator's submissions more persuasive.[4] The district court determined that the evidence before it indicated a "general consensus" about how the term "horsepower" is used and understood, and found that Joneca's "input-based interpretation d[id] not seem reasonable." When a court construes "technical words or phrases" by reference to

---

[4] Indeed, even under decisions in the line of authority cited by Joneca, the district court assessed the meaning of Joneca's horsepower claims by resolving a dispute over "whether facts exist[ed] so as to make [Joneca's] statement[s] true." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999).

"extrinsic evidence" about usage, that "factual determination, like all other factual determinations, must be reviewed for clear error" under Federal Rule of Civil Procedure 52(a)(6). *Teva*, 574 U.S. at 326 (quoting *Great N. Ry. Co. v. Merchs.' Elevator Co.*, 259 U.S. 285, 292 (1922)).

Even under the proper standard of review, Joneca contends, "the evidence that the District Court relied on does not plausibly support the conclusion that Joneca's horsepower claims are literally false." Joneca argues that its claims accurately stated the electrical power drawn by its units, consistent with the UL 430 industry standard. Joneca criticizes the district court for crediting "resources related to motors generally" rather than UL 430's disposal-specific standard. And Joneca argues that input horsepower "more closely correlates to the performance of the entire waste disposer system" as it would be used by a consumer.

These objections fail to show clear error in the district court's assessment of the evidence. The district court considered battling expert opinions speaking to these questions alongside a wide range of supporting resources, including industry resources and a national retailer's website.[5] Weighing this evidence, the court found that UL 430 was Joneca's only support for equating horsepower with input power with regard to garbage disposals and that UL

---

[5] The website exhibit was a screen capture from a national retailer that defined horsepower when providing technical specifications for an InSinkErator unit. Joneca describes this as InSinkErator's own advertisement. Our review of this evidence has not left us "with the definite and firm conviction that a mistake has been committed" in finding that the advertisement, including the definition, was the retailer's, not InSinkErator's. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

430 was less persuasive than InSinkErator's references.[6]
Those findings are consistent with the court's comments at
the preliminary injunction hearing that "the vast majority of
expert opinion seem[ed] to say" that despite the incidental
connection between "more electric power" and "a given
level of grinding," "the key to this device is at the other end
of the grinding function." Although Joneca criticizes the
district court's findings that InSinkErator's evidence was
persuasive or credible, Joneca has not shown that those
findings were "implausible in light of the record, viewed in
its entirety." *Stormans*, 586 F.3d at 1119.

Joneca further argues that the district court should at
least have found that its horsepower claims were ambiguous,
but this contention runs aground for similar reasons. The
district court credited InSinkErator's evidence to find that
"horsepower must be measured by using the motor's
mechanical *output*," concluding that Joneca's "garbage
disposals d[id] not deliver the output of the horsepower they
purport to provide." Nothing in the district court's decision
suggests that the court determined that Joneca's claims were
"balanced between several plausible meanings"—and thus
"too uncertain to serve as the basis of a literal falsity
claim"—when understood in context. *Clorox*, 228 F.3d at

---

[6] The district court found particularly persuasive correspondence from
UL engineers that "UL 430 is a safety standard for Waste Disposers and
is not meant to be used to determine the horsepower ratings of Waste
Disposers." Joneca contends that this correspondence was hearsay and
improperly submitted in a rebuttal declaration. But hearsay may be
considered in support of a preliminary injunction. *Johnson*, 572 F.3d at
1083. The emails responded to Joneca's opposition papers, which relied
on UL 430, and when Joneca raised its timing objections, the district
court (perhaps reasonably doubting that further development of the issue
would be productive) exercised its discretion to place a reasonable
stopping point on the development of the early-stage, preliminary record.

35.    Instead, the district court found Joneca's proposed interpretation implausible, explaining that UL engineers themselves refuted Joneca's use of UL 430, its sole supporting reference.

Finally, Joneca takes issue with the district court's finding that "[t]he general consensus among engineers . . . appears to be that horsepower is determined by mechanical output." Joneca urges that literal falsity requires the claim's audience to "receive a false message from the product's name or advertising." *Novartis*, 290 F.3d at 587. Joneca therefore suggests that the district court's findings about industry usage were not directed to the correct legal question. InSinkErator does not dispute that the relevant question is what message an advertisement conveys "to the viewing audience." *Johnson & Johnson * Merck*, 960 F.2d at 298.

But the district court did consider Joneca's audience. In finding that "horsepower must be measured" according to motor output, the district court relied on InSinkErator's consumer-facing evidence, whereas the court found that Joneca had no support for its interpretation other than an inapplicable and non-consumer-facing safety standard. In its analysis of UL 430, the district court relied on a section of the standard that explicitly stated that current input tests should be run without regard for horsepower ratings marked on products and packaging. The court concluded that UL 430 did not show that "input power is the proper interpretation for *labeling* horsepower." (emphasis added).

The district court's materiality analysis provides helpful context. Besides the retailer's website explicitly considered by the district court in its falsity analysis—which defined horsepower as "[t]he total power output capability from the

included motor"—the district court considered, and credited, other similar evidence in its materiality analysis. That evidence included an explanation from a different national retailer's website that "[g]arbage disposal horsepower (HP) determines what the disposal is capable of grinding" and evidence from yet another national retailer's website discussing that "higher . . . HP" would mean "[f]ood waste will be ground into finer particles." Given its falsity analysis, the district court appears to have concluded that the claims were material to consumer choices because they conveyed statements about the power of the grinding mechanism. We conclude that the district court did not clearly err in finding that InSinkErator was likely to show that Joneca's horsepower claims referred to output horsepower by necessary implication.

The next question is whether, with Joneca's claims so construed, those claims were literally false. Joneca urges holding that its claims were not sufficiently unsubstantiated to meet the standard for literal falsity, which it characterizes as demanding. The district court does not seem to have elaborated a legal standard for falsity but concluded that Joneca's "garbage disposals do not deliver the output of the horsepower they purport to provide." Joneca contends that this finding was not sufficient because a literal falsehood has to be "bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). It must, Joneca says, be "unambiguously false." *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014). According to Joneca, only a "completely unsubstantiated advertising claim" meets that standard. *See Novartis*, 290 F.3d at 590. Joneca suggests that if the district court had applied this

standard, it would have found that the "industry standard for measuring horsepower for household disposers," UL 430, substantiated Joneca's claims, preventing them from being literally false.

As InSinkErator correctly points out, Joneca's cases do not stand for the proposition it enunciates. Both *Schering-Plough* and *Novartis* described the standard for per se literal falsity but anticipated that literal falsity could be proved by evidence too. *See Schering-Plough*, 586 F.3d at 513 (describing cases, including *Southland Sod*, as "add[ing] to 'literal falsity' such qualifiers as that the meaning of the alleged literal falsehood must be considered in context and with reference to the audience to which the statement is addressed" and distinguishing situations where the claims are "false and misleading per se" with "no need to consider context or audience"); *Novartis*, 290 F.3d at 590. At least when literal falsity is shown by evidence, a complete lack of substantiation for the opposing position—or absence of "conflicting evidence," as Joneca puts it—is not required. In *Southland Sod*, this court explained that claims supported by product testing might nonetheless be literally false if the tests were "'not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." 108 F.3d at 1139 (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)). The court anticipated that this unreliability could be shown by contradiction or by lack of support from "other scientific tests," *id.*—in Joneca's words, "conflicting evidence."

We conclude that Joneca has not shown that InSinkErator is unlikely to succeed on the falsity element of its Lanham Act claim.

ii.

Next, Joneca argues that the district court erred in concluding that InSinkErator was likely to show that Joneca's false claims were material. Advertising claims are "material" when they are "likely to influence" purchasing decisions. *Southland Sod*, 108 F.3d at 1139.

The district court concluded that "consumer and retailer experience, along with common sense, suggest that horsepower is a critical determination to consumers when purchasing a garbage disposal." The court first determined that horsepower was "an inherent part of" garbage disposals because of "the importance of horsepower to the quality and characteristics of a garbage disposal." *See Nat'l Basketball Ass'n v. Motorola*, 105 F.3d 841, 855 (2d Cir. 1997) (requiring materiality to be shown by "'misrepresent[ations] of] an "inherent quality or characteristic"' of the product" (quoting *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys*, 850 F.2d 904, 917 (2d Cir. 1988))). Then, alternatively, the court determined that InSinkErator would likely show that Joneca's false horsepower claims were material even if horsepower is not an inherent part of the product. In support of that determination, the court described InSinkErator's "market research" showing that "consumers ranked horsepower as one of the top purchasing considerations for garbage disposals." The court also noted that retailers organized disposals by horsepower in shelving those products, which "signals that horsepower is an important— if not primary—distinction used by retailers to market [disposals] to consumers." Finally, the court relied on retailer websites that expressly link horsepower to the effectiveness of disposal units. For example, one website tells customers that "[t]he higher the HP, the better the disposal will run."

Joneca objects to the district court's application of the
Second Circuit's *NBA* test (since restated, *see Church &
Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843
F.3d 48, 70 & n.11 (2d Cir. 2016)), arguing that a
misstatement about an inherent quality or characteristic of a
product is not necessarily material, and that more evidence
is needed to show that such a statement influences consumer
purchasing decisions. InSinkErator responds that statements
about inherent qualities and characteristics are the "types of
statements reasonable persons would recognize as likely to
influence a purchasing decision." *Select Comfort Corp. v.
Baxter*, 996 F.3d 925, 939 (8th Cir. 2021). We need not
decide whether a dispositive rule is established by either of
those propositions, as the district court explicitly made an
independent determination of materiality, separate from its
inherent characteristic analysis.

Joneca next argues that we should require "direct
evidence showing how consumers would likely react to the
alleged deception"—"like surveys and consumer
declarations"—to show that a deception is material. Joneca
does not adequately address the baseline proposition that
"[c]ircumstantial evidence is not only sufficient, but may
also be more certain, satisfying and persuasive than direct
evidence." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 724
(9th Cir. 2025) (quoting *Desert Palace, Inc. v. Costa*, 539
U.S. 90, 100 (2003)). This court previously rejected a rule
that would have kept a consumer declaration from being
used to prove materiality, stating that "[a]lthough a
consumer survey could also have proven materiality in this
case, we decline to hold that it was the *only* way to prove
materiality." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d
1105, 1111 (9th Cir. 2012). Joneca has not established that
the evidence of materiality here is insufficiently relevant or

too speculative to be considered on an application for a preliminary injunction.

To the extent Joneca challenges the district court's weighing of the evidence, Joneca fails to show clear error. Joneca objects that the district court should have credited its "direct evidence of consumer decision making show[ing] that consumers prefer Joneca's disposers because of their better performance." But it was the district court's prerogative to find InSinkErator's evidence ("direct" or not) more "persuasive" than Joneca's in the first instance. *Mi Familia Vota*, 129 F.4th at 724 (quoting *Desert Palace*, 539 U.S. at 100). The customer reviews that Joneca advances primarily discuss how "powerful" Joneca's units are, indicating that consumers *do* care about power. Joneca argues that because consumers are pleased with the power of their Joneca units they must not be concerned about horsepower designations when selecting a disposal. That effort cannot square with the district court's falsity analysis and falls short of the clear error mark.

Joneca registers several other objections to InSinkErator's evidence, but these fall short too. Joneca says that the district court should not have relied on InSinkErator's "market research" because it was described by a witness who started working for InSinkErator after the studies were commissioned. To the extent these objections relate to the admissibility of such statements, they are not proper, *see Johnson*, 572 F.3d at 1083, and to the extent they relate to the reliability or credibility of the evidence, Joneca has not shown that the district court should not have credited the witness's statement that she "personally reviewed that research and the research findings are consistent with my understanding and experience." Joneca further argues that descriptions of horsepower as "one of the top purchasing

considerations for disposals" and of horsepower's role in organizing retail displays were too generic to support the district court's extrapolations. But given the posture and the record as a whole, we do not find those inferences attenuated or speculative, much less "implausible." *Stormans*, 586 F.3d at 1119.

Finally, Joneca argues that the district court erred as a matter of law in relying on the general importance of horsepower to consumers, while making no findings about whether Joneca's specific understatements of horsepower would have been material to purchasing decisions. But the district court found that InSinkErator was likely to "show that the false advertising was material." This conclusion was supported not only by the general importance of horsepower to consumers, but also by a lengthy analysis of the use of horsepower as a "key *differentiating* factor when it comes to purchasing and advertising garbage disposals" (emphasis added), with national retailers organizing products by horsepower designation. For example, the district court explained, Home Depot displays competitors' disposals side-by-side based on their horsepower labels, *i.e.*, "Joneca's 1HP disposal [is] adjacent to InSinkErator's 1HP disposal." Home Depot describes 1 horsepower disposals as "Heavy Duty," 3/4 horsepower disposals as "Medium Duty," and 1/3 and 1/2 horsepower disposals as "Light Duty." Because retailers display disposals to consumers by horsepower level, it was reasonable for the district court to infer that a false claim about a disposal's horsepower—*i.e.*, a horsepower claim that causes a disposal that lacks even the horsepower to qualify as Medium Duty to be displayed in the Heavy Duty section—would materially affect whether and how consumers would compare the unit to competing products.

Now consider the district court's analysis of Lanham Act injury.  The Second Circuit has stated that "in many cases the evidence and the findings by the court that a plaintiff has been injured or is likely to suffer injury will satisfy the materiality standard—especially where the defendant and plaintiff are competitors in the same market and the falsity of the defendant's advertising is likely to lead consumers to prefer the defendant's product over the plaintiff's." *Church & Dwight*, 843 F.3d at 70–71.  That guidance is helpful here. The district court found that Joneca's horsepower claims were likely to result in lost business for InSinkErator because consumers were choosing Joneca over InSinkErator based on Joneca's claims.  The court found that "horsepower—and thereby falsehood—is prominently displayed at the point-of-sale in retail shops" and reasoned that "horsepower is commonly used to differentiate garbage disposals."  The court further explained that when "a false statement is prominently displayed on a direct competitor's product, and sold side-by-side at the same retailer as if to compare products and value, there is a real likelihood" of "diverted sales or diminished goodwill," connecting Joneca's horsepower claims to InSinkErator's asserted loss of market share (and shelf space) to Joneca.  Those findings of lost business further support our conclusion that the district court did not err in finding that Joneca's horsepower claims were material because they likely influenced consumer purchasing decisions.

## B.

Joneca next argues that the district court erred in finding that InSinkErator would be irreparably harmed absent preliminary relief.  After rejecting InSinkErator's arguments attributing price erosion to Joneca, the district court determined that InSinkErator had shown that Joneca's

misstatements would cost it goodwill and applied the
principle that "[e]vidence of threatened loss of prospective
customers or goodwill certainly supports a finding of the
possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v.
John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).
The court appeared to credit InSinkErator's account that a
retailer had awarded shelf space to Joneca instead of
InSinkErator and that Joneca's "fake value proposition" of
inflated horsepower at a low price would influence bidding
that was in process for "private label contracts with major
retailers."

Contesting the district court's irreparable harm
determination, Joneca first argues that the district court
applied an incorrect legal standard when determining that
InSinkErator would likely suffer irreparable harm.   The
district court concluded that irreparable harm was likely
because "irreparable injury to [InSinkErator's] goodwill"
was "probab[le]."  In doing so, the district court determined
that InSinkErator was not entitled to a rebuttable
presumption of irreparable harm, relying on *eBay Inc. v.
MercExchange, L.L.C.*, 547 U.S. 388 (2006).  As the parties
agree, this was error.  After *eBay* was decided, Congress
amended 15 U.S.C. § 1116(a) to provide "a rebuttable
presumption of irreparable harm . . . upon a finding of
likelihood of success on the merits."   Trademark
Modernization Act of 2020, Pub. L. No. 116-260, § 226, 134
Stat. 1182, 2208 (2020).  InSinkErator was therefore entitled
to a rebuttable presumption of irreparable harm.

That the district court failed to apply that presumption,
however, does not require us to remand to the district court
to assess irreparable harm under the proper standard.
Because the district court concluded that InSinkErator
demonstrated a likelihood of irreparable harm even without

applying the presumption in its favor, and because Joneca
has failed to show that it was prejudiced by the error, the
district court's error was harmless.[7] *See* 28 U.S.C. § 2111
("On the hearing of any appeal . . . the court shall give
judgment after an examination of the record without regard
to errors or defects which do not affect the substantial rights
of the parties."); *Shinseki v. Sanders*, 556 U.S. 396, 410–11
(2009) (noting that, in ordinary civil cases, the party seeking
reversal bears the burden of showing an error was
prejudicial).

Next, Joneca argues that "[t]he record cannot plausibly
support a finding of irreparable harm." Joneca characterizes
InSinkErator's evidence linking its lost contract and shelf
space to Joneca's horsepower claims as conclusory,
speculative, unsupported by facts "such as what was
communicated to whom and when," and lacking in
foundation. Joneca says that InSinkErator lost its contract
with one retailer because of production issues related to the
coronavirus pandemic, and that Joneca was allocated
InSinkErator's shelf space at a second retailer "because the
two retailers have the same parent company."

Even if Joneca's explanations were more detailed than
InSinkErator's, Joneca has not shown that the district court
was required to conclude that Joneca had contradicted
InSinkErator's version of events. The district court could

---

[7] At oral argument, Joneca argued that the harmless error doctrine does
not apply where the district court made a clear misstatement of law and
relied on the misstated law, citing *In re Apple Inc. Device Performance
Litigation*, 50 F.4th 769 (9th Cir. 2022). That decision, which considered
a district court's erroneous "presumption of reasonableness and fairness"
in approving a class action settlement, is inapposite. *Id.* at 782–83. The
district court's analysis here provides a sufficient basis for its decision
regardless of the presumption.

have credited both declarations, concluding that the first
retailer initially used Joneca instead of InSinkErator due to
InSinkErator's supply issues, as Joneca said, but that Joneca
won the subsequent open bidding process with that first
retailer and the shelf allocations with the second retailer
because of what InSinkErator's witness called Joneca's
"fake value proposition." Or the district court may have
plausibly weighed the narratives and found Joneca's less
believable despite its supporting details. Either way, Joneca
has not shown clear error.

Joneca similarly argues that InSinkErator's claims that it
was bidding on contracts were overly general and that the
bid negotiations may not have involved discussions of
Joneca's specific horsepower claims. Joneca fails to explain
what level of detail was required to allow the district court
to credit InSinkErator's account or why the district court was
not permitted to infer from the competition between
InSinkErator and Joneca, and the materiality of Joneca's
horsepower claims to consumers, that Joneca's claims would
bear on negotiations.

We find no error in the district court's findings on
irreparable injury.

## C.

Joneca contends that the district court erred in balancing
the hardships. The district court concluded that
"InSinkErator will likely suffer some hardship without an
injunction" and that Joneca's hardship could be limited by
tailoring the injunction "to only prohibit false claims of
horsepower," allowing Joneca "to explain during retailer
bids and sales presentations that its products have a certain
horsepower *input*." But the court found that "Joneca faces
some potential harm to its business" from a preliminary

injunction "in addition to reputation harms and potential concerns arising from retailer contract bidding." Accordingly, the district court ordered InSinkErator to post a bond in the amount of $500,000.

Joneca argues that its horsepower claims are not causing any harm to InSinkErator but, by contrast, the injunction causes "significant" hardship to Joneca. For the latter point, Joneca principally argues that the costs of complying with the injunction far exceed the amount ordered by the district court as bond.

We have addressed the irreparable harm to InSinkErator above. As for the bond, district courts have "wide discretion in setting the amount of a security bond." *Walczak*, 198 F.3d at 733. The "amount . . . consider[ed] proper" by the district court, FED. R. CIV. P. 65(c), was lower than the amount for which Joneca asked and higher than the amount for which InSinkErator asked. Joneca has not adequately justified treating a disparity from its request, without more, as an abuse of the district court's discretion.

### D.

Joneca contests the district court's finding that an injunction was in the public interest. The district court stated that "the public has a strong interest in avoiding confusion caused by false claims of horsepower," noting that "the two products . . . are being sold side-by-side . . . and being distinguished by their claimed horsepower." Joneca argues once more that it "has not made any literally false horsepower claims." Because the district court did not clearly err in finding Joneca's claims literally false, we conclude that Joneca has not shown error in the district court's analysis of the public interest.

## IV.

For the reasons stated above, the district court's order granting the preliminary injunction is **AFFIRMED**.

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing and Petition for Rehearing En Banc (Fed. R. App. P. 40; 9th Cir. R. 40-1 to 40-4)**

**(1) Purpose**
   **A. Panel Rehearing:**
   - A party should seek panel rehearing only if one or more of the following grounds exist:
      - A material point of fact or law was overlooked in the decision;
      - A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
      - An apparent conflict with another decision of the Court was not addressed in the opinion.
   - Do not file a petition for panel rehearing merely to reargue the case.

   **B. Rehearing En Banc**
   - A party should seek en banc rehearing only if one or more of the following grounds exist:
      - Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
      - The proceeding involves a question of exceptional importance; or

➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**

- A petition for rehearing or rehearing en banc must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(d).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(d). The deadlines for seeking reconsideration of a non-dispositive order are set forth in 9th Cir. R. 27-10(a)(2).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-4.

**(3) Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

**Petition for a Writ of Certiorari**
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ➢ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
  - ➢ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

Name of party/parties requesting costs to be taxed:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                    **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee/Appeal from District Court filing portion of fee ($5) | | | | $ |
| **TOTAL:** | | | | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10); TOTAL: 4 x 500 x $.10 = $200.*